RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

DENISE M. BARRY and JANE
B. GREEN,
        Plaintiffs,

v.

ROBERT J. MORAN, PAUL A.
CHRISTIAN, WILLIAM
KESSLER, WILLIAM
HITCHOCK, CITY OF BOSTON
FIRE DEPARTMENT, and JOHN
and/or JANE DOES 1-50.
        Defendants.

# 05 - 10528 RCL

## NOTICE OF REMOVAL

(PURSUANT TO 28 U.S.C. §1441)

Defendants Robert Moran and City of Boston hereby give notice of the removal of this action pursuant to 28 U.S.C. §1441, from the Superior Court Department of the Trial Court of Massachusetts, in which court the action is entitled with the same caption and which is pending in Suffolk Superior Court as Civil Action No. 05-0977.

In support of this notice, Defendants Moran and City of Boston state that:

1.   The action appears to be grounded in the laws and
     Constitution of the United States of America.  Count IV of

the Plaintiff's Complaint (directed against all defendants) alleges violations of the Plaintiff's civil rights protected under *inter alia* "the United States Constitution, 42 U.S.C. §§ 1983, 1985, 1986 and 1988..." and Count V alleges Conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986.

2.  This notice of removal is filed within thirty (30) days from service of the Complaint upon the City of Boston on March 18, 2005, and upon Robert Moran on March 16, 2005. The remaining defendants appear not yet to have been served, and the Complaint was filed with the Suffolk Superior Court on March 14, 2005. Undersigned counsel expects to represent all defendants.

Respectfully submitted,

DEFENDANTS, ROBERT MORAN and CITY OF BOSTON,

Merita A. Hopkins
Corporation Counsel

By their attorney:

James M. Chernetsky
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4048
BBO# 638152

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document was served upon counsel of record for the Plaintiffs via U.S. Mail to 39 Sheafe Street, Suite 1, Chestnut Hill, MA 02467, and via facsimile to 617-277-5751.

_____    _____
Date

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.  05 - 0977

DENISE M. BARRY and
JANE B. GREEN,

        Plaintiffs,

        vs.

ROBERT J. MORAN; PAUL A.
CHRISTIAN; WILLIAM KESSLER;
WILLIAM HITCHCOCK; CITY OF
BOSTON FIRE DEPARTMENT, and
JOHN and/or JANE DOES 1-50,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

RECEIVED

MAR 14 2005

SUPERIOR COURT · CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

### VERIFIED COMPLAINT FOR
### INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES

Plaintiffs Denise M. Barry and Jane B. Green, by and through their undersigned counsel,

hereby assert the following facts and claims against Defendants Robert J. Moran, Paul A.

Christian, William Kessler, William Hitchcock [collectively referred to as the "Individual

Defendants"] in their individual and official capacities, and against Defendant City of Boston Fire

Department [hereinafter "BFD"].

## I. INTRODUCTION

1)     This is an action to redress the deprivation under color of statutes, ordinances, regulations,

customs, policies, practices, and/or usages of rights, privileges, and immunities secured to

Plaintiffs by the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the

United States, Articles I, VI, XI, XII, and Amendment XVI of the Massachusetts

Constitution, Declaration of Rights, and 42 U.S.C. §§ 1983, 1985, 1986, and 1988, et seq., M.G.L. c. 12, §§ 11H, 11I, and 11J, M.G.L. c. 25, §17, and M.G.L. c. 149, § 185b, the City of Boston October 2000 Executive Order, and state common law, inter alia. Plaintiff seeks declaratory and injunctive relief pursuant to M.G.L. c. 214, § 1, M.G.L. c. 231A, and 42 U.S.C. §§ 1983, 1985, and 1986, *inter alia*, and damages. Plaintiff alleges further that Defendant Fire Department and its supervisors negligently failed to train and supervise its employees, including but not limited to Defendant Moran, thereby causing the violations of Plaintiffs' constitutional, statutory, and other legal rights, and seeks damages accordingly.

## PARTIES

1.    Plaintiff Denise M. Barry is an individual residing at 4 Essex Street, Charlestown, Suffolk County, Massachusetts 02129.

2.    Plaintiff Jane B. Green is an individual residing at 60 LaGrange Street, West Roxbury, Suffolk County, Massachusetts 02132.

3.    Defendant Robert Moran is employed as the Personnel Manager in the Boston Fire Department. Upon information and belief, Defendant Moran resides at 86 Minot Street, Dorchester, Boston, Massachusetts 02122. Defendant Moran is sued in his official and individual capacities.

4.    Defendant Paul A. Christian is employed as the Fire Commissioner for the City of Boston Fire Department, with his place of business located at 115 Southhampton Street, Boston, Massachusetts. Defendant Christian is sued in his official and individual capacities.

5. Defendant William Kessler is employed by the City of Boston as the Director of Employment and Recruitment, with his place of business located at Boston City Hall, Room 612, Boston, Massachusetts 02201. Defendant Kessler is sued in his official and individual capacities.

6. Defendant William Hitchcock is employed as the Director of Operations for the City of Boston Fire Department. Defendant Hitchcock is sued in his official and individual capacities.

7. Defendant City of Boston Fire Department ["BFD"] is an incorporated governmental agency of the Commonwealth of Massachusetts, with its principal office located at 115 Southhampton Street, Boston, Suffolk County, Massachusetts.

8. Defendants John and/or Jane Does 1-50 [hereinafter "Doe Defendants"] are administrators, supervisors, and/or other employees and/or staff of the BFD and/or of related municipal entities, and/or government and/or non-government persons and/or entities employed, hired, and/or otherwise engaged by the City of Boston, whose true names and capacities are as yet unknown to Plaintiffs and their counsel despite inquiry and due diligence, who acted and/or failed to act herein as more particularly alleged below. The Doe Defendants are sued herein in both their official and their individual capacities. The true names and capacities of the Doe Defendants will be substituted through a Motion to Amend the Complaint as they become known.

## JURISDICTION

9. This Court has jurisdiction over this action for damages and equitable relief pursuant to M.G.L. c. 212, § 4 and M.G.L. c. 214, §1, respectively, *inter alia*.

