UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10528-RCL

DENISE M. BARRY and JANE B.
GREEN,
        Plaintiffs,

v.

ROBERT J. MORAN, PAUL A.
CHRISTIAN, WILLIAM KESSLER,
WILLIAM HITCHCOCK, CITY OF
BOSTON FIRE DEPARTMENT, and
JOHN and/or JANE DOES 1-50.
        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF
THE OPPOSITION OF DEFENDANTS CITY OF BOSTON AND  PAUL A. CHRISTIAN
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.

Respectfully submitted,
DEFENDANTS, PAUL A. CHRISTIAN and CITY
OF BOSTON,

Merita A. Hopkins
Corporation Counsel

By their attorneys:

James M. Chernetsky
Assistant Corporation Counsel
(617) 635-4048
BBO# 638152
Helen G. Litsas
Assistant Corporation Counsel
(617) 635-4023
BBO#  644848
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201

**TABLE OF CONTENTS**

I.    INTRODUCTION…………………………………………………………………………1

II.   FACTUAL BACKGROUND………………………………………………………………2

III.  ARGUMENT……………………………………………………………………………3

  A. PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THEY FAIL TO
     SATISFY THE REQUISITE PRELIMINARY INJUNCTION STANDARD……………………3

  B. PLAINTIFF BARRY LACKS STANDING TO SEEK A PRELIMINARY INJUNCTION
     CONCERNING GREEN'S CONDITIONS OF EMPLOYMENT, AND ONLY
     GREEN'S LIKELIHOOD OF SUCCESS ON THE MERITS IS THEREFORE
     RELEVANT TO THE MOTION FOR PRELIMINARY INJUNCTION…………………………3

  C. PLAINTIFF GREEN FAILS TO MAKE THE REQUISITE SHOWING OF IRREPARABLE
     HARM ENTITLING THEM TO INJUNCTIVE RELIEF..………..……………………………4

  D. THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF THE DEFENDANTS CITY AND
     CHRISTIAN, AND GRANTING THE INJUNCTION WOULD HARM THE PUBLIC
     INTEREST………………………………………………………….………………………5

  E. PLAINTIFF GREEN IS NOT SUBSTANTIALLY LIKELY TO SUCCEED
     ON THE MERITS OF ANY OF HER CLAIMS…………………………………………..…..6

        1. Counts I-V, VIII And X Fail To State Any Actionable Claim Against Any
           Defendants….……………….….………………………………………………7

              a.  Counts I, IV And V Are Not Legally Permissible Against Municipal
                  Defendants……………………………………………………………..7

                    i.   The Massachusetts Civil Rights Act Bars Plaintiff Green's
                         Recovery From A Municipality Such As The City of Boston
                         Because The City Is Not A "Person" Within The Meaning Of
                         The Statute…………………………………………………..…7

                    ii.  The Federal Civil Rights Act Also Bars Plaintiff's Recovery
                         Because No Liability Attaches On A *Respondeat Superior*
                         Basis And Because Plaintiff Green Has Pleaded That A
                         Municipal Policy Exists *Prohibiting* The Allegedly Illegal
                         Conduct…………………………………………………………..7

              b.  Count II Fails To State A Claim Upon Which Relief May Be
                  Granted On Two Distinct Grounds…………………………………..8

                    i.   G.L. c. 149, §185(b) Does Not Permit The Plaintiff to Recover
                         Against Individual Defendants..……………………………8

                    ii.  Plaintiff Green Has Failed To Provide Any Evidence Of
                         Submitting The Requisite Written Notice Prior To Filing Suit,
                         And She Has Also Failed To Allege That She Engaged In Any

Activity Protected By The Statute...............................

c.  Count III Fails To State A Claim Upon Which Relief May Be
    Granted  Because The Statute Referenced Does Not Exist...........10

d.  Count VII Fails To State A Claim Upon Which Relief May Be
    Granted.......................................................................10

    i.    The Whistleblower Statute, G.L. C. 149, §185, Preempts Green's
          Public Policy Claim..............................................10

    ii.   The Plaintiff Failed to Satisfy The Presentment Prerequisites For
          Claim................................................................10

    iii.  The Plaintiff Has Failed to Allege and Establish That She Was
          Terminated By Her Employer, The City of Boston...........11

e.  Counts VIII And X Fail To State Claims Upon Which Relief May Be
    Granted For Several Reasons...........................................11

    i.    The Plaintiff Did Not Satisfy The Presentment Prerequisites For
          Both Claims.......................................................11

    ii.   Under the Massachusetts Tort Claims Act, The Individual
          Defendants Are Immune From Liability For Any Alleged
          Negligent Conduct Committed Within the Scope Of Their
          Employment......................................................12

    iii.  The Massachusetts Tort Claims Act Also Bars Any Claims Of
          Negligent Supervision...........................................12

2.  All Claims Against The Individual Defendants In Their Official Capacity Are Superfluous And
    Subject To Dismissal..........................................................................13

3.  Counts I, IV, V and IX Have A Low Probability Of Success On The Merits...................14

    a. Plaintiff Green Is Unlikely To Satisfy The High Threshold Required
       For Her Intentional Infliction Of Emotional Distress Claim in Count
       IX...............................................................................14

    b. The State and Federal Civil rights Claims Against The Individual
       Defendants Have A Low Likelihood Of Success On The Merits........14

IV. CONCLUSION..................................................................................17

CERTIFICATE OF SERVICE....................................................................17

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 05-10528-RCL

---

DENISE M. BARRY and JANE B.
GREEN,
      Plaintiffs,

v.

