UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE M. BARRY and JANE B. GREEN, | ) CIVIL NO. 05-10528 RCL |
| Plaintiffs, | ) |
| vs. | ) |
| ROBERT J. MORAN; PAUL A. CHRISTIAN; WILLIAM KESSLER; WILLIAM HITCHCOCK; CITY OF BOSTON FIRE DEPARTMENT, and JOHN and/or JANE DOES 1-50, | ) |
| Defendants. | ) |

## FIRST AMENDED
## VERIFIED COMPLAINT FOR
## INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES

Plaintiffs Denise M. Barry and Jane B. Green, by and through their undersigned counsel, hereby assert the following facts and claims against Defendants Robert J. Moran, Paul A. Christian, William Kessler, William Hitchcock [collectively referred to as the "Individual Defendants"] in their individual and official capacities, and against Defendant City of Boston Fire Department [hereinafter "BFD"].

### I. INTRODUCTION

1) This is an action to redress the deprivation under color of statutes, ordinances, regulations, customs, policies, practices, and/or usages of rights, privileges, and immunities secured to Plaintiffs by the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States, Articles I, VI, XI, XII, and Amendment XVI of the

Massachusetts Constitution, Declaration of Rights, and 42 U.S.C. §§ 1983, 1985, 1986,

and 1988, et seq., M.G.L. c. 12, §§ 11H, 11I, and 11J, M.G.L. c. 25, §17, and M.G.L. c.

149, § 185b, the City of Boston October 2000 Executive Order, and state common law,

inter alia. Plaintiffs seek declaratory and injunctive relief pursuant to M.G.L. c. 214, § 1,

M.G.L. c. 231A, and 42 U.S.C. §§ 1983, 1985, and 1986, *inter alia*, and damages.

Plaintiffs allege further that Defendant Fire Department and its supervisors negligently

failed to train and supervise its employees, including but not limited to Defendant Moran,

thereby causing the violations of Plaintiffs' constitutional, statutory, and other legal

rights, and seek damages accordingly.

## PARTIES

1.    Plaintiff Denise M. Barry is an individual residing at 4 Essex Street, Charlestown, Suffolk
      County, Massachusetts 02129.

2.    Plaintiff Jane B. Green is an individual residing at 60 LaGrange Street, West Roxbury,
      Suffolk County, Massachusetts 02132.

3.    Defendant Robert Moran is employed as the Personnel Manager in the Boston Fire
      Department. Upon information and belief, Defendant Moran resides at 86 Minot Street,
      Dorchester, Boston, Massachusetts 02122. Defendant Moran is sued in his official and
      individual capacities.

4.    Defendant Paul A. Christian is employed as the Fire Commissioner for the City of Boston
      Fire Department, with his place of business located at 115 Southhampton Street, Boston,
      Massachusetts, and who resides at 1682 Columbia Road, South Boston, Massachusetts
      02127. Defendant Christian is sued in his official and individual capacities.

5.   Defendant William Kessler is employed by the City of Boston as the Director of
     Employment and Recruitment, with his place of business located at Boston City Hall,
     Room 612, Boston, Massachusetts 02201. Defendant Kessler is sued in his official and
     individual capacities.

6.   Defendant William Hitchcock is employed as the Director of Operations for the City of
     Boston Fire Department, and resides at 15 Hatch Avenue, Braintree, Massachusetts
     02184. Defendant Hitchcock is sued in his official and individual capacities.

7.   Defendant City of Boston Fire Department ["BFD"] is an agency and/or department of
     incorporated governmental municipality of the Commonwealth of Massachusetts, with its
     principal office located at 115 Southhampton Street, Boston, Suffolk County,
     Massachusetts.

8.   Defendants John and/or Jane Does 1-50 [hereinafter "Doe Defendants"] are
     administrators, supervisors, and/or other employees and/or staff of the BFD and/or of
     related municipal entities, and/or government and/or non-government persons and/or
     entities employed, hired, and/or otherwise engaged by the City of Boston, whose true
     names and capacities are as yet unknown to Plaintiffs and their counsel despite inquiry
     and due diligence, who acted and/or failed to act herein as more particularly alleged
     below. The Doe Defendants are sued herein in both their official and their individual
     capacities. The true names and capacities of the Doe Defendants will be substituted
     through a Motion to Amend the Complaint as they become known.

## JURISDICTION

9.  The original Complaint in ths matter was filed in the Superior Court of Commonwealth
    of Massachusetts which had jurisdiction over this action for damages and equitable relief
    pursuant to M.G.L. c. 212, § 4 and M.G.L. c. 214, §1, respectively, *inter alia.*

10. The civil rights claims asserted herein present questions of federal law thereby conferring
    jurisdiction upon this Court under 42 U.S.C. §§ 1983, 1985, and 1986, inter alia  Any
    and all state law claims contained herein form part of the same case or controversy and
    therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.


