UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE M. BARRY and<br>JANE B. GREEN,<br><br>              Plaintiffs,<br><br>vs.<br><br>ROBERT J. MORAN; et al,<br><br>              Defendants. | CIVIL NO. 05-10528 RCL<br><br>ASSENTED-TO MOTION FOR<br>PERMISSION TO FILE REPLY<br>BRIEF AS TO DEFENDANT'S<br>OPPOSITION TO PLAINTIFFS'<br>MOTION FOR PRELIMINARY<br>INJUNCTION |

ASSENTED-TO MOTION FOR
PERMISSION TO FILE REPLY BRIEF AS TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiffs and Defendants, by and through their respective undersigned counsel, and respectfully moves this honorable court, pursuant to Rule 7 of the Federal Rules of Civil Procedure and Local Rule 7.1(B)(3), for Permission for Plaintiffs to file, on or before 22 April 2005, a Reply Brief as to Defendants's Opposition to Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

| | |
|---|---|
| Plaintiffs Denise M. Barry and Jane B. Green<br>By their attorney,<br><br>_/s/ Thomas F. Feeney_<br>Thomas F. Feeney, BBO # 645605<br>THOMAS F FEENEY, COUNSELLOR AT LAW<br>39 Sheafe Street, Suite 1<br>Chestnut Hill, Massachusetts 02467<br>Tel.: (617) 277-5750<br><br>DATED: 8 April 2005 | Defendants Robert J. Moran, Paul A. Christian, William Kessler, William Hitchcock, and City of Boston Fire Department, By their attorneys,<br><br>_James M. Chernetsky by_<br>James M. Chernetsky (BBO# 638152)<br>Helen G. Litsas (BBO# 644848)<br>ASSISTANT CORPORATION COUNSEL<br>City of Boston Law Department<br>City Hall, Room 615<br>Boston, Massachusetts 02201<br>Tel.: (617) 635-4023 |

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE M. BARRY and<br>JANE B. GREEN,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT J. MORAN; et al,<br><br>Defendants. | CIVIL NO. 05-10528 RCL |

## PLAINTIFF'S REPLY BRIEF AS TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiffs Denise M. Barry and Jane B. Green, by and through their undersigned counsel, and submit the following Reply Brief as to Defendants's Opposition to Plaintiffs' Motion for Preliminary Injunction. As a preliminary matter, the Plaintiffs have filed a First Amended Complaint and respective counsel have engaged in discussions, which will be noted below, that have mooted some of the arguments originally advanced in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction. The following discussion thus is based upon the allegations and claims as set forth in Plaintiffs' First Amended Complaint.

### I. SUMMARY

"Well, if you're not into politics little girl, then you're not into a position here."

Both Plaintiffs have sworn an oath to the Court that Defendant Moran, the head of Human Resources of the Boston Fire Department, uttered this statement as explanation for why Plaintiff Barry did not get promoted. Defendants' opposition does not dispute either motivation or the statement of Defendant Moran. Nevertheless, Defendants' opposition presumes an immunity for its unlawful intentions and actions.

Defendants opposition completely ignores the allegations that their actions constitute not only a one time occurrence but a pattern and practice of discrimination and retaliation based upon Plaintiffs' rights to freedom of speech and association, and their right to be free from political discrimination. The Defendants' retaliation against Plaintiff Barry's witness to this pattern of behavior, Plaintiff Green, is designed both to intimidate and silence Plaintiff Green and to intimidate and silence Plaintiff Barry. Defendants' behavior is a well-worn Mob tactic of going after friends/witnesses of informants in order to silence the informant; both Plaintiff Barry and Plaintiff Green have standing to object to the Defendants' direct mistreatment of Plaintiff Green.

## II. ALLEGED LACK OF STANDING.

Defendants first argument is that Plaintiff Barry has no standing to advance the instant motion for preliminary injunctive relief because the requested relief appears only to be the relocation of Plaintiff Green's workplace. Defendants ignore the context in which Plaintiff Green is being mistreated.