## FACTS COMMON TO ALL COUNTS

10.   On or about October 2000, City of Boston Mayor Thomas M. Menino issued an Executive Order, attached hereto as Exhibit A, which "ordered and directed" that "[a]ll departments within the City of Boston shall adhere to this policy" and setting forth the policy, *inter alia*, that "discrimination, retaliation and harassment are contrary to City policy and are also illegal. Such conduct is defined as follows: . . . Conduct that conditions a person's hiring, compensation, terms and conditions of employment or access to services provided by the City on that person's . . . political affiliation[.]"

11.   Plaintiffs are informed and believe, and thereupon allege that the October 2000 Executive Order was issued to address a historical pattern and practice of political affiliation discrimination, a.k.a. "cronyism", within Boston city departments, including but not limited to Defendant Boston Fire Department.


## PLAINTIFF DENISE M. BARRY

12.   On or about 21 August 1996, Plaintiff Barry commenced employment with the BFD in the Training Division as a Principal Clerk, with an R-8 civil service employment rating.

13.   On or about 3 July 1998 after a budget review, the BFD upgraded all R-8 positions. As a result, Plaintiff Barry and another employee were upgraded to Head Clerk (R11) positions. Then on 1 September 1998 a Memorandum went out from AFSCME Council 93 regarding the Joint Clerical Upgrade Committee Meeting such that whoever held a R-11 Head Clerk position was upgraded to Head Clerk (R12) position, Step 1 (but now at the current pay rate of a step 5 pursuant to regular Union step increases at approximately $666.00 per week). This has been the only time that Plaintiff Barry has been upgraded.

4

14.    On or about July 2001, Defendant Moran was hired by the BFD. Plaintiffs are informed and believe, and thereupon allege, that Defendant Moran was not qualified or otherwise suited for the position of personnel manager, was suspended and/or terminated from his previous human resources position for cause, and obtained the position with the BFD as a political favor.

15.    On or about 14 July 2003, Plaintiff Barry asked Defendant Moran why she was not getting raises or upgrades, whereupon Defendant Moran told Plaintiff Barry that there was not enough money and that no one is getting a raise. Coincidentally, despite the purported lack of money, Plaintiff Barry discovered that Defendant Moran was trying, at this time, to create an R-15 Administrative Assistant position for a Sheila Mancuso, who just recently was employed at the BFD on 12 October 2002.

16.    On or about 14 August 2003, Plaintiff Barry submitted a 12-page letter of recommendations from various fire and civilian personnel from different offices that Plaintiff Barry had assisted during her BFD career.

17.    On or about 20 August 2003, Plaintiff Barry applied for an R-15 Administrative Assistant position in the BFD. Plaintiff Barry went on two interviews; first with Defendant Moran; and second with Chief Robert Calobrisi. On her way to the second interview, Plaintiff Barry was told by other employees not to waste her time because they already had someone picked for the job from outside the department, and that she purportedly did not meet the minimum entrance qualifications according to the job posting. Plaintiff Barry is informed and believes, and thereupon alleges that an outsider, Michelle Urso, who did not meet the minimum qualifications but was politically affiliated with those with power and influence in the BFD, was hired for the position on or about 1 October 2003.

18. On or about 28 August 2003, during a conversation with Defendant Moran, Plaintiff Barry asked Defendant Moran if he had received a reply from City Hall about her pay raise. Defendant's response was, despite the recent hiring as set forth above, "No, I didn't tell you the City is out of money, there is a freeze on raises and hiring?" "No,"Plaintiff said, "you didn't tell me."

19. For the past 2 years, Defendant Chief William F. Hitchcock and Chief David R. Granara have requested step increases on several occasions for Plaintiff Barry, which repeatedly were denied by Defendants Moran and Christian.

20. For each position for which Plaintiff Barry applied, she was well qualified for the position, more so than 90% of the persons who received the jobs.

21. For more than the past three years, Plaintiff Barry has been passed over for promotions and step increases because she is not politically affiliated with those in power in the Fire Department or in City Government who have influence in the Fire Department.

22. On or about 1 October 2003, a BFD nurse, knowing of Plaintiff's competence, asked Plaintiff if she would be willing to assist in organizing the medical bills for payment in a job classified as "Case Manager - Indemnification.". Plaintiff agreed to help and Defendant Moran agreed to appoint Plaintiff Barry as an Acting .position of MM-5.

23. In order to prepare for her new responsibilities, Plaintiff requested of Defendant Moran if she could attend Peoplesoft Training at City Hall because the software had been updated. Defendant Moran's reply was "Yes, I will work on it immediately."

24. On or about 1 October 2003, Plaintiff Barry asked Defendant Moran what Acting Position grade and step that she was doing as a Case Manager. Defendant Moran responded that the position was an "MM-5, and that he would work out what step it was and respond to

6

Plaintiff Barry at a later time.

25.     On or about 3 October 2003, after only one day at the new position, Plaintiff Barry sent $43,996.48 worth of payrun claims to City Hall to be processed; there was a significant backlog of such payrun claims when Plaintiff Barry entered the position.

26.     On or about 3 October 2003, Nurse Barbara Ryan send an electronic mail message to Carol Connors and Plaintiff Barry,  thanking them for their extra effort during the backlog process.

27.     On or about 6 October 2003, Department Nurse Barbara Ryan send an electronic mail message to Chief Granara saying that she wanted to thank him for allowing Plaintiff Barry to assist in the claims payment process and that Plaintiff Barry is a pleasure to work with and performs her duties exceptionally well.

28.     Plaintiff Barry was doing both her regular position's responsibilities as well as the Case Manager's responsibilities during the time that she had the temporary upgrade.

29.     On or about 6 October 2003, Plaintiff Barry requested again of Defendant Moran about the step rate, because she was only receiving the pay for a step 1 while she should be receiving at least a Step 3 or 4.

30.     On or about 7 October  2003, Plaintiff Barry requested again of Defendant Moran if he had a chance to ask City Hall about the step rate; Defendant Moran responded that he would check into it.

31.     On or about 7 October 2003, Plaintiff Barry sent $25,753.28 worth of payrun claims to City Hall for processing in order to assist in clearing the Case Manager backlog.

32.     On or about 8 October 2003, Plaintiff Barry went to the Fire Marshall's Office of Maryanne McHugo in order to get trained in People Soft, but Ms. McHugo had informed

Defendant Moran earlier that she could not train Plaintiff Barry, and Defendant Moran had failed to inform Plaintiff Barry about this situation, thereby causing unnecessary dissension among BFD employees, and embarrassing Plaintiff Barry.