ROBERT J. MORAN, PAUL A.
CHRISTIAN, WILLIAM KESSLER,
WILLIAM HITCHOCK, CITY OF
BOSTON FIRE DEPARTMENT, and
JOHN and/or JANE DOES 1-50.
      Defendants.

---

## OPPOSITION OF DEFENDANTS CITY OF BOSTON AND PAUL A. CHRISTIAN TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.

## I.    INTRODUCTION

The Plaintiffs have filed suit against the City of Boston ("the City") and Paul A. Christian ("Christian"), *inter alia*, seeking damages, declaratory relief and injunctive relief, and alleging various state and federal constitutional violations, common law torts and violations of state statutes (enumerated in detail at p. 5, *infra*). The Plaintiffs jointly move for a preliminary injunction ordering the Defendants to reassign Plaintiff Jane Green ("Green") to her former workplace at 115 Southhampton Street from her current workplace located at 1010 Massachusetts Avenue.

The City and Christian oppose the Plaintiffs' Motion because: (1) there is not a significant risk of irreparable harm absent Green's relocation; (2) the Plaintiffs have a low likelihood of success on the merits of the litigation; (3) the balance of hardships resulting from the injunctive relief sought weighs in the City's and Christian's favor; and (4) granting the injunctive relief would be contrary to the public interest.

## II.    FACTUAL BACKGROUND

Plaintiff Denise Barry ("Barry") is an employee of the City of Boston Fire Department ("Fire Department").  Green is an employee of the Fire Department's Fire Reports Department, which is itself a part of the Fire Prevention Unit.  Green is also a union shop steward in SENA Local 9158.  Green's job duties involve assisting fire victims with obtaining monetary recovery from insurance companies and welfare and other aid agencies.  In 2002, the Fire Prevention Unit was relocated from Fire Headquarters at 115 Southhampton Street to 1010 Massachusetts Avenue (with the exception of the Fire Reports unit, a subdivision of the Fire Prevention Unit comprised of Green and one other employee).  Green's supervisor has been located at 1010 Massachusetts Avenue since 2002.

In the Complaint, Green alleges[1] that she was present as a union shop steward for an October 9, 2003, meeting between Barry and Defendant Robert Moran concerning Barry's complaints that she did not receive promotions and pay increases allegedly due to her.  Green alleges that at this meeting: (1) Moran made statements indicating to Barry that she would not receive promotions or raises because of her lack of political activity; and that (2) Green said to Moran, "I can't believe you are saying this to her, not to mention in front of me."

Green further alleges that on December 23, 2004, she was informed that her unit was to be relocated from 115 Southhampton Street to 1010 Massachusetts Avenue, effective the following Monday. She further alleges that the equipment and files needed by her to perform her duties were not transferred as promised.  Green alleges that her location at 1010 Massachusetts Avenue and her lack of access to files is burdensome to her and to the public.  She also alleges that she has suffered emotional distress as a result of this relocation.

Additionally, Green alleges that the relocation of her unit was in retaliation for her participation more than fourteen months earlier in the meeting between Barry and Moran.  The Complaint fails to allege any activity by Green related to Barry's claims in the fourteen months prior to her relocation.

---

[1]  Because the injunctive relief allegedly sought poses potential harm to Green only, only Green's claims are enumerated here. See discussion infra at p. 3.

Green's allegations of protected activity appear to relate solely to Green's single statement to Moran, "I can't believe you are saying this to her, not to mention in front of me."  Additionally, Green alleges elsewhere in her Complaint that she is able to make trips two to three  times per week to access other necessary files. Records of fires for approximately the last two and one-half years are available to Green via computer, without the need for her to access paper files at 115 Southhampton Street.  The vast majority of her work involves records of recent fires.

Green grieved her complaint regarding her relocation in January, 2005.  The relocation was upheld, but remains the subject of a pending arbitration.

### III.    ARGUMENT

#### A.  PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THEY FAIL TO SATISFY THE REQUISITE PRELIMINARY INJUNCTION STANDARD.