## FACTS COMMON TO ALL COUNTS

11. On or about October 2000, City of Boston Mayor Thomas M. Menino issued an
    Executive Order that "ordered and directed" that "[a]ll departments within the City of
    Boston shall adhere to this policy" and setting forth the policy, *inter alia*, that
    "discrimination, retaliation and harassment are contrary to City policy and are also illegal.
    Such conduct is defined as follows: . . . Conduct that conditions a person's hiring,
    compensation, terms and conditions of employment or access to services provided by the
    City on that person's . . . political affiliation[.]"

12. Plaintiffs are informed and believe, and thereupon allege that the October 2000 Executive
    Order was issued to address a historical pattern and practice of political affiliation
    discrimination, a.k.a. "patronage" or "cronyism", within Boston City departments,
    including but not limited to Defendant Boston Fire Department.

### PLAINTIFF DENISE M. BARRY

13.    On or about 21 August 1996, Plaintiff Barry commenced employment with the BFD in

the Training Division as a Principal Clerk, with an R-8 civil service employment rating.

14.    On or about 3 July 1998 after a budget review, the BFD upgraded all R-8 positions. As a

result, Plaintiff Barry and another employee were upgraded to Head Clerk (Rl1) positions.

Then, on 1 September 1998, a Memorandum went out from AFSCME Council 93

regarding the Joint Clerical Upgrade Committee Meeting such that whoever held a R-11

Head Clerk position was upgraded to Head Clerk (R12) position, Step 1 (Plaintiff Barry is

now at the current pay rate of a step 5, pursuant to regular Union step increases, at

approximately $666.00 per week).  This has been the only time that Plaintiff Barry has

been upgraded.

15.    On or about July 2001, Defendant Moran was hired by the BFD.  Plaintiffs are informed

and believe, and thereupon allege, that Defendant Moran was not qualified or otherwise

suited for the position of personnel manager, was suspended and/or terminated from his

previous human resources position for cause, and obtained the position with the BFD as a

political favor.

16.    On or about 14 July 2003, Plaintiff Barry asked Defendant Moran why she was not

getting raises or upgrades, whereupon Defendant Moran told Plaintiff Barry that there

was not enough money and that no one is getting a raise.  Coincidentally, despite the

purported lack of money, Plaintiff Barry discovered that Defendant Moran was trying, at

this time, to create an R-15 Administrative Assistant position for a Sheila Mancuso, who

just recently was employed at the BFD on 12 October 2002 as a form of patronage and

political favor.

17.    On or about 14 August 2003, Plaintiff Barry submitted a 12-page letter of recommendations from various fire and civilian personnel from different offices that Plaintiff Barry had assisted during her BFD career.

18.    On or about 20 August 2003, Plaintiff Barry applied for an R-15 Administrative Assistant position in the BFD, for which she was well-qualified. Plaintiff Barry went on two interviews; first with Defendant Moran; and second with Chief Robert Calobrisi. On her way to the second interview, Plaintiff Barry was told by other employees not to waste her time because they - Defendant Moran and Defendant Christian) already had someone picked for the job from outside the department, and that she purportedly did not meet the minimum entrance qualifications according to the job posting.   Plaintiff Barry is informed and believes, and thereupon alleges that an outsider, Michelle Urso, who did not meet the minimum qualifications but was politically affiliated and otherwise associated with those with power and influence in the BFD, was hired for the position on or about 1 October 2003.

19.    On or about 28 August 2003, during a conversation with Defendant Moran, Plaintiff Barry asked Defendant Moran if he had received a reply from City Hall about her pay raise. Defendant's response was, despite the recent hiring as set forth above,  "No, I didn't tell you the City is out of money, there is a freeze on raises and hiring?" "No,"Plaintiff said, "you didn't tell me."

20.    For the past 2 years, Defendant Chief William F. Hitchcock and Chief David R. Granara have requested step increases on several occasions for Plaintiff Barry, which repeatedly were denied by Defendants Moran and Christian.

21.    Plaintiff is informed and believes, and thereupon alleges, that regular meetings were held
between and among Defendants Moran, Hitchcock, and Christian in which meetings it
was determined who would be hired or promoted such that the primary factor, was not the
person's qualifications, but was the applicant's political affiliation or other association
with those with power and influence as to the BFD.

22.    For each position for which Plaintiff Barry applied, she was well qualified for the
position, more so than 90% of the persons who received the jobs.

23.    For more than the past three years, Plaintiff Barry has been passed over for promotions
and step increases because she is not politically affiliated or otherwise advantageously
associated with those in power in the Fire Department, or those in City Government who
have influence in the Fire Department.

24.    Defendants BFC, Moran, Christian, and Hitchcock, and certain of the Doe Defendants
have established a pattern and practice of hiring and/or promoting almost exclusively
those persons who are politically affiliated, associated, or otherwise connected to those
with power and influence over the BFD and those persons in charge, including but not
limited to Defendants Moran, Christian, and Hitchcock.