Plaintiff Green is Plaintiff Barry's Union Shop Steward who was called into a meeting with Plaintiff Barry and Defendant Moran precisely to act as a witness and advocate of Plaintiff Barry's rights. Plaintiff Green did in fact witness grossly unlawful behavior. In order to intimidate **both** Plaintiff Barry and Plaintiff Green, Defendants picked on the witness first - Plaintiff Green. Plaintiff Barry has more than enough standing because Plaintiff Green is **her** witness to the events, and Defendants are seeking to silence both Plaintiff Barry and Plaintiff Green.

## III. ALLEGED LACK OF IRREPARABLE HARM

Defendants argue only in the abstract, without setting before the Court any facts related to Plaintiffs' allegation of irreparable injury. Plaintiffs' harm rests primarily in the ongoing

2

constitutional violations being perpetrated by the Defendants upon Plaintiff Green directly and Plaintiff Barry through the intimidation of her shop steward and witness Plaintiff Green.[1]

In response to Plaintiffs' allegations of irreparable harm arising from the actions of the Defendants, Defendants **do not** argue that ongoing violations are not *per se* irreparable. Rather, Defendants merely attempt to distinguish the case cited by Plaintiffs, Elrod v. Burns, by asserting that in Elrod the plaintiff therein was terminated from employment, whereas Plaintiffs Green and Barry still have their jobs. This difference is irrelevant. The right asserted in Elrod was not the right to continued employment, it was the rights to freedom of speech and association with which the defendants were interfering. In other words, Defendants have not argued to this Court, nor could they, that Plaintiffs' verified first amended complaint does not allege sufficiently that Defendants' actions adversely affect the terms and conditions of Plaintiffs' employment and adversely seek to impact their exercise of rights guaranteed to them under the First Amendment of the United States Constitution, *inter alia*. *See also* Westfield High School LIFE Club v. City of Westfield, 249 F.Supp.2d 98 (D.Mass 2003), Demarest v. Athol/Orange County Community Television, Inc., 188 F.Supp.2d 82 (D.Mass 2002); Wagner v. City of Holyoke, 100 F.Supp.2d 78 (D.Mass 2000).

### III. BALANCE OF HARDSHIPS

In opposition to Plaintiffs' request for injunctive relief, Defendants weakly assert that their theoretical interest in management outweighs the ongoing violations of Plaintiffs' constitutional rights. In other words, Defendants allege without any facts that they will be

---

[1] Defendants assert also that emotional harm is insufficient to rise to the level of irreparable harm. Defendants' argument would give unscrupulous government officials, as here, free reign to intimidate anyone as long as that person did not die from the stress. In Plaintiff Green's case, her physician is concerned about her not just her emotional health, but the physical manifestations of the emotional stress being caused by the Defendants. The seriousness of such allegations, unrebutted by the Defendants, is enough to constitute irreparable harm.

harmed by the relief requested. The harm identified is less than even speculative - it is merely the theoretical intrusion on "independent management." Any interest that the Defendants have in "independent management" evaporates when supervisors seek to misuse the power that is given them, as in this case.

The BFD moved the Fire Prevention Division to 1010 Massachusetts Avenue in late 1998, but kept Plaintiff Green at 115 Southampton Avenue in Fire Reports because there was no room at 1010 Massachusetts Avenue for the files constantly in use by Plaintiff Green; she needs to travel back to 115 Southampton multiple times during the week. Defendants have not explained, nor could the reasonably do so, why no telephone was provided to Plaintiff Green at her new location *for three months*; this was not a planned move, it was a move designed to harass and intimidate both Plaintiff Green and Plaintiff Barry (this could happen to you).