33. On or about 9 October 2003, Plaintiff Barry had a meeting with the Fire Department Human Resources Manager, Defendant Robert Moran. This meeting was called because Plaintiff Barry wanted to inquire if she would be getting the Case Manager position and because Plaintiff Barry had complaints that she was not receiving promotions and pay increases when due.

34. At the 9 October 2003 meeting, in response to Plaintiff Barry's request for the position and complaints, Defendant Moran said that Plaintiff Barry would not be getting the position, that City Hall had someone else in mind and said, rather blatantly, "Well, if you're not into politics little girl, then you're not into a position here."

35. At the 9 October 2003 meeting, at which Plaintiff Jane Green was present as Plaintiff Barry's Union Shop Steward, Plaintiff Green promptly stood up upon Defendant Moran's statement above, and said to Defendant Moran "I can't believe you are saying this to her, not to mention in front of me." Defendant Moran replied "that's the way it is around here." Whereupon Plaintiff Barry said "so, I am going to be punished because I am not into politics?" Defendant Moran shrugged his shoulders and said "that's politics for you."

36. Later on 9 October 2003, Plaintiff Barry was informed that Defendant Moran was going to retaliate against Plaintiff Barry for her complaints and request for pay raises, such that he never would approve any pay increases for Plaintiff Barry. That has been the case since that time, such that Plaintiff Barry has continued to be denied promotions and wage increases.

37.  The person who received the Case Manager position was a former BFD employee who was politically affiliated with those with power and influence over the BFD, Ian McKenzie, who, Plaintiffs are informed and believe, did not even live within the City of Boston at the time he was hired, as is a requirement for such positions; Mr. McKenzie lived in Maryland at the time, while using a Boston property that he owned as his residence address for the purposes of applying for the position. Moreover, Mr. McKenzie received the position as an MM-8, Step 7, paying approximately $1,350.00 per week, rather than the MM-5, Step 1 pay at approximately $720.00 per week that Plaintiff Barry was receiving for doing the same job.

38.  After Plaintiff Barry's above-mentioned meeting with Defendant Moran, Plaintiff Barry complained in writing and in a meeting to Defendant Kessler, the Director of Employment and Recruitment for the City of Boston, who told her that what Defendant Moran said was not unlawful discrimination and that he could not help Plaintiff Barry.

39.  Plaintiff Barry had subsequent meetings with Defendant Kessler and at each meeting, Defendant Kessler refused to acknowledge that discrimination on the basis of political affiliation was unlawful and failed and otherwise refused do an independent investigation of Plaintiff Barry's allegations.

40.  On or about 3 September 2004, Plaintiff Barry submitted a written complaint against Defendant Moran to her supervisor Chief Granara.

41.  Shortly about or after 3 September 2004, Chief Granara then informed Chief Hitchcock and then proceeded to inform the Fire Commissioner of Plaintiff's complaint against Defendant Moran.

42.   On or about 3 September 2004, Plaintiff Barry again submitted to, *inter alia*, Defendant Kessler, formal complaints about Defendant Moran's actions against her, including her lack of promotions and retaliation for her complaints, and as to Plaintiff Green for the retaliation being perpetrated upon her as her witness. The Mayor of the City of Boston was notified also of Plaintiffs' complaints against Defendant Moran. In response, on 21 October 2004, legal counsel for the City of Boston's Office of Labor Relations drafted a letter warning Plaintiffs' counsel not to speak with any employees of the City of Boston regarding this matter.

43.   On or about 7 September 2004, a meeting was held with Defendant Kessler to review the complaints regarding Defendant Moran's, and others', mistreatment and retaliation against Plaintiffs Barry and Green.

44.   More than six months have elapsed and Plaintiffs are informed and believe, and thereupon allege, that Defendant Kessler never conducted an investigation, and never issued a written opinion regarding Plaintiffs' complaints, despite receiving a written request to conduct an investigation, and despite receiving complaints about Defendant Moran from other individuals, in addition to Plaintiffs, during the meeting on 7 September 2004.

45.   Instead, Plaintiffs are informed and believe, and thereupon allege, that Defendant Kessler's refusal to consider and otherwise investigate the information provided to him by Plaintiff Barry was motivated by Plaintiff Barry's and Plaintiff Green's lack of political affiliation with those having political influence over the BFD.

46.   Defendant Kessler, instead of investigating the significant complaints about Defendant Moran's unlawful employment practices from Plaintiff Barry and others, placed an unreasonable and unnecessary burden upon Plaintiff Barry to produce more

documentation, when, in fact, Defendant Kessler had more than enough information to commence and otherwise complete a good faith investigation.

47. On or about 15 October 2004, Plaintiff Barry was denied a step increase by Defendants.

48. On or about 20 October 2004, Chief Joseph Finn requested a step increase for Kathy Frechette for an R-17. Kathy Frechette resides in South Boston and is politically affiliated with those presently having political influence over the Boston Fire Department.

49. On or about 9 December 2004, Plaintiff Barry had two hearings scheduled at Labor Relations before Analyst Alice Kessler, the wife of Defendant William Kessler, that were held with regards to her complaints that she was being discriminated against.

50. Eight days after the hearings on 9 December 2004, Plaintiff Green was informed that the Commissioner wants her out of the building immediately for no apparent reason.

51. Plaintiff Barry was offered only once an out-of-grade positions when such position were made available to less senior civil service and non-civil-service employees who were politically affiliated to influential persons, including but not limited to Defendants Christian and Moran, for which she would have been qualified. On or about 15 November 2004, Plaintiff Barry reported and complained about this unlawful practice to Defendants, but her reports and complaint were ignored.

52. Defendants Moran, Christian, and Kessler, and certain Doe Defendants acted, and otherwise purposely failed to act, in concert with each other to affect adversely the terms and conditions of Plaintiff Barry's employment as set forth herein.

53. As a direct and proximate result of the discrimination and other violations of the law perpetrated by Defendants, Plaintiff Barry has been deprived of approximately $55,000 in wages and benefits, and continues to suffer such losses at the rate of approximately $740

per week, which is the difference between her present wages and the wages of the person installed into the Case Manager position, for which Plaintiff Barry was well qualified.