A party seeking a preliminary injunction must establish (1) that she is substantially likely to succeed on the merits of its claim;  (2) that absent the injunction there is "a significant risk of irreparable harm"; (3) that the balance of hardships weighs in her favor;  and (4) that the injunction will not harm the public interest. Lanier Professional Services, Inc. v. Ricci, 192 F.3d 1, 4 (1st Cir. 1999).  Plaintiffs Green and Barry cannot meet this standard, and thus, their request for injunctive relief must be denied.

#### B.  PLAINTIFF BARRY LACKS STANDING TO SEEK A PRELIMINARY INJUNCTION CONCERNING GREEN'S CONDITIONS OF EMPLOYMENT, AND ONLY GREEN'S LIKELIHOOD OF SUCCESS ON THE MERITS IS THEREFORE RELEVANT TO THE MOTION FOR PRELIMINARY INJUNCTION.

The Plaintiffs have moved jointly for a preliminary injunction concerning the location of Green's workspace.  The Plaintiffs have not alleged--and could not reasonably allege-- that Plaintiff Barry will herself be irreparably harmed in the event that the injunctive relief is not granted.  As such, Barry does not have a "personal stake in the outcome" of this motion for injunctive relief and cannot show that she "has sustained or is immediately in danger of sustaining some direct injury" as the result of the location of Green's workspace.  The motion should be denied as to movant Barry for that reason alone.   See, e.g. Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983).

Most significantly, since only Green has standing to bring a motion for a preliminary injunction concerning the location of her workspace, it is only Green's likelihood of success on the merits of her claims that may properly be considered in analyzing the motion for preliminary injunction.

### C.  PLAINTIFF GREEN FAILS TO MAKE THE REQUISITE SHOWING OF IRREPARABLE HARM ENTITLING THEM TO INJUNCTIVE RELIEF.

Plaintiff Green argues that she will suffer irreparable harm if her workplace continues to be located at 1010 Massachusetts Avenue along with the remainder of the Fire Prevention Unit because (1) she has allegedly suffered psychological injuries, and, (2) because where a deprivation of constitutional rights is alleged, irreparable harm should be presumed.

Irreparable harm is subject to a sliding scale analysis, such that the showing of irreparable harm required of a plaintiff increases in the presence of certain factors, including the failure to exhaust administrative remedies, which cut against a court's traditional authority to issue equitable relief. Gately v. Massachusetts, 2 F.3d 1221, 1232 (1st Cir. 1993).   Likewise, a government-employee plaintiff may obtain injunctive relief upon demonstrating sufficient irreparable harm, taking into consideration "the wide latitude traditionally granted the government in dispatching its own internal affairs." DeNovellis v. Shalala, 135 F.3d 58, 63 (1st Cir.1998), citing Gately, 2 F.3d at 1234.  It is well-settled that irreparable harm can consist of "a substantial injury that is not accurately measurable or adequately compensable by money damages."  Ross-Simon of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).

Green cites a 1998 case from the 9th Circuit and a 1967 California state court case for the proposition that her emotional distress is sufficient for a finding of irreparable harm.   These authorities are not only non-binding in this jurisdiction, but also inconsistent with this jurisdiction's precedent.  In the First Circuit, the fact that an employee may be psychologically troubled by an adverse job action does not usually constitute irreparable injury warranting injunctive relief. DeNovellis, 135 F.3d at 64, citing Soldevilla v. Secretary of Agriculture, 512 F.2d 427, 430 (1st Cir. 1975).

Should Green prove her allegations of emotional distress (and the alleged physical manifestations thereof), these damages are perfectly compensable by monetary damages recoverable through litigation,

and as such are not a proper basis for seeking equitable relief. Likewise, constitutional violations are routinely the subject of litigation in this Court, and fully compensable by monetary damages. Green's analogy to the facts of <u>Elrod v. Burns</u>, 427 U.S. 347 (1976) falls flat because the plaintiffs in <u>Elrod</u> were either terminated or threatened with imminent termination. Green has not been terminated, but is confronted simply by a change in the location of her workplace.

Additionally, Green has a pending arbitration concerning her workplace location, and as such has failed to exhaust her administrative remedies.

### D. THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF THE DEFENDANTS CITY AND CHRISTIAN, AND GRANTING THE INJUNCTION WOULD HARM THE PUBLIC INTEREST.

On balance, the City's and the public's interest in preserving independent management of the City's own internal administrative affairs far outweighs Green's interest in relocating her current office space[2] to its former location. It is well-established that a plaintiff must "demonstrat[e] sufficient irreparable harm, taking into consideration the wide latitude traditionally granted the government in dispatching its own internal affairs." <u>DeNovellis v. Shalala</u>, 135 F.3d 58, 62 (1st Cir. 1998) (omitting citations and internal quotations). As a general rule, the judiciary refrains from intruding upon the discretion of government administrative matters. <u>Cf.</u> <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983).

Green's claim falls far short of the sufficient showing of irreparable injury required for the extraordinary remedy of injunctive relief. Green's claim is essentially a claim of inconvenience, *i.e.*, that her office space has been relocated to a location less amenable to her than was her former location. On the other hand, the governance of the City of Boston would be significantly hampered should such mundane matters as the location of the workplace of individual work units or employees be subject to judicial review.