25.    On or about 1 October 2003, a BFD nurse, knowing of Plaintiff's competence, asked
Plaintiff if she would be willing to assist in organizing the medical bills for payment in a
job classified as "Case Manager - Indemnification.". Plaintiff agreed to help and
Defendant Moran agreed to appoint Plaintiff Barry as an Acting .position of MM-5.

26.    In order to prepare for her new responsibilities, Plaintiff requested of Defendant Moran if
she could attend Peoplesoft Training at City Hall because the software had been updated.
Defendant Moran's reply was "Yes, I will work on it immediately."

27.   On or about 1 October 2003, Plaintiff Barry asked Defendant Moran what Acting
      Position grade and step that she was doing as a Case Manager. Defendant Moran
      responded that the position was an "MM-5, and that he would work out what step it was
      and respond to Plaintiff Barry at a later time.

28.   On or about 3 October 2003, after only one day at the new position, Plaintiff Barry sent
      $43,996.48 worth of payrun claims to City Hall to be processed; there was a significant
      backlog of such payrun claims when Plaintiff Barry entered the position.

29.   On or about 3 October 2003, Nurse Barbara Ryan send an electronic mail message to
      Carol Connors and Plaintiff Barry, thanking them for their extra effort during the backlog
      process.

30.   On or about 6 October 2003, Department Nurse Barbara Ryan send an electronic mail
      message to Chief Granara saying that she wanted to thank him for allowing Plaintiff
      Barry to assist in the claims payment process and that Plaintiff Barry is a pleasure to work
      with and performs her duties exceptionally well.

31.   Plaintiff Barry was doing both her regular position's responsibilities as well as the Case
      Manager's responsibilities during the time that she had the temporary upgrade.

32.   On or about 6 October 2003, Plaintiff Barry requested again of Defendant Moran about
      the step rate, because she was only receiving the pay for a step 1 while she should be
      receiving at least a Step 3 or 4.

33.   On or about 7 October 2003, Plaintiff Barry requested again of Defendant Moran if he
      had a chance to ask City Hall about the step rate; Defendant Moran responded that he
      would check into it.

34.    On or about 7 October 2003, Plaintiff Barry sent $25,753.28 worth of payrun claims to City Hall for processing in order to assist in clearing the Case Manager backlog.

35.    On or about 8 October 2003, Plaintiff Barry went to the Fire Marshall's Office of Maryanne McHugo in order to get trained in People Soft, but Ms. McHugo had informed Defendant Moran earlier that she could not train Plaintiff Barry, and Defendant Moran had failed to inform Plaintiff Barry about this situation, thereby causing unnecessary dissension among BFD employees, and embarrassing Plaintiff Barry.

36.    On or about 9 October 2003, Plaintiff Barry had a meeting with the Fire Department Human Resources Manager, Defendant Robert Moran. This meeting was called because Plaintiff Barry wanted to inquire if she would be getting the Case Manager position and because Plaintiff Barry had complaints that she was not receiving promotions and pay increases when due.

37.    At the 9 October 2003 meeting, in response to Plaintiff Barry's request for the position and complaints, Defendant Moran said that Plaintiff Barry would not be getting the position, that City Hall had someone else in mind and said, rather blatantly, "Well, if you're not into politics little girl, then you're not into a position here."

38.    At the 9 October 2003 meeting, at which Plaintiff Jane Green was present as Plaintiff Barry's Union Shop Steward, Plaintiff Green promptly stood up upon Defendant Moran's statement above, and said to Defendant Moran "I can't believe you are saying this to her, not to mention in front of me." Defendant Moran replied "that's the way it is around here." Whereupon Plaintiff Barry said "so, I am going to be punished because I am not into politics?" Defendant Moran shrugged his shoulders and said "that's politics for you."

39.    Later on 9 October 2003, Plaintiff Barry was informed that Defendant Moran was going to retaliate against Plaintiff Barry for her complaints and request for pay raises, such that he never would approve any pay increases for Plaintiff Barry. That has been the case since that time, such that Plaintiff Barry has continued to be denied promotions and wage increases.

40.    The person who received the Case Manager position was a former BFD employee who was politically affiliated with those with power and influence over the BFD, Ian McKenzie, who, Plaintiffs are informed and believe, did not even live within the City of Boston at the time he was hired, as is a requirement for such positions; Mr. McKenzie lived in Maryland at the time, while using a Boston property that he owned as his residence address for the purposes of applying for the position. Moreover, Mr. McKenzie received the position as an MM-8, Step 7, paying approximately $1,350.00 per week, rather than the MM-5, Step 1 pay at approximately $720.00 per week that Plaintiff Barry was receiving for doing the same job.

41.    After Plaintiff Barry's above-mentioned meeting with Defendant Moran, Plaintiff Barry complained in writing and in a meeting to Defendant Kessler, the Director of Employment and Recruitment for the City of Boston, who told her that what Defendant Moran said was not unlawful discrimination and that he could not help Plaintiff Barry.

42.    Plaintiff Barry had subsequent meetings with Defendant Kessler and at each meeting, Defendant Kessler refused to acknowledge that discrimination on the basis of political affiliation was unlawful and failed and otherwise refused do an independent investigation of Plaintiff Barry's allegations.