No where in Defendants' Opposition, moreover, does it identify any prejudice that would occur if Plaintiff Green were returned to her office at 115 Southampton Avenue, where she has been for the last 21 years. Such a move would help to relieve the emotional distress engendered by Defendants' actions and cease one aspect of the unconstitutional deprivation of her rights to freedom of speech and of Plaintiff Barry's rights to freedom of speech and association.

## IV. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

As mentioned, Plaintiffs have filed a First Amended Complaint, which includes the following claims:

### First Cause of Action - Massachusetts Civil Rights Act M.G.L. c. 12, 11H and 11I

This claim has been amended to be asserted against the Defendants in their individual capacities only. The Defendants first argument against this count was that it could not be brought against the City, as the Massachusetts Civil Rights Statute did not recognize the City as a

4

person against whom a claim could be brought.

The Defendants second argument against Plaintiffs' First Cause of Action begins on page 15 of their Opposition Memorandum and argues that Green has not engaged in any constitutionally protected speech. Plaintiff Green is a willing witness to the constitutional deprivations being inflicted upon Plaintiff Barry. Plaintiff Green in her own right is being retaliated against by the Defendants for her roll as a witness. The Defendants know this because a formal written complaint has been submitted to Moran, Kessler, Christian, and the Mayor of Boston informing them of the outrageous circumstances being perpetrated by the Defendants. Once again in a Mob-like manner, the Defendants argue that as long as we can get to the witness before she talks, then we are safe. Defendants' actions are designed to intimidate and silence Plaintiff Green, and are actionable under law.

Finally, Defendants argue that Plaintiffs' allegations of Defendants' actions do not rise to the level of "threats, intimidation, or coercion."

> To recover under the Massachusetts Civil Rights Act (the "MCRA"), Mass. Gen. L. ch. 12, §§ 11H, 11I, a plaintiff must prove that his exercise or enjoyment of rights secured by the Constitution or laws of the United States or the Commonwealth has been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by "threats, intimidation or coercion." Bally v. Northeastern Univ., 403 Mass. 713, 717, 532 N.E.2d 49 (1989) (quoting Mass. Gen. L. ch. 12, §§ 11H and 11I). The Massachusetts Supreme Judicial Court has held that a "threat" is "an intentional exertion of pressure to make another fearful or apprehensive of injury or harm;" that "intimidation" is the "putting [of someone] in fear for the purpose of compelling or deterring conduct;" and that "coercion" is an "application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994) (citations omitted). It has further explained that "an actual or potential physical confrontation accompanied by a direct threat of harm" will suffice to establish "threats, intimidation or coercion" in violation of the MCRA. Bally, 403 Mass. at 719, 532 N.E.2d 49.

Cignetti, 89 F.Supp.2d at 124. "[T]he MCRA [Massachusetts Civil Rights Act], 'like other civil

5

rights statutes, is remedial [in nature and] [a]s such, it is entitled to liberal construction of its terms." Batchelder v. Allied Stores Corp., 393 Mass. 819, 822 (1985). The term 'threats, intimidation and coercion' may take on many forms. United States v. Beaty, 288 F.2d 653, 656 (6th Cir. 1961).(fn 10)." Reproductive Rights Network v. Pres. of Univ. Of Mass., 45 Mass. App. Ct. 495, 505-06 (1998). The nature of any intimidation or threat is based upon an objective standard. "Thus, to be effective, the provisions of Sections 11H and 11I must apply to any threatening, intimidating, or coercive behavior regardless of whether the defendant specifically intended to interfere with a right to which the plaintiff is entitled." Redgrave v. Boston Symphony Orchestra, 399 Mass. 93, 100 (1987). In this case, the actions of Defendants easily constitute both intimidation and coercion, and both Plaintiffs have felt intimidated and the Defendants have meant to intimidate. See First Amended Complaint, ¶ 63, *inter alia*.