54. As a direct and proximate cause of the foregoing actions and omissions of the Defendants, Plaintiff Barry has suffered, and will continue to suffer, severe emotional distress in amounts to be proven at trial, but no less than $100,000.00.

## PLAINTIFF JANE B. GREEN

55. Plaintiff Green is employed by the Boston Fire Department as a civil service employee, and a member of, and shop steward in, SENA, Local 9158.

56. Plaintiff Green's responsibilities include reviewing fire reports of the on-scene firemen, providing documentation and confirmation to victims of fires so that the victims, many of whom are poor and destitute as a result of the fire, can receive recoveries from their insurance companies and aid from welfare agencies, including temporary housing and housing assistance payments.

57. On or about 9 October 2003, Plaintiff Green was present as the Union Shop Steward for Union Member Plaintiff Barry for a meeting between Plaintiff Barry and Boston Fire Department Human Resources Manager Defendant Robert Moran. This meeting was called as a result of complaints by Plaintiff Barry that she was not receiving promotions and pay increases when due. In response to Plaintiff Barry's complaints, Defendant Moran said, rather blatantly, "Well, if you're not into politics little girl, then you're not into a position here." Plaintiff Green promptly stood up and said to Defendant Moran "I can't believe you are saying this to her, not to mention in front of me." Mr. Moran replied "that's the way it is around here." Whereupon Plaintiff Barry said "so, I am going to be

punished because I am not into politics?" Defendant Moran shrugged his shoulders and said "that's politics for you."

58.     On and before 27 December 2004, Plaintiff Green was based at 115 Southampton Street, Boston, Massachusetts; all of the records that she needs are there, as well as the computer files vital to the efficient operation of her position.

59.     In addition, the Fire Investigation Unit, a necessary stop for the victims of car fires, is located just behind 115 Southhampton Street, on 920 Massachusetts Avenue. Fortunately for the victims of house fires, there is ample free parking near 115 Southampton Street.

60.     On Thursday, 23 December 2004, Defendant Moran handed Plaintiff Green a paper stating "this is your official transfer paper," signed, Peter Liazza, Fire Marshal, Boston Fire Department. The transfer stated that management has decided that the Fire Reports section (Plaintiff Green's section) of the Fire Prevention Division will be relocated to 1010 Massachusetts Avenue, 4th floor, starting Monday, 27 December 2004. The only explanation provided was that "this is not a transfer but a relocation."

61.     When Plaintiff Green was moved, she was told that the equipment and files needed for her position would be moved with her. This never has happened, and Plaintiff Green is informed and believes, and thereupon alleges, that it never will happen.

62.     The relocation is arbitrary, capricious, and malicious because Plaintiff Green's records still are located at 115 Southampton Street, requiring her to make two or three trips a week to look up information for customers.

63.     Plaintiff Green's move to 1010 Massachusetts Avenue also has an adverse impact upon the public.

13

64. Plaintiff Green's move causes an unnecessary, malicious, arbitrary, and capricious burden to the public to access the Fire Investigation Unit, there is no free parking (often a vital consideration for the newly destitute); and Plaintiff Green was practically unreachable because her old telephone number has been disconnected, without being re-established at her new location until Tuesday, 8 March 2005. Plaintiff Green remains separated from key files and record located at 115 Southhampton Street, posing an undue and malicious burden upon the terms and conditions of her employment because of her exercise of her First Amendment Rights to speak on behalf of Plaintiff Barry.

65. Up until 8 March 2005, Plaintiff Green's current location ded not provide her with a telephone such that she was cut off from answering vital customer and work-related inquiries and helping customers in need of emergency services, such that she was forced to locate an available desk, and stand over the person whose desk it is, to answer and return calls at least 15 to 20 times a day for three months.

66. The Boston Fire Department is in the business of not only putting out fires, but are to provide fire victims with the essential services they need to help them.

67. The emotional pain of people experiencing the devastating effects of fire is one thing, and then not to provide the emergency services they so desperately need is another. With the loss of a home, belongings and sometimes family members, people are emotionally distraught and angry, and are in need of emergency services. Plaintiff Green's present location prevents her from meeting the needs of the public effectively.

68. Plaintiff Green's responsibilities as Senior Administrative Assistant - Incident Reports requires her to be in constant contact with people to provide information on fire or incident reports, and to do research in order to get emergency services when needed either

14

through Boston Housing, Salvation Army, Red Cross or insurance companies. This process further requires the public to come to 1010 Mass Ave., to pick up a fire report or information, where parking is a problem or paying a parking fee of five-dollars (which they often do not have); such problems did not exist at her former location.

69.     Because of information that Plaintiff Green has provided and offered to provide as a witness to the violations of law being perpetrated by Defendants, the actions of the Defendants are in violation of the terms and conditions of her employment and of law.

70.     The transfer or job relocation to 1010 Mass Ave., serves no other purpose than retaliation, discrimination, and harassment because of Plaintiff Green's exercise of her First Amendment Rights to freedom of speech in her union activity in an official capacity as shop steward, and in her role as a witness to and reporter of the violations of law perpetrated upon Plaintiff Barry.

71.     The transfer or job relocation has been difficult and frustrating for Plaintiff Green in trying to do Plaintiff Green's job in the last couple of months, and has caused severe emotional and physical distress and suffering, such that she has been compelled to seek medical treatment for the same.

72.     Plaintiff Green filed a grievance regarding her retaliatory, forced relocation, which was heard on 27 January 2005 by Labor Relations Analyst Alice Kessler.

73.     Labor Relations Analyst Kessler is the wife of Defendant Kessler.

74.     By decision dated 1 March 2005, Labor Relations Analyst Kessler found that there was no violation of the collective bargaining agreement, and thereby denied Plaintiff Green's grievance.

75. Plaintiffs are informed and believe, and thereupon allege, that such grievances that address the discrimination based upon political affiliation, and any related grievances, are arbitrarily, capriciously, and uniformly denied by the Office of Labor Relations, and specifically by Ms. Kessler.

76. As a direct and proximate cause of the foregoing actions and omissions of the Defendants, Plaintiff discovered from her physician on Saturday, 12 March 2005, that her blood pressure suddenly has become threateningly high, such that her physician has considered pulling Plaintiff Green from her position for health reasons.

77. As a direct and proximate cause of the foregoing actions and omissions of the Defendants, Plaintiff Green has suffered, and will continue to suffer, severe emotional distress in amounts to be proven at trial, but no less than $100,000.00.