The location of the Fire Records subdivision of the Fire Prevention Unit of the Boston Fire Department is not a matter which engages the public interest. Compare <u>Daughtry v. Dennehy</u>, 946 F.

---

[2] It is also noteworthy that while Green alleges that after her relocation to 1010 Massachusetts Avenue, she lacked phone access, she concedes elsewhere in her Complaint that such phone access was restored on March 8, 2005. Cplt. ¶ ¶ 64, 65. Any request for injunctive relief based on her alleged lack of phone access is therefore moot.

Supp. 1053, 1066 (D. Mass. 1996) (this Court recognized that where certain court civil sessions had been relocated to cramped offices in an adjacent state office building apart from courthouse staff and files, "this is apparently not enough to engage the public interest . . . ").   Nor do considerations advanced by Green on behalf of the public rise to a level of public concern.   The availability of free parking for fire victims is of significantly less import than the right of municipalities to assign employees in a manner they deem most efficient.   Green's re-location put her in the same location as the remainder of the Fire Prevention Unit and her supervisor.

Overall, such allegations do not satisfy the requisite threshold warranting the extraordinary remedy of injunctive relief.   To allow the injunctive relief based on conclusory allegations of a plaintiff's inconvenience would constitute a disfavored and unjustified intrusion into a municipality's management of internal affairs that would not only contravene governing precedent, but also the public interest.

### E.   PLAINTIFF GREEN IS NOT SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS.

The Plaintiffs have brought ten claims (The claims against individual defendants are in both official and individual capacities).  They are:

1. **Count I**: Violation of the Massachusetts Civil Rights Act ("MCRA"), G.L. c. 12, §11H and 11I (both plaintiffs versus all defendants);

2. **Count II**: Violation of G.L. c. 149, §185(b) (both plaintiffs versus all defendants);

3. **Count III**: Violation of G.L. c. 25, §17 (both plaintiffs versus all defendants);

4. **Count IV**: Civil Rights violations pursuant to 42 U.S.C. § 1983 (both plaintiffs versus all defendants);

5. **Count V:** Conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986 (both plaintiffs versus all defendants);

6. **Count VI:** Common law violation of public policy (Barry versus all defendants);

7. **Count VII:** Common law violation of public policy (Green versus all defendants)

8. **Count VIII:** Negligent supervision (both Plaintiffs versus the City and Christian only);

9. **Count IX:** Intentional Infliction of Emotional Distress (both Plaintiffs versus individual defendants only); and,

10. **Count X:** Negligence (both plaintiffs versus all defendants).

Plaintiff Green is not substantially likely to succeed on the merits of her claims. As set forth *infra*, five of the ten claims are barred versus all potential defendants because they fail to state a claim upon which relief can be granted. Another three claims cannot be pursued against the City because the City cannot be held liable under the theories advanced by the plaintiffs. The remaining claims have a low likelihood of success on the merits.

    1.   **Counts I-V, VIII And X Fail To State Any Actionable Claim Against Any Defendant.**

        a.   **Counts I, IV And V Are Not Legally Permissible Against Municipal Defendants.**

            i.   **The Massachusetts Civil Rights Act Bars Plaintiff Green's Recovery From A Municipality Such As The City of Boston Because The City Is Not A "Person" Within The Meaning Of The Statute.**

Plaintiff Green's claim in Count I asserts a Massachusetts Civil Rights Act ("MCRA") claim against the City of Boston. The MCRA provides for a cause of action against "... any person or persons..." G.L. c. 12, §H. The City of Boston cannot be held liable under the MCRA because a municipality is not a "person" within the meaning by the MCRA. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-592 (2001).

            ii.   **The Federal Civil Rights Act Also Bars Plaintiff's Recovery Because No Liability Attaches On A *Respondeat Superior* Basis And Because Plaintiff Green Has Pleaded That A Municipal Policy Exists *Prohibiting* The Allegedly Illegal Conduct.**

Plaintiff Green's claims in Counts IV under the Federal Civil Rights statute fail under a *respondeat superior* theory. "The doctrine of *respondeat superior* is not a basis for rendering municipalities liable under §1983 for the constitutional torts of their employees." Monell v. New York Department of Social Services, 436 U.S. 658, 665, n.7 (1978). Accordingly, her claim cannot proceed on that basis.