43.   On or about 3 September 2004, Plaintiff Barry submitted to her supervisor Chief Granara a written complaint against Defendant Moran and the BFD unlawful practices and policies that he was effectuating.

44.   Shortly about or after 3 September 2004, Chief Granara then informed Defendant Hitchcock and then proceeded to inform the Fire Commissioner Defendant Christian of Plaintiff's complaint against Defendant Moran and the alleged policies of discrimination.

45.   On or about 3 September 2004, Plaintiff Barry again submitted to, *inter alia*, Defendant Kessler, formal complaints about Defendant Moran's actions against her, including her lack of promotions and retaliation for her complaints, and as to Plaintiff Green for the retaliation being perpetrated upon her as her witness. The Mayor of the City of Boston was notified also of Plaintiffs' complaints against Defendant Moran. In response, on 21 October 2004, legal counsel for the City of Boston's Office of Labor Relations drafted a letter warning Plaintiffs' counsel not to speak with any employees of the City of Boston regarding this matter.

46.   On or about 7 September 2004, a meeting was held with Defendant Kessler to review the complaints regarding Defendant Moran's, and others', discrimination, mistreatment, and retaliation against Plaintiffs Barry and Green.

47.   More than six months have elapsed and Plaintiffs are informed and believe, and thereupon allege, that Defendant Kessler never conducted an investigation, and never issued a written opinion regarding Plaintiffs' complaints, despite receiving a written request to conduct an investigation, and despite receiving complaints about Defendant Moran from other individuals, in addition to Plaintiffs, during the meeting on 7 September 2004.

48.  Instead, Plaintiffs are informed and believe, and thereupon allege, that Defendant
Kessler's refusal and deliberate failure to consider and otherwise investigate the
Plaintiff's allegations of wrongdoing by Moran and the BFD was motivated by Plaintiff
Barry's and Plaintiff Green's lack of political affiliation or other advantageous
association with those having influence over the BFD.

49.  Defendant Kessler, instead of investigating the significant complaints about Defendant
Moran's unlawful employment practices from Plaintiff Barry and others, placed an
unreasonable and unnecessary burden upon Plaintiff Barry to produce more
documentation, when, in fact, Defendant Kessler had more than enough information to
commence and otherwise complete a good faith investigation.

50.  On or about 15 October 2004, Plaintiff Barry was denied a step increase by Defendants.

51.  On or about 20 October 2004, Chief Joseph Finn requested a step increase for Kathy
Frechette for an R-17. Kathy Frechette resides in South Boston and is politically
affiliated with those presently having political influence over the Boston Fire Department.

52.  On or about 9 December 2004, Plaintiff Barry had two hearings scheduled at Labor
Relations before Analyst Alice Kessler, the wife of Defendant William Kessler, that were
held with regards to her complaints that she was being discriminated against.

53.  Eight days after the hearings on 9 December 2004, Plaintiff Green was informed that the
Commissioner wants her out of the building immediately for no apparent reason.

54.  On or about this time in Mid-December 2004, Defendants Moran, Christian, and
Hitchock, *inter alia*, had a meeting in which it was decided to retaliate against Plaintiff
Barry through harassing her witness and Union Shop Steward Plaintiff Green, by moving
Plaintiff Green away from her files and make Plaintiff Green's terms and conditions of

employment more onerous. At this meeting, in response to concerns that their behavior
was retaliatory, Defendant Hitchcock stated "F–k Jane Green."

55.    Plaintiff Barry was offered only once an out-of-grade positions when such position were
made available to less senior civil service and non-civil-service employees who were
politically affiliated to influential persons, including but not limited to Defendants
Christian and Moran, for which she would have been qualified. On or about 15
November 2004, Plaintiff Barry reported and complained about this unlawful practice to
Defendants, but her reports and complaint were ignored.

56.    On or about 4 April 2005, Plaintiff Barry arrived at work, after having taken the last few
business days off because of the stress induced by Defendants' retaliatory conduct, and
discovered that a surveillance camera installed to monitor the entrance has been re-
trained, at the direction of the Fire Commissioner - Defendant Christian's office, to
monitor her work station, instead of the entrance way.

57.    Defendants Moran, Christian, and Kessler, and certain Doe Defendants acted, and
otherwise purposely failed to act, in concert with each other to affect adversely the terms
and conditions of Plaintiff Barry's employment as set forth herein.

58.    As a direct and proximate result of the discrimination and other violations of the law
perpetrated by Defendants, Plaintiff Barry has been deprived of approximately $55,000 in
wages and benefits, and continues to suffer such losses at the rate of approximately $740
per week, which is the difference between her present wages and the wages of the person
installed into the Case Manager position, for which Plaintiff Barry was well qualified.

59.    As a direct and proximate cause of the foregoing actions and omissions of the

Defendants, Plaintiff Barry has suffered, and will continue to suffer, severe emotional

distress in amounts to be proven at trial, but no less than $100,000.00.