### Second Cause of Action - Whistleblower Protection Act - M.G.L. c 149, § 185

Defendants raised two arguments against Plaintiffs' Second Cause of Action. First that the Whistleblower Protection Act did not permit recovery against individual defendants and second that no written notice was provided to the Defendants prior to filing suit. Plaintiffs have amended the complaint to assert claims against Defendant BFD solely (against Defendants Moran, Christian, Kessler, and Hitchcock) in their official capacities). As the second argument, Defendants, through counsel, have recognized that the written notices provided to the City were sufficient to satisfy the written notice requirement.[2] See Notices provided to the Defendants attached hereto as Exhibit A. Especially in light of Defendant Christian's admission to the

---

[2] M.G.L., c. 149, § 185(c)(1) provides in pertinent part:

[T]he protection against retaliatory action . . . shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the [allegedly illegal or corrupt] activity . . . to the attention of a supervisor . . . by written notice and has afforded the employer a reasonable opportunity to correct the activity.

Boston Globe that "That's been addressed with the human resources division at City Hall . . . It's really an old issue. It was already heard." See Exhibit B, attached hereto.

Plaintiffs' Second Cause of Action asserts that:

> Plaintiffs have suffered retaliation in the form of adverse and hostile terms and conditions of employment because of Plaintiffs' reports regarding the unlawful political affiliation discrimination and patronage practices being perpetrated by Defendant BFD (Defendants Christian, Hitchcock, and Moran in their official capacities)

The First Amended Complaint has more than sufficient **_uncontested, verified_** allegations of the retaliation being perpetrated on Plaintiff Green directly through the arbitrary and capricious move, and deprivation of telephone and files, to 1010 Massachusetts Avenue, the intimidation that this works upon Plaintiff Barry, and the repeated denial of Plaintiff Barry's requests for promotions. Plaintiffs have alleged a scheme and conspiracy as against them both, Defendants should not be allowed to divide and conquer.

### Third Cause of Action - 42 U.S.C. § 1983

#### 1. Municipal Liability

As with the First Cause of Action, Defendants allege that § 1983 cannot be asserted against the municipality because it is not a person. Plaintiff is wrong for two reasons. First, the First Amended Complaint seeks declaratory and injunctive relief, perfectly permissible causes of action against both States and Municipalities. Second, the City of Boston is not a State, it is a municipality and municipalities are liable if allegations are proven which showing a policy, practice, or custom, and individual Supervisors will be liable if they participated in the alleged constitutional deprivations.

In passing § 1983 Congress intended that municipalities and other local government units would be liable for deprivations of constitutional rights where the deprivation of rights results from a policy or custom of the municipality. See Monell v. Department of Social Services, 436

7

U.S. 658, 98 S. Ct. 2018, 2035-36 (1978). The Court held:

> the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy or some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable <u>solely</u> because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory.

Id. (emphasis in original); see also Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 583 (2001)("A municipality may be liable under s. 1983, see Monell v. Department of Social Servs. of New York, 436 U.S. 658, 688, 694 (1978), but only if the injury is caused by "officials whose acts may fairly be said to be those of the municipality," or if there is a municipal policy or custom that caused the injury. County Commrs. of Bryan County v. Brown, 520 U.S. 397, 403-404 (1997)"). As Monell makes clear, in order for a municipality to be liable under § 1983, it must have a policy or custom which resulted in a constitutional deprivation. Monell, 98 S. Ct. at 2035-2038. This policy or custom does not need to be unconstitutional to give rise to municipal liability under § 1983. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). Rather, if the municipal custom or policy in itself is constitutional, the inquiry is whether there is a direct causal link between the policy and an alleged constitutional deprivation. Id. In the instance with Plaintiffs Green and Barry, there is more than sufficient factual assertions that establish this causal link.