78. Defendants, in concert with each other, acted, and otherwise purposefully failed to act, to affect adversely the terms and conditions of Plaintiff Green's employment as set forth.


## CLAIMS

### First Cause of Action - Massachusetts Civil Rights Act M.G.L. c. 12, 11H and 11I

79. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

80. Defendants Christian, Hitchcok, Kessler, Moran, and certain Doe Defendants were at all times relevant herein acting under color of law.

81. Defendants interfered, or attempted to interfere, by threats, intimidation, and/or coercion, with Plaintiffs' exercise of their rights of freedom of speech and to due process of law, *inter alia.*

16

82. As a direct and proximate cause of Defendants' violation of laws as set forth herein, Plaintiffs have suffered, and continue to suffer, adverse and hostile employment actions, and severe emotional distress, in amounts as set forth herein and to be proven at trial.

## Second Cause of Action - Retaliation in Violation of M.G.L. c 149, § 185(b)

83. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

84. Plaintiffs have suffered retaliation in the form of adverse and hostile terms and conditions of employment because of Plaintiffs' reports regarding the unlawful political affiliation discrimination being perpetrated by Defendants.

85. As a direct and proximate result of said violations of public policy, Plaintiffs have suffered adverse and hostile employment terms and conditions, and have suffered, and will continue to suffer, severe emotional distress in amounts as set forth herein and to be shown at trial.

## Third Cause of Action - Whistleblower Protection M.G.L. c. 25. § 17

86. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

87. The terms and conditions of Plaintiffs' employment have been affected adversely because they reported Defendant Moran's unlawful conduct, of hiring and promoting only those individuals who had the "correct" political affiliations, to her superiors in the hopes that such unlawful conduct would stop.

88. As a direct and proximate result of said violations of public policy, Plaintiffs have suffered adverse and hostile employment decisions and have suffered, and will continue to suffer severe emotional distress in amounts as set forth herein and to be shown at trial.

## Fourth Cause of Action - 42 U.S.C. § 1983

89.    Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

90.    This claim for relief is brought against Defendants Moran, Christian, Kessler, and Hitchcock, and certain of the Doe Defendants, in their individual capacities for monetary damages, and against all Defendants in their official capacities, including the BFD, for declaratory and injunctive relief.

91.    Defendants Christian, Moran, Kessler, and Hitchcock were at all times acting under color of law.

92.    Plaintiffs are informed and believe, and thereupon allege, that the individual Defendants acted and/or purported to act herein under color of statutes, regulations, customs, practices, and/or usages of the Municipality of the City of Boston and the Commonwealth of Massachusetts.

93.    Plaintiffs are informed and believe, and thereupon allege, that by the aforementioned acts and/or omissions of Defendants Moran, Hitchcock, Kessler, and Christian and certain of the Doe Defendants, Plaintiffs have been unlawfully denied their First Amendment Rights to Freedom of Speech, due process of law, and their rights to be free from unlawful discrimination, including discrimination on the basis of political affiliation, whether created by federal, state, or local law, inter alia, in violation of rights guaranteed to them by the United States Constitution, 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and the Constitution and laws of the Commonwealth of Massachusetts, including but not limited to M.G.L., c. 12, §§ 11H, 11I, and 11J, Articles I, VI, XI, XII, and Amendment XVI of the Massachusetts Constitution, the Massachusetts Declaration of Rights, M.G.L. c. 127, § 32, M.G.L., c. 149, § 185b; and the City of Boston October 2000 Executive Order, inter

18

<u>alia</u>.

94.    Plaintiffs are informed and believe, and thereupon allege, that Defendants Moran, Christian, Hitchcock, Kessler, and certain of the Doe Defendants, acted herein knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference for the rights and/or interests and/or well being of Plaintiffs, thereby directly and proximately causing injuries in amounts as set forth herein and to be proven at trial.

### Fifth Cause of Acton - Conspiracy under 42 U.S.C. §§ 1985 and 1986

95.    Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

96.    Plaintiffs are informed and believe, and thereupon allege, that Defendants Moran, Christian, Hitchcock, Kessler, and certain of the Doe Defendants, acted in concert herein to deny Plaintiffs' their rights as set forth herein or otherwise adversely affect the terms and conditions of their employment, knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference for the rights and/or interests and/or well being of Plaintiffs, thereby directly and proximately causing injuries in amounts as set forth heerin and to be proven at trial.

### Sixth Cause of Action - Common Law Violation of Public Policy - Plaintif Barry

97.    Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

98.    Plaintiff Barry's terms and conditions of employment have been affected adversely because she refused to commit an unlawful act

99.    Plaintiff's Barry's terms and conditions of employment have been affected adversely because she performed an important public obligation by reporting Defendant Moran's unlawful conduct, of hiring and promoting only those individuals who had the "correct"

political affiliations, to her superiors in the hopes that such unlawful conduct would stop.

100.    Plaintiff Barry's terms and conditions of employment have been affected adversely because of exercising her right to freedom of speech in her refusal to endorse or become affiliated with those persons, including Defendants Moran and Christian and the Doe Defendants to whom they are politically affiliated, that exercised influence and control over the hiring practices within the Boston Fire Department.

101.    As a direct and proximate result of said violations of public policy, Plaintiff Barry has suffered adverse and hostile employment decisions and has suffered severe emotional distress in amounts as set forth herein and to be shown at trial.

## Seventh Cause of Action -- Common Law Violation of Public Policy - Plaintiff Green

102.    Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

103.    Plaintiff Green's terms and conditions of employment have been affected adversely because she refused to commit an unlawful act

104.    Plaintiff Green's terms and conditions of employment have been affected adversely because she performed an important public obligation, and otherwise exercised her First Amendment Rights to Freedom of Speech, by reporting Defendant Moran's unlawful conduct, of hiring and promoting only those individuals who had the "correct" political affiliations, to her superiors in the hopes that such unlawful conduct would stop.

105.    Plaintiff Green's terms and conditions of employment have been affected adversely because she sought to exercise, and otherwise exercised, her right to freedom of speech in her refusal to endorse or become affiliated with those persons, including Defendants Moran, Hitchcock, and Christian and the Doe Defendants to whom they are politically

20

affiliated, that exercised influence and control over the hiring practices within the Boston Fire Department.