Additionally, Plaintiff Green's claim fails to allege that a custom or municipal policy exists which has violated the plaintiff's constitutional rights. Strikingly, the Plaintiffs have actually alleged the contrary (at paragraphs 10 and 11 of the *Verified Complaint*); that is, that the City in fact has in place a policy <u>prohibiting</u> the very conduct which forms the basis of the constitutional claims. It is well-settled that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government is responsible for under § 1983. <u>Monell</u>, 436 U.S. at 694. There must be a showing by the Plaintiff that the municipal action was taken with the requisite degree of culpability, and must demonstrate an affirmative, causal link between the policy or custom of the municipality and the particular constitutional violation alleged. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997). Moreover, a "policy or custom" cannot be inferred from a single constitutional violation caused by an individual state actor. <u>Mahan v. Plymouth County House of Corrections</u>, 64 F.3d 14, 16 (1st Cir. 1995) (omitting citations); <u>Altman v. Kelly</u>, 36 F. Supp. 2d 433 (D. Mass. 1999).

Here, Plaintiff has alleged a policy that prohibits the very violations she alleges. Additionally, she has alleged a single violation which is insufficient for her claim. Accordingly, the City cannot be held liable for the claim advanced in Count IV.

          **b.**  <u>**Count II Fails To State A Claim Upon Which Relief May Be Granted On Two Distinct Grounds.**</u>

                    **i.**  **G.L. c. 149, §185(b) Does Not Permit The Plaintiff to Recover Against Individual Defendants.**

The Massachusetts Whistleblower Statute, G.L. c. 149, § 185, does not permit recovery against individuals, and accordingly, plaintiff's claims against all individual defendants cannot prevail. "The Whistleblower statute permits only an 'employer' to be sued, not individual supervisors." <u>Bennett v. City of Holyoke</u>, 230 F. Supp. 2d 207, 221 (D. Mass. 2002), <u>aff'd by Bennett v. City of Holyoke</u>, 362 F.3d 1 (1ˢᵗ Cir. 2004), <u>citing</u> <u>Orell v. Umass Memorial Medical Center, Inc.</u>, 203 F. Supp. 2d 52, 2002 U.S.

Dist. LEXIS 7909 (April 30, 2002).   See also Haddad v. Scanlon, 10 Mass. L. Rep. 298 (1999) (Welch,

J.).   "The plain language of the statute suggests that the Massachusetts Legislature intended to exclude

claims brought under the Whistleblower Statute against individual employees, even when acting in their

official capacities." Bennett, 230 F. Supp. 2d at 221.   Plaintiff Green's G.L. c. 149, § 185 claims against

all individual employee defendants are not actionable and cannot proceed.

           ii.       **Plaintiff Green Has Failed To Provide Any Evidence Of Submitting The Requisite Written Notice Prior to Filing Suit, And She Has Also Failed To Allege That She Engaged In Any Activity Protected By The Statute.**

Plaintiff Green has not complied with the notice requirements under the statute. G.L. c. 149,

§ 185, also requires a plaintiff to provide written notice to his or her employer before disclosing the

alleged wrongdoing to a "public body. " G.L. c. 149, § 185(c)(1).   A "Public body" is defined as "any

federal, state or local judiciary." "According to the requirement, 'the protection against retaliatory action

. . . shall not apply to an employee who makes a disclosure to a public body unless the employee has

brought the [allegedly illegal or corrupt] activity . . . to the attention of a supervisor . . . by written notice

and has afforded the employer a reasonable opportunity to correct the activity.'" Bennett v. City of

Holyoke, 362 F.3d 1 (1st Cir. 2004), citing G. L. c. 149, § 185(c)(1).

Accordingly, before filing this lawsuit in the Massachusetts Superior Court, Plaintiff Green was

required to provide her employer with the requisite written notice.   "The statute is unqualified in its

[written notice] requirement and in this instance a hard and fast rule does serve a rational purpose,

namely, by avoiding uncertainties about what might have happened if formal notice had been given."

Dirrane v. Town of Brookline, 315 F.3d 65 (1st Cir. 2002).   Moreover, "[t]he written notice requirement

gives an employer one last chance to correct wrongdoing before an employee goes public with his

accusations." Id.   The First Circuit has required this written notice even when a plaintiff's "oral

complaints were repeated and comprehensive and a written notice would likely have produced no

different result." Id.

Here, the record reflects that no such written notice was provided by Green to her supervisor or to the City. While Green alleges that she filed a grievance concerning her relocation on January 27, 2005, she does not allege that this grievance was written or that it disclosed any wrongdoing to a supervisor or the City. Cplt. At ¶ 72. Moreover, even if Plaintiff Green provided such notice, her claim remains barred because nothing in the Complaint suggests that Green engaged in any whistleblowing activity as defined by the statute, or that any action by the defendants related to Green's sole comment.

**c.     Count III Fails To State A Claim Upon Which Relief May Be Granted Because The Statute Referenced Does Not Exist.**

Count III is brought for "whistleblower protection" pursuant to G.L. c. 25, §17. No such statute is in effect in the Commonwealth of Massachusetts. A statute with that citation was repealed in 1997, and was in any case irrelevant to the facts alleged since chapter 25 regulates the Department of Public Utilities, and the specifically repealed section concerned telecommunication and energy assessments.