**PLAINTIFF JANE B. GREEN**

60.    Plaintiff Green is employed by the Boston Fire Department as a civil service employee,

and a member of, and shop steward in, SENA, Local 9158.

61.    Plaintiff Green's responsibilities include reviewing fire reports of the on-scene firemen,

providing documentation and confirmation to victims of fires so that the victims, many of

whom are poor and destitute as a result of the fire, can receive recoveries from their

insurance companies and aid from welfare agencies, including temporary housing and

housing assistance payments.  The victims of house and car fires are directed to seek

assistance through Plaintiff Green.

62.    On or about 9 October 2003, Plaintiff Green was present as the Union Shop Steward for

Union Member Plaintiff Barry for a meeting between Plaintiff Barry and Boston Fire

Department Human Resources Manager Defendant Robert Moran.  This meeting was

called as a result of complaints by Plaintiff Barry that she was not receiving promotions

and pay increases when due.  In response to Plaintiff Barry's complaints, Defendant

Moran said, rather blatantly, "Well, if you're not into politics little girl, then you're not

into a position here."  Plaintiff Green promptly stood up and said to Defendant Moran "I

can't believe you are saying this to her, not to mention in front of me."  Mr. Moran

replied "that's the way it is around here."   Whereupon Plaintiff Barry said "so, I am

going to be punished because I am not into politics?" Defendant Moran shrugged his shoulders and said "that's politics for you."

63. On or about this time in Mid-December 2004, Defendants Moran, Christian, and Hitchock, *inter alia*, had a meeting in which it was decided to retaliate against Plaintiffs by moving Plaintiff Green away from her files and make Plaintiff Greens terms and conditions of employment more onerous. At this meeting, in response to concerns that their behavior was retaliatory, Defendant Hitchcock stated "F–k Jane Green."

64. On and before 27 December 2004, Plaintiff Green was based at 115 Southampton Street, Boston, Massachusetts; all of the records that she needs are there, as well as the computer files vital to the efficient operation of her position.

65. In addition, the Fire Investigation Unit, a necessary stop for the victims of car fires, is located just behind 115 Southhampton Street, on 920 Massachusetts Avenue. Fortunately for the victims of house fires, there is ample free parking near 115 Southampton Street.

66. On Thursday, 23 December 2004, Defendant Moran handed Plaintiff Green a paper stating "this is your official transfer paper," signed, Peter Liazza, Fire Marshal, Boston Fire Department. The transfer stated that management has decided that the Fire Reports section (Plaintiff Green's section) of the Fire Prevention Division will be relocated to 1010 Massachusetts Avenue, 4th floor, starting Monday, 27 December 2004. The only explanation provided was that "this is not a transfer but a relocation."

67. When Plaintiff Green was moved, she was told that the equipment and files needed for her position would be moved with her. This never has happened, and Plaintiff Green is informed and believes, and thereupon alleges, that it never will happen.

68.   The relocation is arbitrary, capricious, and malicious because Plaintiff Green's records
      still are located at 115 Southampton Street, requiring her to make two or three trips a
      week to look up information for customers.

69.   Plaintiff Green's move to 1010 Massachusetts Avenue also has an adverse impact upon
      the public.

70.   Plaintiff Green's move causes an unnecessary, malicious, arbitrary, and capricious burden
      to the public to access the Fire Investigation Unit, there is no free parking (often a vital
      consideration for the newly destitute); and Plaintiff Green was practically unreachable
      because her old telephone number had been disconnected, without being re-established at
      her new location until Tuesday, 8 March 2005. Plaintiff Green remains separated from
      key files and record located at 115 Southhampton Street, posing an undue and malicious
      burden upon the terms and conditions of her employment because of her exercise of her
      First Amendment Rights to speak on behalf of Plaintiff Barry.

71.   Up until 8 March 2005, Plaintiff Green's current location did not provide her with a
      telephone such that she was cut off from answering vital customer and work-related
      inquiries and helping customers in need of emergency services, such that she was forced
      to locate an available desk, and stand over the person whose desk it is, to answer and
      return calls at least 15 to 20 times a day for three months.

72.   The Boston Fire Department is in the business of not only putting out fires, but are to
      provide fire victims with the essential services they need to help them.

73.   The emotional pain of people experiencing the devastating effects of fire is traumatic, and
      then not to provide the emergency services they so desperately need creates further
      trauma and burden. With the loss of a home, belongings and sometimes family members,

16

people are emotionally distraught and angry, and are in need of emergency services. Plaintiff Green's present location prevents her from meeting the needs of the public effectively.

74.   Plaintiff Green's responsibilities as Senior Administrative Assistant - Incident Reports requires her to be in constant contact with people to provide information on fire or incident reports, and to do research in order to get emergency services when needed either through Boston Housing, Salvation Army, Red Cross or insurance companies. This process further requires the public to come to 1010 Mass Ave., to pick up a fire report or information, where parking is a problem or paying a parking fee of five-dollars (which they often do not have); such problems did not exist at her former location.