### 2. Policy

To show that a city had a "policy," a plaintiff must demonstrate that the actions taken were by an official with final decision making authority. Pembaur v. City of Cincinnati, 106 S. Ct. 1292, 1299 (1986) (plurality opinion) ("Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered.") Whether a particular official has "final policymaking authority" is a question of state

8

law, to be resolved by the court. Jett v. Dallas Independent School District, 109 S. Ct. 2702, 2723 (1989). Even single incidents may be evidence of unlawful policies. City of Oklahoma City v. Tuttle, 105 S. Ct. 2427, 2436-37 (1985). "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Id.

### 3. Custom

Whether a city has a "custom" involves a different inquiry. The plaintiff must prove "the existence of a widespread practice, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

### 4. Inadequate Supervision

Municipalities can be held liable also for inadequate supervision, which includes inadequate investigation. CF., City of Canton, supra. In Fiacco v. City of Rensselaer, the Second Circuit held that the plaintiff's evidence with regard to the defendant-city's inadequate supervision of its officers' use of force was sufficient to support a jury verdict in favor of plaintiff. 783 F.2d 319, 332 (2d Cir. 1986). The plaintiff in Fiacco brought suit against the defendant-officers under § 1983 for violating her constitutional rights for failure to train and to supervise properly its officers' use of force. Fiacco 783 F.2d at 321.

To establish municipal liability, the plaintiff in Fiacco introduced evidence of the inadequacy of the city's procedures in resolving excessive force claims, as well as evidence of seven written claims of police brutality filed with the police department prior to the incident

9

involving the plaintiff. Fiacco 783 F.2d at 326-32. The Second Circuit first ruled that the evidence of third-party complaints was admissible to establish inadequate supervision because the evidence was relevant and because the trial court gave a limiting instruction to alleviate any unduly prejudicial effect the evidence may have had on the defendant-city. Fiacco 783 F.2d at 327-28. When determining that the evidence was relevant the court stated:

> The City's knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force. The fact that none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims.
> Further, the value of such evidence to a plaintiff in a § 1983 action is clear. Since the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference solely from evidence of the occurrence of the incident in question, a plaintiff cannot prevail on a § 1983 claim against a municipality without introducing other evidence. Proof that other claims were met with indifference for their truth may be one way of satisfying the plaintiffs' burden.

Fiacco 783 F.2d at 328 (citations omitted). The court then held that any prejudice which might result to defendant-city was mitigated by a limiting instruction to the jury that they were not to assume any of the claims were true, but to focus on whether the defendant-city took sufficient steps in handling the claims. Id.

Defendant Moran clearly expressed the City policy and custom to two witnesses, "that's the way it is around here," and three of the Defendants furthered the custom and policy through their conspiracy to intimidate the Plaintiffs through the harassment of Plaintiff Green.[3] More

---

[3] Paragraph 62: ". . . In response to Plaintiff Barry's complaints, Defendant Moran said, rather blatantly, 'Well, if you're not into politics little girl, then you're not into a position here.' Plaintiff Green promptly stood up and said to Defendant Moran "I can't believe you are saying this to her, not to mention in front of me." Mr. Moran replied 'that's the way it is around here.' Whereupon Plaintiff Barry said "so, I am going to be punished because I am not into politics?" Defendant Moran shrugged his shoulders and said 'that's politics for you.'"

than sufficient facts are before the Court to find a likelihood of success on the merits of Plaintiffs' Civil Rights claims against both the municipality and the individual defendants. See First Amended Complaint, ¶ 62 and 63. Furthermore, the blatantly inadequate investigation into Plaintiffs' claims by Defendant Kessler also render the city liable for damages. In this case, not only are the claims true, but the City simply brushed the complaints under the proverbial rug.