106. As a direct and proximate result of said violations of public policy, Plaintiff Green has suffered adverse and hostile employment decisions and has suffered severe emotional distress in amounts as set forth herein and to be shown at trial.

## Eight Cause of Action - NEGLIGENT SUPERVISION

107. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

108. This claim for relief is brought against Defendants Christian and BFD.

109. Plaintiffs are informed and believe, and thereupon allege, that Defendants Christian and the BFD, and certain of the Doe Defendants, and/or their predecessors and successors in their respective employment offices, failed and refused to properly train, supervise, and/or discipline Defendant Moran, and certain other of the Doe Defendants, including but not limited to the supervisory staff of the BFD, thereby proximately causing the aforementioned injuries to Plaintiffs.

110. Plaintiffs are informed and believe, and thereupon allege, that Defendants BFD and Defendants Moran, Christian, Kessler, Hitchcock, and certain of the Doe Defendants acted herein with negligence and/or deliberate indifference to the rights, interests, and well being of Plaintiffs, thereby directly and proximately causing injuries in amounts as set forth herein and to be proven at trial.

## Ninth Cause of Action - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

111. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

112. This cause of action is brought against Defendant Moran, Christian, Hitchcock, Kessler, and certain of the Doe Defendants in their individual capacities only.

113. Plaintiffs are informed and believe, and thereupon allege, that Defendant Moran, Christian, Hitchcock, Kessler, and certain of the Doe Defendants wrongfully and intentionally caused emotional distress upon Plaintiffs.

114. Plaintiffs are informed and believe, and thereupon alleges, that Defendant Moran, Christian, Hitchcock, Kessler, and certain of the Doe Defendants acted herein knowingly, intentionally, willfully, and deliberately without regard for Plaintiffs' rights, interests, or well being, thereby directly and proximately causing injuries in amounts as set forth herein and to be proven at trial.

## Tenth Cause of Action - NEGLIGENCE

115. Plaintiffs hereby incorporate all of the allegations contained in the preceding paragraphs.

116. This cause of action is brought against all Defendants.

117. Plaintiffs are informed and believe, and thereupon allege, that Defendants acted herein negligently, including but not limited to Defendants' failure to appropriately use, and/or train and supervise Defendant Moran and other Fire Department employees in the appropriate standards of conduct regarding the prohibitions of political affiliation discrimination and retaliation for exercises of rights to freedom of speech constitutes negligence under state tort law and M.G.L. c. 258, *inter alia*, thereby proximately and directly causing the injuries of which Plaintiffs complain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

(A)    For a Declaration that the actions and/or omissions of Defendants in failing and refusing to promote Plaintiff Barry on the basis of her political affiliation, or lack thereof, *inter alia,* with the attendant deprivations, as set forth herein violate Plaintiff Barry's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution; Articles 1, 10, 11, 12, and 16 of the Massachusetts Declaration of Rights; 42 U.S.C. §§ 1983 and 1985; G.L. c. 127, § 32; and state tort law; and for a further Declaration that the actions and/or omissions of Defendants in retaliating against Plaintiff Green because of her status as a witness to the aforesaid violations and for her support of Plaintiff Barry's report of violations of law violate Plaintiff Green's rights under the Fifth and Fourteenth Amendments to the United States Constitution, Articles 1, 10, 11,12, and 16 of the Massachusetts Declaration of Rights, 42 U.S.C. § 1983; M.G.L. c. 12, §§ 11H, 11I, and 11J; M.G.L. c. 127, § 32; and state tort law;

(B)    For and injunction preventing Defendants from interfering with the terms and conditions of Plaintiff Green's position's responsibilities such that she be relocated at 115 Southampton Road, Boston with all of the facilities necessary for her to fulfill her employment responsibilities without harassment or intimidation.

(C)    For general damages in the amount of no less than $200,000 against Defendant Moran, Christian, Kessler, Hitchcock, and certain of the Doe Defendants, in their individual capacities, according to the proof thereof at trial;

(D)    For special damages against Defendants Moran, Christian, Kessler, and Hitchcock, and certain of the Doe Defendants, in their individual capacities, according to the proof thereof at trial, but not less than $54,000.00 for Plaintiff Barry and for medical expenses for Plaintiff Green;

(E)     For punitive damages against Defendant BFD, and Defendants Moran, Christian, Kessler, and Hitchcock, and certain of the Doe Defendants, in their individual capacities, in an amount sufficient to deter such practices in the future, which amount is alleged to be $500,000;

(F)     For reimbursement of Plaintiff's costs and expenses herein, including reasonable provision for their attorneys' fees and costs pursuant to 42 U.S.C. § 1988, M.G.L. c. 12, § 11H, 11I, and 11J, and the Massachusetts Declaration of Rights, *inter alia*; and

(G)     For such further and additional relief as the Court deems appropriate and just.

## PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE

Respectfully submitted,
Plaintiffs Denise M. Barry and Jane B.Green
By their attorney,


Thomas F. Feeney, BBO # 645605
THOMAS F FEENEY, COUNSELLOR AT LAW
39 Sheafe Street, Suite 1
Chestnut Hill, Massachusetts 02467
Tel.: (617) 277-5750
Fax: (617) 277-5751

DATED:14 March 2005

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 05 - 0977

|  |  |
|---|---|
| DENISE BARRY and JANE GREEN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROBERT MORAN; PAUL A. CHRISTIAN; WILLIAM KESSLER; WILLIAM HITCHCOCK; CITY OF BOSTON FIRE DEPARTMENT, and JOHN and/or JANE DOES 1-50, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION OF COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES

The undersigned, Denise Barry and Jane Green., on this 14th Day of March 2005, hereby verities, affirms, and swears, under the pains and penalties of perjury, that the allegations contained in the Complaint for Declaratory Relief, Injunctive Relief, and Damages, attached hereto, are true and correct and based upon our respective personal knowledge, unless otherwise indicated.


_____
Denise Barry

_____
Jane Green

**SUFFOLK, ss.**



# Commonwealth of Massachusetts

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. __05-0977 G__

_____ __DENISE M. BARRY ET AL__ _____ , Plaintiff(s)

v.