**d.     Count VII Fails To State A Claim Upon Which Relief May Be Granted On Three Grounds.**

**i.     The Whistleblower Statute, G.L. C. 149, § 185, Preempts Green's Public Policy Claim.**

Green cannot assert a common law public policy claim when she has an express statutory remedy available. See Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985), aff'd 397 Mass. 1004 (1986) (holding that a plaintiff alleging an age discrimination claim must proceed exclusively under M.G.L.A. c. 151B if that statute provides a remedy). Here, that statutory remedy is the Massachusetts Whistleblower statute, G.L. c. 149, § 185, on which she has already based another claim in her Complaint. See supra at 9-10. Having already asserted such a claim under that statute, the Plaintiff's common law public policy claim is preempted and barred.

**ii.     The Plaintiff Failed to Satisfy The Presentment Prerequisites For Her Claim.**

While the Massachusetts Supreme Judicial Court has not specifically addressed whether public policy claims sound in tort or contract, the court has intimated that such claims sound in tort. King v. Driscoll (II), 424 Mass 1, (1996). Moreover, here, Green has asserted a claim sounding in tort and also

10

seeks tort remedies, including emotional distress damages. She has, however, failed to comply with the presentment requirements of the Massachusetts Tort Claims Act. See supra at 10. Moreover, she has failed to allege in her Complaint that she made presentment. Such failures negate her cause of action. See G. L. c. 258; Johnson v. Trustees of Health and Hospitals of the City of Boston, 23 Mass. App. Ct. 933 (1986); Foley v. Greater Lowell Regional Vocational Technical School District, 2001 Mass. Super. LEXIS 275 (2001).

### iii. The Plaintiff Has Failed to Allege and Establish That She Was Terminated By Her Employer, The City of Boston.

Green's claim of common law violation of public policy is also barred because she does not allege that she has been terminated from her employment nor is there any evidence of such. Common law public policy claims available to at-will employees apply only to employees who have been terminated or discharged from their position. See Wright v. Shriner's Hosp. For Crippled Children, 412 Mass. 469, 472 (1992). As she alleges in the Complaint, Green remains a City of Boston employee.

### e. Counts VIII And X Fail To State Claims Upon Which Relief May Be Granted.

### i. The Plaintiff Did Not Satisfy The Presentment Prerequisites For Both Claims as Required By The Massachusetts Tort Claims Act.

Plaintiff Green's claims under Counts VIII and X cannot prevail because she failed to effect proper presentment in accordance with the Massachusetts Tort Claims Act. The Act was intended as "a comprehensive and uniform regime of tort liability for public employers." Lafayette Place Assoc. v. Boston Redevelopment Authority, 427 Mass. 509, 534 (1998). The Act provides the sole remedy for persons alleging torts against municipalities. Id. at 533-35. Under the provisions of the Act, presentment within two years of the date the cause of action arose is a statutory condition precedent to the bringing of a lawsuit against a municipality. The statute provides in pertinent part:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. . . .

11

G.L. c. 258, § 4.  Thus, timely presentment must be made in strict compliance with the statute, and the executive officer must be given six months to settle or deny the claim.  Only then can a civil action pursuant to G.L. c. 258 be commenced.  The requirements of presentment are very specific, and a failure to provide adequate written notice to the public employer negates a claimant's cause of action.  See Weaver v. Commonwealth, 387 Mass. 43, 45 (1982); Johnson v. Trustees of Health and Hospitals of the City of Boston, 23 Mass. App. Ct. 933 (1986); Spring v. Geriatric Authority of Holyoke, 394 Mass. 274 (1985); Pruner v. Clerk of the Superior Court in the County of Norfolk, 382 Mass. 309 (1981).

Plaintiff Green has failed to allege in her Complaint or provide any evidence that she gave the Executive Officer of the City written notice of her negligence claims in accordance with the Act.  Accordingly, such failure is fatal to her claims.

### ii.    Under the Massachusetts Tort Claims Act, The Individual Defendants Are Immune From Liability For Any Alleged Negligent Conduct Committed Within The Scope Of Their Employment.

Count X brings negligence claims against all defendants, and Count VIII brings a negligent supervision claim against Defendant Christian.  All such claims fail because the individual defendants are all individual public employees who cannot be liable for negligent conduct pursuant to the Massachusetts Tort Claims Act. The public employer is the sole entity answerable for injuries caused by a public employee.  See Appleton v. Town of Hudson, 397 Mass. 812 (1986), Pruner v. Clerk of the Superior Court in the County of Norfolk, 382 Mass. 309, 31 (1981).  An individual "public employee" in his capacity as such is not a proper defendant.    Taplan v. Town of Chatham, 390 Mass. 1,2-3 (1983).  Accordingly, all negligence claims against each of the individual defendants must be dismissed.

### iii.    The Massachusetts Tort Claims Act Also Bars Plaintiff Green's Claims Based On Negligent Supervision.

Count VIII makes a claim against the City and Christian for the negligent supervision of the other individual defendants.  While Christian is immune from liability as discussed *supra*, the City is also immune under the Massachusetts Tort Claims Act.