75.   Because of information that Plaintiff Green has provided and offered to provide as a witness to the violations of law being perpetrated by Defendants, the actions of the Defendants are in violation of the terms and conditions of her employment and of law.

76.   The transfer or job relocation to 1010 Mass Ave., serves no other purpose than retaliation, discrimination, and harassment because of Plaintiff Green's exercise of her First Amendment Rights to freedom of speech in her union activity in an official capacity as shop steward, and in her role as a witness to and reporter of the violations of law perpetrated upon Plaintiff Barry.

77.   The transfer or job relocation has been difficult and frustrating for Plaintiff Green in trying to do Plaintiff Green's job in the last couple of months, and has caused severe emotional and physical distress and suffering, such that she has been compelled to seek medical treatment for the same.

17

78. Plaintiff Green filed a grievance regarding her retaliatory, forced relocation, which was heard on 27 January 2005 by Labor Relations Analyst Alice Kessler.

79. Labor Relations Analyst Kessler is the wife of Defendant Kessler.

80. By decision dated 1 March 2005, Labor Relations Analyst Kessler found that there was no violation of the collective bargaining agreement, and thereby denied Plaintiff Green's grievance.

81. Plaintiffs are informed and believe, and thereupon allege, that such grievances that address the discrimination based upon political affiliation, and any related grievances, are arbitrarily, capriciously, and uniformly denied by the Office of Labor Relations, and specifically by Ms. Kessler.

82. As a direct and proximate cause of the foregoing actions and omissions of the Defendants, Plaintiff discovered from her physician on Saturday, 12 March 2005, that her blood pressure suddenly has become threateningly high, such that her physician has considered pulling Plaintiff Green from her position for health reasons.

83. On 1 April 2004, Defendant Moran continued his retaliatory conduct against Plaintiffs by calling Plaintiff Green at her home and denying her bereavement leave for the death of her husband's brother the day before. It has been the long standing practice in the BFD to grant five days of bereavement leave under such and similar circumstances. Thus, Plaintiff Green has been forced to use her vacation pay instead of the bereavement leave ordinarily granted, and has suffered the loss of those vacation days in the amount of approximately $669.00, accordingly.

84.   As a direct and proximate cause of the foregoing actions and omissions of the Defendants, Plaintiff Green has suffered, and will continue to suffer, severe emotional distress in amounts to be proven at trial, but no less than $100,000.00.

85.   Defendants, in concert with each other, acted, and otherwise purposefully failed to act, to affect adversely the terms and conditions of Plaintiff Green's employment as set forth.


## CLAIMS

### First Cause of Action - Massachusetts Civil Rights Act M.G.L. c. 12, 11H and 11I

86.   Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

87.   Defendants Christian, Hitchcock, Kessler, Moran, and certain Doe Defendants perpetrated, and continue to perpetrate a scheme of harassment and retaliation against Plaintiffs in order to deny Plaintiffs rights secured to them by the Constitution and laws of the Commonwealth of Massachusetts and of the United States.

88.   Defendants Christian, Hitchcock, Kessler, Moran, and certain Doe Defendants, in their individual capacities, interfered, or attempted to interfere, by threats, intimidation, and/or coercion, with Plaintiffs' exercise of their rights of freedom of speech and association, and to due process of law, *inter alia.*

89.   As a direct and proximate cause of these Defendants' violation of laws as set forth herein, Plaintiffs have suffered, and continue to suffer, adverse and hostile employment actions, and severe emotional distress, in amounts as set forth herein and to be proven at trial.

**Second Cause of Action - Whistleblower Protection Act - Violation of M.G.L. c 149, § 185**

90.   Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

91.   Plaintiffs have suffered retaliation in the form of adverse and hostile terms and conditions

of employment  because of Plaintiffs' reports regarding the unlawful political affiliation

discrimination and patronage practices being perpetrated by Defendant BFD (Defendants

Christian, Hitchcock, and Moran in their official capacities).

92.   As a direct and proximate result of said violations of public policy, Plaintiffs have

suffered, and will continue to suffer, severe emotional distress in amounts as set forth

herein and to be shown at trial.

**Third Cause of Action - 42 U.S.C. § 1983**

93.   Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

94.   This claim for relief is brought against Defendants Moran, Christian, Kessler, and

Hitchcock, and certain of the Doe Defendants, in their individual capacities for monetary

damages, against Defendant BFD for monetary damages because of the pattern and

practice of such unlawful conduct, and against all Defendants in their official capacities,

including the BFD, for declaratory and injunctive relief.

95.   Plaintiffs are informed and believe, and thereupon allege, that the individual Defendants

Moran, Christian, Hitchcock, Kessler, and certain of the Doe Defendants acted and/or

purported to act herein under color of statutes, regulations, customs, practices, and/or

usages of the Municipality of the City of Boston and the Commonwealth of

Massachusetts.