### Fourth Cause of Acton - Conspiracy under 42 U.S.C. §§ 1985 and 1986

Defendants argue in opposition to Plaintiffs' Fourth Cause of Action that Plaintiffs have failed to allege sufficient facts to constitute a conspiracy. The entire scheme of the Defendants as set forth in the First Amended Complaint is more than sufficient to show that all of the Defendants acted in concert with each other to deprive Plaintiff Barry of promotions because of her refusal to associate politically with those in power in, and holding influence over, the BFD. And as more specifically as set forth in Paragraph 63 of the First Amended Complaint:

> On or about this time in Mid-December 2004, Defendants Moran, Christian, and Hitchcock, *inter alia*, had a meeting in which it was decided to retaliate against Plaintiffs by moving Plaintiff Green away from her files and make Plaintiff Greens terms and conditions of employment more onerous. At this meeting, in response to concerns that their behavior was retaliatory, Defendant Hitchcock stated "F--k Jane Green."

Most recently, the Commissioner's office (not simply Defendant Moran) ordered that a security camera be trained on Plaintiff's Barry work station, obviously without any reason but to harass. First Amended Complaint, ¶ 56. Accordingly, sufficient facts exist to show a likelihood of success on the merits on Plaintiffs' claims of conspiracy. See Cignetti v. Healy, 89 F.Supp.2d 106, 123 (D.Mass. 2000)("direct evidence of a conspiracy is not necessary to survive a motion

---

Paragraph 63: "On or about this time in Mid-December 2004, Defendants Moran, Christian, and Hitchcock, *inter alia*, had a meeting in which it was decided to retaliate against Plaintiffs by moving Plaintiff Green away from her files and make Plaintiff Greens terms and conditions of employment more onerous. At this meeting, in response to concerns that their behavior was retaliatory, Defendant Hitchcock stated 'F-k Jane Green.' "

11

for summary judgment, . . . and all inferences should be drawn in favor of the non-moving party." citing Hampton v. Hanrahan, 600 F.2d 600, 620 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754 (1980)).

### Fifth Cause of Action - Common Law Violation of Public Policy - Plaintif Barry
### Sixth Cause of Action - Common Law Violation of Public Policy - Plaintiff Green

Defendants argue that Plaintiffs' public policy claims are pre-empted by the Whistleblower Protection Act. Defendants were correct, to a limited extent. Public policy claims are pre-empted against the individual defendants because Defendant BFD may not be sued under the Whistleblower Protection Act. Plaintiffs' public policy claims are valid and enforceable against Defendant BFD. See

### Seventh Cause of Action - NEGLIGENT SUPERVISION
### Ninth Cause of Action - NEGLIGENCE

Defendants' argument against Plaintiffs' negligence claims is similar to its initial argument as to the Whistleblower Claim - insufficient notice of Plaintiffs' claims. Notwithstanding the admission of Defendant Christian that "It's really an old issue. It was already heard[,]" all parties were provided more than adequate notice of the allegations set forth in the First Amended Complaint. The presentment requirement strikes a balance between public fairness and effective government, by allowing for prompt investigation of incidents and assessment of liability so as to adjust disputes and avoid costly litigation. See McGrath v. Stanley, 397 Mass. 775, 493 N.E.2d 832 (1986). Even if Plaintiffs did not mention the word "negligence" in correspondence to the City, as long as the Defendants were on notice of the facts and circumstances giving rise to the claims, the Defendants will not be allowed to hide behind such a flimsy procedural bar. See Fontneau v. Town of Sandwich, 251 F.Supp.2d 994 (D. Mass. 2003)(Boat owner's letter to town administrator complaining about harbormaster's refusal to

transfer slip lease in marina to him was sufficient under Massachusetts Tort Claims Act to present owner's negligent misrepresentation claim, even though letter did not specifically mention possible action in negligence; letter enumerated all of facts upon which owner relied in action).