_____ __ROBERT MORAN ET AL__ _____ , Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:    **ROBERT MORAN, PAUL A. CHRISTIAN, WILLIAM KESSLER, WILLIAM HITCHCOCK and CITY OF BOSTON FIRE DEPARTMENT**

You are hereby summoned and required to serve upon___**Thomas F. Feeney Esq.**___

plaintiff's attorney, whose address is __39 Sheafe St.  Suite 1  Chestnut Hill. MA 02467__,

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Boston of our said court on __Monday in room 3  12th Floor__ the __twenty first__ day of__March__ A.D. 200_5_, at __two__ o'clock ~~A.M.~~ PM., at which time you may appear and show cause why such application should not be granted.

Witness, ~~Suzanne V. DelVecchio~~ Barbara J. Rouse, Esquire, at Boston, the __fifteenth__ day of __March__, in the year of our Lord two thousand __five__.

Asst. Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. _____

DENISE M. BARRY and
JANE B. GREEN,                          )
                                        )
                Plaintiffs,             )
                                        )
        vs.                             )
                                        )
ROBERT MORAN; PAUL A. CHRISTIAN;        )
WILLIAM KESSLER; WILLIAM                )
HITCHCOCK; CITY OF BOSTON FIRE          )
DEPARTMENT, and JOHN and/or JANE        )
DOES 1-50,                              )
                                        )
                Defendants.             )
                                        )

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs Denise Barry and Jane Green, hereby seek from this Honorable Court an

injunction to prevent further violation of Plaintiff Jane Green's federal and state constitutional and

statutory rights.  Plaintiffs seek further the scheduling of a hearing on this matter at the court's

earliest convenience on short Order Notice..  If an injunction does not issue immediately, the

irreparable violation of Plaintiff Jane Green's constitutional rights will continue, the interests of

the public  irreparably will be affected adversely, and Plaintiff Green will continue to suffer severe

and debilitating emotional distress.

### CHALLENGED ACTION

Defendants Moran, Christian, Hitchcock, and certain Doe Defendants have retaliated

against Plaintiff Jane Green for her exercise of her First Amendment Right to Freedom of Speech

in her stance as a witness to the unconstitutional and otherwise unlawful activities perpetrated

upon Defendant Denise Barry. Defendants' unlawful conduct has taken the form of removing Plaintiff Green from her office and files and relocating her to a desk without a telephone, and in a remote location from her files and research sources. Defendants have imposed this burden maliciously, arbitrarily, and capriciously, and for the sole purpose of retaliating against Plaintiff Green for her exercise of her Constitutional Rights.

## FACTS

The facts are as set forth in Plaintiffs' Verified Complaint for Declaratory Relief, Injunctive Relief, and Damages. Summarized briefly here, the Defendants are engaging in a pattern and practice of discriminating against Plaintiff Barry on the basis of political affiliation; Ms. Barry is not politically affiliated with the Defendants and is denied pay raises and job promotions due to her in favor of persons less qualified than herself, but who are politically affiliated with those in power in the Boston Fire Department and City government. Plaintiff Green, as Plaintiff Barry's Union Shop Steward, witnessed Defendant Moran discriminating against Plaintiff Barry on the basis that she was not politically affiliated with those persons of power and influence over the BFD. Consequently, Plaintiff Green was targeted by Defendants Moran, Christian, Hitchcock, and certain Doe Defendants, so as to deprive her of, or otherwise coerce her into not exercising, her First Amendment Rights to Freedom of Speech.

The terms and conditions of Plaintiff Green's job have been adversely affected by her forced, arbitrary, capricious, and malicious relocation from 115 Southhampton Street to 1010 Massachusetts Avenue, without a telephone for three months, and separated from key files and records. The public, primarily families who are in desperate need because of being victims of house and automobile fires, continues to be affected adversely by the adverse affect on Plaintiff Green's employment conditions.

2

It is within Defendants' power to return Plaintiff Green to her office, files, and records located at 115 Southhampton Avenue immediately, without prejudice to the BFD. Failure to return Plaintiff Green to 115 Southhampton will allow a continuance of the Defendants' violation of Plaintiffs' Green's rights, and the continuing adverse impact upon the public's interest in helping the victims of house and automobile fires.

### STANDARDS OF REVIEW

This is an action for Declaratory and Injunctive relief. Preliminary injunctive relief is appropriate if it can be shown that: 1) there is a substantial likelihood that the plaintiff will prevail on the merits of the claims asserted; 2) irreparable harm will be suffered unless the relief requested is granted 3) the balance of the equities favors Plaintiff's needs; and 4) the requested relief is in the public interest. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). "What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." Cheney, 380 Mass. at 617. Unlike at summary judgment or on motions to dismiss, allegations are not facts, and factual assertions in affidavits are not necessarily viewed in a light favorable to either party; the judge determines the credibility of the witnesses and the strength of the documentary evidence. See Cheney, 380 Mass. at 619-620.

In this case involving the decisions of a governmental body "before issuing the preliminary injunction, a judge is required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). In this case, the public interest would be best served by returning Plaintiff Green to 115 Southhampton Avenue, and would not impact adversely the BFD, or any of the Defendants.

3

## ARGUMENT

The Defendants are discriminating against Plaintiff Green in the exercise of her rights to freedom of speech. As such, strict scrutiny is required to redress her deprivation of rights. Elrod v. Burns, 427 U.S. 347, 373 (1976)("It is firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny). Based upon Plaintiffs' clearly established rights as set forth in the Complaint, in conjunction with the facts asserting that unqualified persons from the outside have been hired in place of Plaintiff Barry, that Defendant Moran statement witnessed by Plaintiff Green that "Well, if you're not into politics little girl, then you're not into a position here," and based upon the arbitrary and capricious nature of Plaintiff Green's relocation that is both against common sense and the public interest, Plaintiffs' likelihood of success on the merits is substantial.

Plaintiffs' claims for the constitutional violations herein do not require an inquiry into the subjective intent of the Defendants. See, e.g., Foucha v. Louisiana, 504 U.S. 71, 112 S. Ct. 1780, 1785, 118 L. Ed. 2d 437 (1992) (The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" (quoting Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990)). The Defendants' actions and omissions will be viewed objectively, regardless of the excuses that they can invent to explain their words and behavior.