The rule of sovereign immunity protects governments at all levels from legal actions. <u>See</u> Prosser & Keeton, Law of Torts, 5th Ed. (West Pub. Co., 1984),§ 131, p. 1033. Deeply embedded in the common law, the rule is that "the Commonwealth cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed in the statute." <u>Glickman v. Com.</u>, 244 Mass. 148, 149 (1923); <u>see also</u> <u>Executive Air Service, Inc. v. Division of Fisheries and Game</u>, 342 Mass. 356 (1961). A city or town is thus immune to actions of negligence, including claims based on an act or failure to prevent harm, except where the Massachusetts Tort Claims Act abrogates that immunity. See Chapter 258, §10(j); G. L. c. 258, §2. The statute sets forth, for example, that the municipality is immune from the following:

> any claim based on an act or failure to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

G.L. c. 258, § 10(j). All negligent supervision claims stem from claims based on the failure to prevent or mitigate harm, rather than participation in the initial injury-causing circumstance. Such claims, therefore, are thus barred by G. L. c. 258, § 10(j). <u>See</u> <u>Armstrong v. Lamy</u>, 938 F. Supp. 1018, 1026 (D. Mass. 1996); <u>Doe v. Old Rochester Regional School Dist.</u>, 56 F. Supp.2d 114, 121 (D. Mass. 1999).

### 2. All Claims Against The Individual Defendants In Their Official Capacity Are Superfluous And Subject To Dismissal.

The Plaintiffs' *Verified Complaint* indicates that all claims against individual defendants are brought in both their official and individual capacities (<u>see</u>, Cplt. At ¶ 3-6). Such claims are superfluous and subject to dismissal. While personal or individual capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, "[o]fficial capacity" suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>See</u> <u>Kentucky v Graham</u>, 473 U.S. 159, 165-66 (1985); <u>Monell</u>, 436 U.S. at 690, n 55. A judgment against a public servant "in his official capacity" imposes liability on the entity that he represents. <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985). Thus, such suits against the individual public

13

employees in their official capacities are unnecessary when suit has already been brought against the public entity, as is the case here.

As the U.S. Supreme Court has noted, "[o]fficial capacity" suits can lead to misunderstanding and confusion, and accordingly,:

> There is no longer a need to bring official-capacity actions against local government officials, for under <u>Monell</u>, *supra* [436 U.S. 658 (1978)] local government units can be sued directly for damages and injunctive or declaratory relief.

<u>Kentucky v Graham</u>, 473 U.S. 159, 167, n.14 (1985).  For this reason, courts have directed that all such counts be designated as being directed against the municipality.   For example, in <u>Stratton v. Boston</u>, 731 F. Supp. 42 (D.  Mass. 1989), the Court directed that claims which had been made against the Police Commissioner "in his official capacity" be re-captioned as being directed against the City of Boston. <u>Id.</u> at 46.

In this case, all but one claim brought against individual defendants in their "official capacity" are already brought against the City and are merely duplicative.   The exception is Count IX's "official capacity" claim versus Defendant Christian for Intentional Infliction Of Emotional Distress, for which the City is in any case immune from liability pursuant to G.L. c. 258, §10(c).  Thus, each of the official capacity claims directed against individual defendants are subject to dismissal.

### 3. Counts I, IV, V and IX Have A Low Probability Of Success On The Merits.

#### a. <u>Plaintiff Green Is Unlikely To Satisfy The High Threshold Required For Her Intentional Infliction Of Emotional Distress Claim In Count IX.</u>

Green does not have a substantial likelihood of proving the elements of Count IX's intentional infliction of emotional distress claim, brought against all individual defendants. Green bears the burden of establishing that:  "(1) that the [defendants] intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant[] w[as] the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." <u>Haddad v. Gonzalez</u>, 410 Mass. 855, 871 (1991).  Conduct is extreme and outrageous if it goes "beyond all possible bounds of decency

14

and is utterly intolerable in a civilized community." <u>Agis</u> v. <u>Howard Johnson Co.</u>, 371 Mass. 140, 145 (1979). "It is for the court to decide whether the defendant's conduct may be reasonably regarded as so extreme as to permit recovery." <u>Ornell</u>, <u>supra</u> at 70.