96.   Plaintiffs are informed and believe, and thereupon allege, that by the aforementioned acts

and/or omissions of Defendants Moran, Hitchcock, Kessler, and Christian and certain of

the Doe Defendants, Plaintiffs have been unlawfully denied their First Amendment

Rights to Freedom of Speech and Association, due process of law, and their rights to be

free from unlawful discrimination, including discrimination on the basis of political

affiliation and patronage, whether created by federal, state, or local law, <u>inter alia</u>, in

violation of rights guaranteed to them by the United States Constitution, 42 U.S.C. §§

1983, 1985, 1986, and 1988, and the Constitution and laws of the Commonwealth of

Massachusetts, including but not limited to M.G.L., c. 12, §§ 11H, 11I, and 11J, Articles

I, VI, XI, XII, and Amendment XVI of the Massachusetts Constitution, the

Massachusetts Declaration of Rights, M.G.L. c. 127, § 32, M.G.L., c. 149, § 185b; and

the City of Boston October 2000 Executive Order, <u>inter alia</u>.

97.    Plaintiffs are informed and believe, and thereupon allege, that Defendants Moran,

Christian, Hitchcock, Kessler, and certain of the Doe Defendants, acted herein knowingly,

intentionally, willfully, recklessly, and/or with deliberate indifference for the rights and/or

interests and/or well being of Plaintiffs, thereby directly and proximately causing injuries

in amounts as set forth herein and to be proven at trial.

### **Fourth Cause of Acton - Conspiracy under 42 U.S.C. §§ 1985 and 1986**

98.    Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

99.    Plaintiffs are informed and believe, and thereupon allege, that Defendants Moran,

Christian, Hitchcock, Kessler, and certain of the Doe Defendants, acted in concert herein

to deny Plaintiffs' their rights as set forth herein or otherwise adversely affect the terms

and conditions of their employment, knowingly, intentionally, willfully, recklessly, and/or

with deliberate indifference for the rights and/or interests and/or well being of Plaintiffs,

thereby directly and proximately causing injuries in amounts as set forth herein and to be

proven at trial.

**Fifth Cause of Action - Common Law Violation of Public Policy - Plaintif Barry**

100. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

101. This cause of action is asserted against Defendant BFD through the actions of Defendants

Moran, Christian, Hitchcock, and Kessler, and certain of the Doe Defendants, in their

official capacities.

102. Plaintiff's Barry's terms and conditions of employment have been affected adversely

because she performed an important public obligation by reporting to her superiors

Defendants Moran's and the BFD's unlawful conduct, of hiring and promoting only those

individuals who had the "correct" political affiliations, associations, and/or patronage, in

the hope that such unlawful conduct would stop.

103. Plaintiff Barry's terms and conditions of employment have been affected adversely

because of exercising her right to freedom of speech and association in her refusal to

endorse or become affiliated with those persons, including Defendants Moran and

Christian and the Doe Defendants to whom they are politically or otherwise affiliated,

that exercised influence and control over the hiring practices within the Boston Fire

Department.

104. As a direct and proximate result of said violations of public policy, Plaintiff Barry has

suffered adverse and hostile employment decisions and has suffered severe emotional

distress in amounts as set forth herein and to be shown at trial.

### Sixth Cause of Action - Common Law Violation of Public Policy - Plaintiff Green

105.  Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

106.  Plaintiff Green's terms and conditions of employment have been affected adversely because she performed an important public obligation, and otherwise exercised her First Amendment Rights to Freedom of Speech and Association, by reporting Defendant Moran's unlawful conduct, of hiring and promoting only those individuals who had the "correct" political affiliations and/or patronage, to her superiors in the hopes that such unlawful conduct would stop.

107.  Plaintiff Green's terms and conditions of employment have been affected adversely because she sought to exercise, and otherwise exercised, her right to freedom of speech and association in her refusal to endorse or become affiliated with those persons, including Defendants Moran, Hitchcock, and Christian and the Doe Defendants to whom they are politically affiliated, that exercised influence and control over the hiring practices within the Boston Fire Department.

108.  As a direct and proximate result of said violations of public policy, Plaintiff Green has suffered adverse and hostile employment decisions and has suffered severe emotional distress in amounts as set forth herein and to be shown at trial.

### Seventh Cause of Action - NEGLIGENT SUPERVISION

109.  Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

110.  This claim for relief is brought against Defendants Christian and Hitchcock in their individual an official capacities, and Defendant BFD.

111.  Plaintiffs are informed and believe, and thereupon allege, that Defendants Christian and the BFD, and certain of the Doe Defendants, and/or their predecessors and successors in

their respective employment offices, failed and refused to properly train, supervise, and/or

discipline Defendants Moran and Hitchcock, and certain other of the Doe Defendants,

including but not limited to the supervisory staff of the BFD, thereby proximately causing

the aforementioned injuries to Plaintiffs.

112. Plaintiffs are informed and believe, and thereupon allege, that Defendants BFD and

Defendants Moran, Christian, Kessler, Hitchcock, and certain of the Doe Defendants

acted herein with negligence and/or deliberate indifference to the rights, interests, and

well being of Plaintiffs, thereby directly and proximately causing injuries in amounts as

set forth herein and to be proven at trial.