As set forth in Exhibit A, more than adequate notice was provided to the Defendants via correspondence sent to the Mayor of the City of Boston and each of the Defendants:

> As you are aware, I sent a certified copy of a formal written complaint to your attention against Robert Moran the Human Resource Director here at the B.F.D. I had a meeting with Winnie Yam and Bill Kessler on September 9, 2004 to go over my complaint. On that day, I mentioned that I had witnesses to incidents and documentation. Not long after our meeting one of my witnesses that I named Jane Green was instantly harassed by Mr. Moran out of pure retaliation.
>
> On December 9, 2004, I had 2 hearing scheduled down at Labor relations. Again, I mentioned that Jane Green was my witness on Oct. 3 when Bob Moran stated to me "that if your not into politics little girl, then you're not into a position and listen kiddo if you don't like the way things are run here there are other job opportunities out there you know."

Attached to the correspondence to the Mayor and the Defendants was an earlier correspondence sent directly to Defendant Kessler:

> Ironically, eight days after my hearing my witness Jane Green has been informed that the Commissioner wants her out of the building immediately for no apparent reason. Again, this is an act of pure retaliation not to mention a case of intimidating a witness which is a very serious crime.
>
> For the record, Jane Green was in Bob Moran's office with me as my union representation looking out for my best interest not to initiate trouble. Bob Moran is the one that consistently creates a hostile environment here at the B.F.D. and nothing is done about his actions, therefore, we are proceeding on to a court house.
>
> Also, I mentioned in my hearing it is clearly evident that Bob Moran has become spiteful towards me and because of his behavior I am afraid of what he is capable of next.

13

Both the correspondence and the meeting with Defendant Kessler informed the Defendants of Plaintiffs' claims against them sufficient to satisfy the prerequisites of the Massachusetts Tort Claims Act. See Fontneau, supra.

Defendants next argument is that the individual defendants are immune because only the municipality can be sued. To the extent that the claims can be read to sue the defendants in their official capacities, Plaintiff has no objection. However, the Defendants are sued in their individual capacities, as well, and the claim survives.

Defendants finally argue that they are immune from negligent supervision claims because those claims are based upon a failure to prevent or mitigate harm, citing M.G.L. c. 258, § 10(j):

> any claim based on an act or failure to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Defendants argument makes no sense as it completely ignores the last clause of the statute; Defendants are alleging that Defendants did not properly train Moran, Hitchcock, and Kessler. Plaintiffs are not alleging that some outside person was a tortfeasor here.

### Eighth Cause of Action - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants argument as to Plaintiffs' Eighth Cause of Action is merely one for Summary Judgment. The First Amended Complaint clearly alleges, in verified form, sufficient facts to satisfy the prerequisites of the claim. It is Plaintiffs' civil rights claims that establish its likelihood of success on the merits for the purposes of its motion for preliminary injunctive relief, not its claim of intentional infliction of emotional distress.

14

## V. CONCLUSION

In accordance with the foregoing, Plaintiffs respectfully submit that they have shown a likelihood of success on the merits, continuing irreparable harm in the form of constitutional violations and severe emotional distress, the promotion of the public's interest, and a lack of prejudice to the Defendants, and therefore request that this honorable court enjoin the Defendants from perpetuating the forced, unlawful relocation of Plaintiff Green from her office located at 115 Southampton Street, and order her to be allowed to move back to her office.

Respectfully submitted,
Plaintiffs Denise M. Barry and Jane B. Green
By their attorney,

_____
Thomas F. Feeney, BBO # 645605
THOMAS F FEENEY, COUNSELLOR AT LAW
39 Sheafe Street, Suite 1
Chestnut Hill, Massachusetts 02467
Tel.: (617) 277-5750

DATED: 22 April 2005

## AFFIDAVIT

I, Thomas F. Feeney, swear and affirm that attached hereto as Exhibit A, is a true and correct copy of correspondence sent to the Defendants on the dates indicated thereon and attached hereto as Exhibit B is a true and correct copy of the Article appearing in the Boston Globe on 15 March 2005.

_____

## CERTIFICATE OF SERVICE

I, Thomas F. Feeney certify that this document was served this date upon counsel for the Defendants, James Cherntetsky, Associate Corporation Counsel, by U.S. Mail, first class postage pre-paid.

_____