Notwithstanding the imminently threatened, palpable, psychological injuries to Plaintiff Green, constitutional rights are so basic to our society that their continued deprivation is addressable through equitable relief. Injury from their deprivation, "even for minimal periods of time," is by definition irreparable. See Elrod v. Burns, 427 U.S. at 373 (loss of First Amendment

4

freedoms); see also Ex parte Young, 209 U.S. 123, 159-60 (1908). In this case irreparable harm can be presumed.

The facts and holding of the case in Elrod v. Burns, are directly on point for the instant matter. In Elrod, employees of the Cook County, Illinois, sheriff's office brought a class action alleging that they were fired or threatened with dismissal for the sole reason that they were not affiliated with or sponsored by the political party of the current sheriff. As the Court held, 427 U.S. at 359-60 :

> Patronage practice falls squarely within the prohibitions of Keyishian and Perry.[1] Under that practice, public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party. The threat of dismissal for failure to provide that support unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise. The belief and association which government may not ordain directly are achieved by indirection. And regardless of how evenhandedly these restraints may operate in the long run, after political office has changed hands several times, protected interests are still infringed and thus the violation remains.

In the same manner, adversely affecting an employee's terms and conditions of employment for failure to support the political machine currently in power, or otherwise speaking out against such patronage activities, is protected activity, the deprivation of which will warrant the issuance of preliminary injunctive relief.

Additionally, the potential aggravation of Plaintiff Green's emotional distress may, in the proper circumstances, be sufficient for a finding of irreparable injury. Courts have held that irreparable injury may be found in "emotional stress, depression and reduced sense of well-being" that constitute "psychological and physiological distress." See, e.g., Chalk v United States Dist. Court Central Dist. of Cal., 840 F.2d 701, 709 (9th Cir. 1988)(employee's transfer to another job

---

[1]   Keyishian v. Board of Regents, 385 U.S. 589 (1967), and Perry v. Sindermann, 408 U.S. 593 (1972).

created such stress and emotional deprivations that such constituted irreparable injury - :"plaintiff is not claiming future monetary injury; his injury is emotional and psychological--and immediate. Such an injury cannot be adequately compensated for by a monetary award after trial"); <u>Finot v. Pasadena City Bd. of Educ.</u>, 250 Cal.App.2d 189, 202-03, 58 Cal.Rptr. 520, 529 (1967) (teacher's reassignment from classroom duty to home teaching, imposed in retaliation for an exercise of first amendment rights, was a "legally remediable detriment"). In this case, as set forth in the Complaint, the emotional distress engendered by Defendants' actions has been so hostile that Plaintiff Green's blood pressure has become threateningly high.

Plaintiffs' causes of action under Section 1983, *inter alia,* seek to enforce constitutional rights, liberty interests, and substantive and procedural due process rights. As set forth by the Supreme Court in <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990)(emphasis added):

> A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, **e.g., freedom of speech** or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain actions "regardless of the fairness of the procedures used to implement them." <u>Daniel v. Williams</u>, 474 U.S. [327,] 331 . . .(1986)[.]

Because of the vital nature of Plaintiff Green's First Amendment rights, the burden is on the Defendants in this Motion to show the that any asserted state interest in paramount. As further set forth by the Supreme Court in <u>Burns</u>, 427 U.S. at 362:

> This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct . . . ." <u>Buckley v. Valeo</u>, supra, 424 U.S., at 65, 96 S.Ct., at 656. Thus encroachment "cannot be justified upon a mere showing of a legitimate state interest." <u>Kusper v. Pontikes</u>, 414 U.S., at 58, 94 S.Ct., at 308. The interest advanced must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest [citations omitted].

The Defendants have no justifiable rationale for the forced move and subsequent abusive treatment of Plaintiff Green's employment conditions, and no reason to prejudice the public.

## CONCLUSION

In accordance with the foregoing, Plaintiffs respectfully request that this honorable court to enjoin the Defendants from perpetuating the forced, unlawful relocation of Plaintiff Green from her office located at 115 Southampton Street, and order her to be allowed to move back to her office..

<div style="margin-left: 50%;">

Respectfully submitted,
Plaintiff Denise Barry and Jane Green,
By their attorney,


Thomas F. Feeney (BBO# 645695)
THOMAS F. FEENEY, COUNSELLOR AT LAW
39 Sheafe Street, Suite 1
Chestnut Hill, Massachusetts 02467
Tel.: (617) 277-5750
Fax: (617) 277-5751

</div>

DATED: 14 March 2005

7

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 05 – 0977

DENISE M. BARRY and
JANE B. GREEN,

    Plaintiffs,

  vs.

ROBERT MORAN; PAUL A. CHRISTIAN;
WILLIAM KESSLER; WILLIAM
HITCHCOCK; CITY OF BOSTON FIRE
DEPARTMENT, and JOHN and/or JANE
DOES 1-50,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**RECEIVED**

MAR 14 2005

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

  Plaintiffs hereby move this honorable Court for immediate injunctive relief for Plaintiff

Jane B. Green, pursuant to M.G.L. c. 212, § 4, c. 214, § 1, c. 231A, c. 249 § 4, and

Massachusetts Rules of Civil Procedure, Rule 65. Plaintiffs' Motion for Preliminary Injunctive

Relief is based upon the Verified Complaint for Declaratory Relief, Injunctive Relief, and

Damages filed herewith, and any further testimony the Court may require and the arguments of

counsel at a hearing on the instant motion.

        Respectfully submitted,
        Plaintiff Denise Barry and Jane Green,
        By their attorney,

        Thomas F. Feeney (BBO# 645505)
        THOMAS F. FEENEY, COUNSELLOR AT LAW
        39 Sheafe Street, Suite 1
        Chestnut Hill, Massachusetts 02467
        Tel.: (617) 277-5750
DATED: 14 March 2005     Fax: (617) 277-5751

JS 44 (Rev. 3/99)

**CIVIL COVER SHEET**

05 - 10528 RCL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product / Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury — | of Property 21 USC | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | Liability / Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 875 Customer Challenge |
| ☐ 160 Stockholders' Suits | Liability / ☐ 371 Truth in Lending | | | 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle / Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| | Product Liability / ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | ☐ 360 Other Personal Injury / Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | & Disclosure Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment / Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | 26 USC 7609 | |
| | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

REMOVAL FROM STATE COURT PURSUANT TO 28 U.S.C. § 1441 (PLAINTIFF'S CLAIMS INCLUDE
42 U.S.C. §§ 1983, 1988, etc.)

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____