"Plaintiff[] encounter[s]  extreme difficulty to satisfy the 'outrageous requirement of the second prong." <u>Bennett</u>, <u>supra</u>. " 'Outrageous does not encompass 'workaday insults, annoyances, or even threats and petty oppressions, 'but rather a 'high order of reckless ruthlessness or deliberate malevolence." <u>Id.</u> "[P]laintiff must establish more than 'tortious or even criminal intent' or that the employer has 'intended to inflict emotional distress, or even that [their] conduct has been characterized by malice or a degree of aggravation." <u>Id.</u>

Green's claims do not reach the stringent standard set forth by the case law.  Certainly any alleged action regarding the relocation of the Plaintiff Green does not rise to the level that is "utterly intolerable in a civilized society." <u>Agis</u>, 371 Mass. at 145.  Moreover, Green has also failed to allege that she "suffered distress so severe that no reasonable person could be expected to endure it." <u>Bennett</u>, <u>supra</u>. at 40.  Conclusory allegations of humiliation and personal loss are insufficient to sustain a claim of severe and extreme emotional distress.  <u>See</u>, <u>e.g.</u>, <u>Simon</u> v. <u>Solomon</u>, 385 Mass. 91, 93 (plaintiff suffered distress so severe that she was unable to care for children and sought psychiatric counseling).

Green's sole allegation is that she attended a meeting between Barry and Moran at which Barry's grievances were discussed and that more than fourteen months later her unit was relocated.  She alleges nothing even approaching the level of conduct giving rise to liability for intentional infliction, and alleges no facts suggesting that the actions in relocating the unit were intended to cause Green distress.

**b. <u>The State And Federal Civil Rights Claims Against The Individual Defendants Have A Low Likelihood Of Success On The Merits</u>.**

The remaining MCRA claim in Count I against the individual defendants is not likely to be proven by Green.  Green claims violations of her First Amendment rights to Free Speech and Due Process, both accomplished by threats, intimidation and coercion.  Nothing in her Complaint supports her conclusory allegation of threats, intimidation or coercion by any defendant against Green.

In order to prevail on her retaliation claim in Count IV under 42 U.S.C. § 1983 for exercising her First Amendment rights, Green must prove that: (1) she engaged in speech on a matter of public concern; (2) her interest in speaking and the public interest in hearing what she had to say outweigh any legitimate interest on the government's part in the efficient performance of its public function; and (3) that the protected speech was a motivating factor, or at least a substantial factor, in an adverse employment action against her. See Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002). Green cannot meet this burden.

Simply put, the Complaint reveals no indication that Green engaged in any constitutionally protected speech. The sole activity by Green alleged in the Complaint is her attendance at a meeting between Barry and Moran at which she made the single statement, "I can't believe you are saying this to her, not to mention in front of me." No further statements or actions on Barry's behalf during the fourteen months prior to Green's transfer are alleged. Nothing suggests that Green's lone remark was considered to be of any import by any defendant. Additionally, no statement or action of any defendant indicating a connection to Barry's complaints is alleged. In short, nothing in the Complaint suggests that the relocation of Green's work unit was in any way related to her remark.

Green's statement to Moran, as described in the Complaint, is merely "a public employee speaking out on a workplace concern" which "cannot be said to engage the public interest on a large scale." Fabiano v. Hopkins, 352 F.3d 447 (1st Cir.2003). As the Supreme Court has explained, not all remarks implicate constitutional protection:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark -- and certainly every criticism directed at a public official -- would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

Connick v. Myers, 461 U.S. 138, 149 (1983). Moreover, although the Plaintiffs have pleaded extensive facts over 111 paragraphs, they have pleaded no facts suggesting that Green's statement to Moran was a substantial or motivating factor in the relocation of Green's unit.

Even should Green establish a *prima facie* case, the Defendants will prove that they would have taken the same action "even in the absence of the protected conduct." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Green, therefore, cannot prevail on her claim.

Regarding Green's Fourteenth Amendment claim, Green alleges that she availed herself of her opportunity to grieve her complaint regarding the relocation of her work unit, and that a hearing was held concerning her grievance. Although she alleges that the hearing was held before the wife of Defendant Kessler, she has not alleged that Kessler (who does not work for the Fire Department) played any role in the relocation of her work unit, nor was Kessler present at the meeting which is Green's only alleged involvement with Barry's case.

As for Plaintiff Green's claims of conspiracy under 42 U.S.C. § 1985 and § 1986 in Count V, they also fail. Claims brought under 42 U.S.C. § 1985 were not intended to provide a federal cause of action against every conspiracy, but only against racial conspiracies or those motivated by a discriminatory animus. See Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Here, Plaintiff Green does not provide the Court with sufficient allegations or evidence that the defendants were motivated by any racial or class-based animus toward her, which is required when bringing such a claim. Id. Additionally, she is unlikely to provide any evidence of any concerted actions involving the defendants. Accordingly, such failures of her § 1985 claim also renders her claim under § 1985 fatal. See Hahn v. Sargent, 523 F.2d 461 (1st Cir. 1975), cert. denied 425 U.S. 904 (1976).

**IV. CONCLUSION**

For all of the foregoing reasons, the defendants respectfully request that the Plaintiffs' Motion for Preliminary Injunction be denied.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document was served upon counsel of record for the Plaintiffs via U.S. Mail to 39 Sheafe Street, Suite 1, Chestnut Hill, MA 02467, and via facsimile to 617-277-5751.

_4-4-05_
Date

18