### Eighth Cause of Action - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs.

114. This cause of action is brought against Defendant Moran, Christian, Hitchcock, Kessler,

and certain of the Doe Defendants in their individual capacities only.

115. Defendants knew or should have known that their conduct would cause severe emotional

distress to Plaintiffs.

116. Defendants' conduct was and continues to be outrageous and beyond the bounds of

decency.

117. Plaintiffs are informed and believe, and thereupon allege, that Defendant Moran,

Christian, Hitchcock, Kessler, and certain of the Doe Defendants malevolently wrongfully

and intentionally caused emotional distress upon Plaintiffs.

118. Plaintiffs are informed and believe, and thereupon allege, that Defendant Moran,

Christian, Hitchcock, Kessler, and certain of the Doe Defendants acted herein knowingly,

intentionally, willfully, and deliberately without regard for Plaintiffs' rights, interests, or

well being, thereby directly and proximately causing injuries in amounts as set forth

herein and to be proven at trial.

### Ninth Cause of Action - NEGLIGENCE

119.    Plaintiffs hereby incorporate all of the allegations contained in the preceding paragraphs.

120.    This cause of action is brought against all Defendants.

121.    Plaintiffs are informed and believe, and thereupon allege, that Defendants acted herein

negligently, including but not limited to Defendants' failure to appropriately use, and/or

train and supervise Defendant Moran and other Fire Department employees in the

appropriate standards of conduct regarding the prohibitions of political affiliation

discrimination and retaliation for exercises of rights to freedom of speech constitutes

negligence under state tort law and M.G.L. c. 258, *inter alia,* thereby proximately and

directly causing the injuries of which Plaintiffs complain.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

(A)    For a Declaration that the actions and/or omissions of Defendants in failing and

refusing to promote Plaintiff Barry on the basis of her political affiliation, or lack thereof, *inter*

*alia,* with the attendant deprivations, as set forth herein violate Plaintiff Barry's rights under the

First, Fifth, and Fourteenth Amendments to the United States Constitution; Articles 1, 10, 11, 12,

and 16 of the Massachusetts Declaration of Rights; 42 U.S.C. §§ 1983 and 1985; G.L. c. 127, §

32; and state tort law; and for a further Declaration that the actions and/or omissions of

Defendants in retaliating against Plaintiff Green because of her status as a witness to the

aforesaid violations and for her support of Plaintiff Barry's report of violations of law violate

Plaintiff Green's rights under the Fifth and Fourteenth Amendments to the United States Constitution, Articles 1, 10, 11,12, and 16 of the Massachusetts Declaration of Rights, 42 U.S.C. § 1983; M.G.L. c. 12, §§ 11H, 11I, and 11J; M.G.L. c. 127, § 32; and state tort law;

(B)     For and injunction preventing Defendants from interfering with the terms and conditions of Plaintiff Green's position's responsibilities such that she be relocated at 115 Southampton Road, Boston with all of the facilities necessary for her to fulfill her employment responsibilities without harassment or intimidation.

(C)     For general damages in the amount of no less than $200,000 against Defendant Moran, Christian, Kessler, Hitchcock, and certain of the Doe Defendants, in their individual capacities, according to the proof thereof at trial;

(D)     For special damages against Defendants Moran, Christian, Kessler, and Hitchcock, and certain of the Doe Defendants, in their individual capacities, according to the proof thereof at trial, but not less than $54,000.00 for Plaintiff Barry and for $669.00 for Plaintiff Green, and for medical expenses for Plaintiff Green;

(E)     For pre-judgment interest and triple damages pursuant to the Whistleblower Protection Act, M.G.L., c. 149, § 185.

(E)     For punitive damages against Defendant BFD, and Defendants Moran, Christian, Kessler, and Hitchcock, and certain of the Doe Defendants, in their individual capacities, in an amount sufficient to deter such practices in the future, which amount is alleged to be $500,000;

(F)     For reimbursement of Plaintiff's costs and expenses herein, including reasonable provision for their attorneys' fees and costs pursuant to 42 U.S.C. § 1988, M.G.L. c. 12, § 11H, 11I, and 11J, and the Massachusetts Declaration of Rights, *inter alia*; and

(G)    For such further and additional relief as the Court deems appropriate and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

                              Respectfully submitted,
                              Plaintiffs Denise M. Barry and Jane B. Green
                              By their attorney,

                              Thomas F. Feeney, BBO # 645605
                              THOMAS F FEENEY, COUNSELLOR AT LAW
                              39 Sheafe Street, Suite 1
                              Chestnut Hill, Massachusetts  02467
                              Tel.: (617) 277-5750

DATED: 4 April  2005                    Fax: (617) 277-5751

<br/>

### Certificate of Service

I, Thomas F. Feeney, hereby certify that the foregoing document was served upon counsel for the named Defendants in this matter on the 4th day of April 2005 by Hand Delivery.

27