**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
CIVIL ACTION NO. 05-10528-RCL

DENISE M. BARRY and JANE B.
GREEN,
      <u>Plaintiffs</u>,

v.

ROBERT J. MORAN, PAUL A.
CHRISTIAN, WILLIAM
KESSLER, WILLIAM
HITCHOCK,CITY OF BOSTON
FIRE DEPARTMENT, and JOHN
and/or JANE DOES 1-50.
      <u>Defendants</u>.

## <u>DEFENDANT ROBERT MORAN'S MOTION TO DISMISS</u>.

NOW COMES Defendant Robert Moran ("Moran") and moves this Honorable Court pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss all Counts of the Plaintiff's Complaint directed against him (Counts I through VI, VII-X).

As grounds therefore, Moran states that:

1.    There is no allegation that Moran engaged in any conduct amounting to 'threats, intimidation or coercion' such as would support liability pursuant to the Massachusetts Civil Rights Act (Count I);

2.    There is no individual liability pursuant to the so-called "Whistleblower statute," and the Plaintiffs failed to provide written notice to their employer before disclosing the alleged wrongdoing to a "public body," barring their claim (Count II);

3.    There is no conduct alleged in the Complaint attributable to Moran amounting to violation of the Constitution of the United States (Count III);

4.    There is no violation of 42 U.S.C. § 1985 or § 1985 (Counts IV);

5.    Plaintiffs claims of violation of public policy is preempted by the "Whistleblower Statute" (Count V and VI);

6.    Plaintiffs cannot sustain their intentional infliction of emotional distress claims (Count VIII); and

7.    No individual liability attaches to a public employee under the Massachusetts
Torts Claims Act (Count IX).

Moran submits the attached Memorandum of Law in further support of his motion.

Respectfully submitted,
DEFENDANT ROBERT J. MORAN,
Merita A. Hopkins
Corporation Counsel

By their attorney:

/s/ Helen G. Litsas
_____
Helen G. Litsas
Assistant Corporation Counsel
BBO# 644848
James M. Chernetsky
Assistant Corporation Counsel
BBO# 638152
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4023 (Helen)
(617) 635-4048(James)

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a copy of this document was served upon counsel of record
for the Plaintiff via U.S. Mail to 39 Sheafe Street, Suite 1, Chestnut Hill, MA 02467.

4/29/05                              /s/ Helen G. Litsas
Date: _____              _____
                                  Helen G. Litsas, Esq.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
CIVIL ACTION NO. 05-10528-RCL

DENISE M. BARRY and JANE B.
GREEN,
      <u>Plaintiffs</u>,

v.

ROBERT J. MORAN, PAUL A.
CHRISTIAN, WILLIAM
KESSLER, WILLIAM
HITCHOCK,CITY OF BOSTON
FIRE DEPARTMENT, and JOHN
and/or JANE DOES 1-50.
      <u>Defendants</u>.

**<u>DEFENDANT ROBERT MORAN'S MEMORANDUM IN SUPPORT OF
HIS  MOTION TO DISMISS</u>**

**I.**     **<u>INTRODUCTION</u>**

The Plaintiffs, Denise Barry ("Barry") and Jane Green ("Green"), have filed suit against Defendant, Robert Moran ("Moran" of "Defendant Moran"), as well as several other defendants, including the City of Boston, Paul A. Christian, William Hitchcock, and William Kessler, seeking damages, declaratory relief and injunctive relief. The Plaintiffs allege various claims enumerated in detail at 5-6, <u>infra</u>.  Defendant Moran now moves to dismiss all claims in the Plaintiffs' Complaint because the Plaintiffs have failed to state any actionable claim upon which relief can be granted.

**II.** **<u>FACTUAL BACKGROUND</u>**

**A.**   **<u>PLAINTIFF DENISE BARRY'S ALLEGATIONS</u>**

Plaintiff Denise Barry ("Barry") is an employee of the City of Boston Fire Department ("Fire Department").  In the Amended Complaint, Plaintiff Barry makes numerous allegations claiming that she has been denied promotions and step increases during her tenure with the Department because she is not politically affiliated or associated

with "those in power in the Fire Department or those in City Government who have influence in the Fire Department." Plaintiff Barry claims that she was well-qualified for each position she applied and more qualified than 90% of the individuals hired for the position.

### 1. Events Occurring During 1996-2002

She alleges that she began her employment with the Fire Department in August 21, 1996 as a Principal Clerk with an R-8 civil service employment rating and that she received two subsequent upgrades, on July 3, 1998, to an R-11 position, and on or around September 1, 1998, to an R-12 position. Barry alleges that Defendant Moran was hired by the Fire Department in July 2001 for the position of personnel manager and that on or around October 12, 2002, Moran attempted to create an R-15 Administrative Assistant position for a Sheila Mancuso as a form of political favor and patronage.

### 2. Events Occurring During 2003

On or about July 14, 2003, Barry alleges that she inquired why she was not receiving a raise or an upgrade and Moran allegedly responded that there were insufficient funds and that no raises would occur. The following month, Barry allegedly submitted recommendations she received from various Fire Department and civilian personnel she had assisted during her Fire Department tenure.

On or about August 20, 2003, Barry applied for an R-15 position with the BFD, for which she claims she was well-qualified. She was interviewed by Moran and Chief Robert Calobrisi on two separate occasions. She alleges further that prior to her second interview, unnamed employees advised her that Moran and Christian had already selected another individual from outside the Fire Department and that she did not meet the minimum qualifications for the position. Barry alleges further that a Michelle Urso was then hired on October 1, 2003 from outside the department because of her political affiliations with the

Fire Department and allegedly did not meet the minimum entrance qualifications. On or about August 28, 2003, Plaintiff Barry again allegedly inquired about a pay raise and was advised by Moran of a freeze on raises and hiring. Barry alleges further that Defendant Hitchcock and Chief David Granara have requested step increases on several occasions for her that were denied by Moran and Christian.

On or about October 1, 2003, Barry alleges that she was appointed in an acting capacity to the position of MM-5 to assist Nurse Barbara Ryan in the organization of medical bills payment. Barry subsequently began her duties and on October 6, 2003, Ryan sent an email message to Granara recognizing Barry's work. Barry alleges that during this time assisting with medical bills, she was also performing her regular R-12 position. Barry also allegedly requested from Moran that she attend a software training to assist her in this new position and Moran responded that he would explore that option. On October 8, 2003, Barry went to the Fire Marshall's Office and was advised by an employee there that she could not provide Barry with the computer software training she desired.

On October 16, 2003, Barry requested a step increase from Moran and the next day, Moran responded that he would check into the matter. The following day, Barry met with Moran and complained that she was not receiving any promotions or pay increases. Moran allegedly stated that Barry would not be hired into the Case Manager position she desired and that City Hall had another individual in mind for the position. Moran also allegedly stated that "Well, if you're not into politics little girl, then you're not into a position here." Plaintiff Green was present at this meeting and then stated to Moran, "I can't believe you are saying this her, not to mention in front of me." Defendant Moran then allegedly replied, "that's the way it is around here." Barry then allegedly stated, "So I am going to be punished because I am not into politics?" Defendant Moran then allegedly shrugged his shoulders and said "that's politics for you." Subsequent to this meeting, Barry alleges that

she was informed by unnamed individuals that Moran would retaliate against her because of her pay raise requests and never pay for step increases. Barry also allegedly complained in writing and in a meeting with Defendant Kessler, who allegedly advised her that he could not help Barry and that her claim did not constitute unlawful discrimination. Barry also alleges that she had subsequent meetings with Kessler, but he allegedly refused to conduct an independent investigation.

### 3. Events Occurring During 2004

Almost a year later, on September 3, 2004, Barry submitted a written complaint against Moran and the Fire Department to her supervisor, Chief Granara, and "formal complaints" to Defendant Kessler detailing her lack of promotions and retaliation by Moran. She also alleges that the Mayor was notified of her complaints. On September 7, 2004, Barry alleges that another meeting with Kessler was held to review Moran's alleged actions against Barry and Green, but that Kessler never conducted an investigation nor issued a written opinion because of Barry's alleged lack of political affiliation. She alleges further that Kessler placed an unreasonable burden upon her by requiring her to produce additional documentation of her alleged complaints.

Barry also alleges that on October 14, 2004, she was denied a step increase by the Defendants. Additionally, she claims that on October 20, 2004, Chief Joseph Finn requested a step increase for Kathy Frechette for an R-17 position because she allegedly is politically affiliated with the Fire Department. Barry also claims that on October 21, 2004, she received a letter from legal counsel for the City's Office of Labor Relations advising her attorney not to speak with City employees regarding her matter. On November 15, 2004, Barry alleges that she complained about the Fire Department's allegedly unlawful practice of favoring politically affiliated individuals. Subsequently, on December 9, 2004, Barry attended two hearings before Alice Kessler of Labor Relations regarding her complaints.

### 3.  Events Occurring During 2005

On April 4, 2005, Barry allegedly returned to work and discovered a security camera directed at her work station. She alleges that she had taken a few days off of work because of the stress caused by the Defendants' allegedly retaliatory conduct.

### 4.  Undated Allegations

Barry also alleges that Ian MacKenzie was hired at some unspecified time for the Case Manager position at an MM-8, Step 7 grade, higher than the MM-5 grade that Barry was receiving for allegedly doing the same job. Barry alleges further that regular meetings were held between Defendants Moran, Christian, and Hitchcock where it was determined that an individual's political affiliation or other association, rather than an individual's qualifications, constituted the primary factor for hiring or promotion. Barry alleges further that the Defendants have acted in concert to adversely affect her employment and that she has suffered lost wages and severe emotional distress.

### B.  PLAINTIFF JANE GREEN'S ALLEGATIONS

Green is an employee of the Fire Department's Fire Reports Department, which is itself a part of the Fire Prevention Unit.  Green is also a union shop steward in SENA Local 9158.   Green's job duties involve assisting fire victims with obtaining monetary recovery from insurance companies and welfare and other aid agencies.

### 1.  Events Occurring During 2002

In 2002, the Fire Prevention Unit was relocated from Fire Headquarters at 115 Southhampton Street to 1010 Massachusetts Avenue (with the exception of the Fire Reports unit, a subdivision of the Fire Prevention Unit comprised of Green and one other employee).  Green's supervisor has been located at 1010 Massachusetts Avenue since 2002.

### 2.  Events Occurring During 2003

In the Complaint, Green alleges that she was present as a union shop steward for an October 9, 2003, meeting between Barry and Defendant Robert Moran concerning Barry's complaints that she did not receive promotions and pay increases allegedly due to her. Green alleges that at this meeting: (1) Moran made statements indicating to Barry that she would not receive promotions or raises because of her lack of political activity; and that (2) Green said to Moran, "I can't believe you are saying this to her, not to mention in front of me."

### 3.  Events Occurring During 2004-2005

 Green further alleges that on December 23, 2004, she was informed that her unit was to be re-located from 115 Southampton Street to 1010 Massachusetts Avenue, effective the following Monday.  She further alleges that the equipment and files needed by her to perform her duties were not transferred as promised.  Green alleges that her location at 1010 Massachusetts Avenue and her lack of access to files is burdensome to her and to the public. She also alleges that she has suffered emotional distress as a result of this relocation.

Additionally, Green alleges that the relocation of her unit was in retaliation for her participation more than fourteen months earlier in the meeting between Barry and Moran. The Complaint fails to allege any activity by Green related to Barry's claims in the fourteen months prior to her relocation.  Green's allegations of protected activity appear to relate solely to Green's single statement to Moran, "I can't believe you are saying this to her, not to mention in front of me."  Additionally, Green alleges elsewhere in her Complaint that she is able to make trips two to three times per week to access other necessary files.

Records of fires for approximately the last two and one-half years are available to Green via computer, without the need for her to access paper files at 115 Southampton

Street. The vast majority of her work involves records of recent fires. Green grieved her complaint regarding her relocation in January 2005. The relocation was upheld, but remains the subject of a pending arbitration.

III.   **ARGUMENT**

### A. DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST DEFENDANT MORAN IS REQUIRED UNDER THE GOVERNING MOTION TO DISMISS STANDARD.

The Plaintiffs cannot succeed in her claims because they fail to state claims upon which relief can be granted. The Plaintiffs have brought following ten claims. They are:

1. **Count I**: Violation of the Massachusetts Civil Rights Act ("MCRA), G.L. c. 12, §11H and 11I (both plaintiffs versus all defendants);

2. **Count II**: Violation of G.L. c. 149, §185(b) (both plaintiffs versus all defendants);

3. **Count III**: Violation of 42 U.S.C. § 1983 (both plaintiffs versus all defendants);

4. **Count IV:** Conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986 (both plaintiffs versus all defendants);

5. **Count V:** Common law violation of public policy (Barry versus all defendants);

6. **Count VI:** Common law violation of public policy (Green versus all defendants)

7. **Count VII:** Negligent supervision (both Plaintiffs versus the City, Christian and Hitchcock only);

8. **Count VIII:** Intentional Infliction of Emotional Distress (both Plaintiffs versus individual defendants only); and

9. **Count IX:** Negligence (both plaintiffs versus all defendants).

Dismissal is warranted under Rule 12(b)(6) where there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); see Wagner v. Devine, 122 F.3d 53, 55 (1st Cir. 1997). In reviewing a motion to dismiss, the court must accept the allegations of

the complaint as true, drawing all reasonable inferences in favor of a plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994). A claim may be dismissed if a plaintiff cannot prove, beyond a doubt, that the facts supporting the claim entitle her to relief.   See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987).

**B.   PLAINTIFFS' MASSACHUSETTS CIVIL RIGHTS CLAIMS ("MCRA") IN COUNT I FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.**

**1.   The Plaintiffs Fail to Allege The Requisite "Threats Intimidation or Coercion" Element For Their MCRA Claims To Survive.**

While the Plaintiffs conclusorily allege that Defendant Moran "interfered, or attempted to interfere, by threats, intimidation, and/or coercion, with Plaintiffs' exercise of their rights of freedom of speech and association and to due process of law," this allegation is insufficient for purposes of G.L. c. 12, § 11H.[1]   The Supreme Judicial Court of Massachusetts has cautioned that by the MCRA, "the Legislature did not intend to create a vast constitutional [and statutory] tort." Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989).   In fact, the added requirement of "threats, intimidation, or coercion" was specifically intended to limit liability under the Act. See Bally, 403 Mass. at 718.   In interpreting the phrase, the Supreme Judicial Court has repeatedly defined it as requiring actual or potential physical confrontations involving threat of harm. See Planned Parenthood League v. Blake, 417 Mass. 467, 473 n.8 (1994); Layne v. Superintendent, Massachusetts Correctional Institution, 406 Mass. 156, 158 (1989). Additionally, the SJC has clarified that the word "coercion" encompasses economic coercion, and has also

---

[1]   G.L. c. 12, § 11H provides a civil cause of action: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the [C]onstitution or laws of the United States or of rights secured by the constitution or laws of the commonwealth."

explained that overall, coercion includes either physical or moral force that constrained the plaintiff to "do against his will something he would not otherwise have done." See <u>Buster v. George W. Moore, Inc.</u>, 438 Mass. 635, 646 (2003).

While the Plaintiffs have made allegations regarding Moran's conduct, none of these allegations rise to the level of "threats, intimidation or coercion" within the meaning of the MCRA statute. There are no allegations that Moran was involved in any actual or potential physical confrontation involving the threat of harm with either Plaintiff. There are no allegations that Moran exerted any physical or moral force which constrained the Plaintiffs to "do against [their] will something [they] would not otherwise have done."   Neither Barry's claim regarding Defendant Moran's alleged denial of promotions and step increases nor Green's relocation constitute any exertion of physical or moral force within the meaning of the statute.

Any conclusory allegations of harassment by the Plaintiffs are insufficient to rise to the level of  "threats, intimidation or coercion" under the MCRA. None of the alleged actions by Defendant Moran in responding to the Plaintiffs employment inquiries can hardly be characterized as harassment.   Moreover, as alleged, both Plaintiffs continue to work in their respective positions as employees of the Fire Department.  <u>Compare</u> <u>Buster</u>, <u>supra</u> at 647 (recognizing that sexual harassment can rise to the level of "coercion" within the meaning of MCRA where the harassment makes it impossible for an individual to continue her employment).   Accordingly, the Plaintiffs' claims in Count I must be dismissed.

> ### 2.    Dismissal Of The Plaintiffs MCRA Claims Is Also Warranted For The Same Reasons Their 42 U.S.C. § 1983 Claims Should Be Dismissed.

Plaintiff's MCRA claims against the Defendant Moran should be dismissed for the same reasons that his § 1983 claims should be dismissed, as discussed <u>infra</u>.  The Supreme Judicial Court of Massachusetts has held that the MCRA and 42 U.S.C. § 1983 are parallel

statutes, coextensive with one another and accordingly, the courts have traditionally applied the same analytical principles governing Section 1983 claims to MCRA claims. Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23, (1985); Canney v. Chelsea, 925 F. Supp. 58, 68 (1st Cir. 1996).

C.     **COUNT II'S WHISTLEBLOWER CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

1.  **G.L. c. 149, §185(b) Does Not Permit Either Plaintiff to Recover Against Defendant Moran.**

At first blush, Plaintiffs' claim against Defendant Moran in his official capacity cannot proceed because "[o]fficial capacity" suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent." See Kentucky v Graham, 473 U.S. 159, 165-66 (1985); Monell, 436 U.S. at 690, n 55.   A judgment against a public servant "in his official capacity" imposes liability on the entity that he represents. Brandon v. Holt, 469 U.S. 464, 471-72 (1985).   Thus, such suits against the individual public employees in their official capacities are unnecessary when suit has already been brought against the public entity, as is the case here.

In addition, dismissal is warranted because the Massachusetts Whistleblower Statute, G.L. c. 149, § 185, does not permit recovery against individuals. "The Whistleblower statute permits only an 'employer' to be sued, not individual supervisors." Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 221 (D. Mass. 2002), aff'd by Bennett v. City of Holyoke, 362 F.3d 1  (1st. Cir. 2004) (omitting citations).

2.  **Plaintiff Green's Claim Also Fails Because She Has Failed To Provide Any Evidence Of Submitting The Requisite Written Notice Prior to Filing Suit, And She Has Also Failed To Allege That She Engaged In Any Activity Protected By The Statute.**

Plaintiff Green has not complied with the notice requirements under the statute. G.L. c. 149, § 185, requires a plaintiff to provide written notice to his or her employer before

disclosing the alleged wrongdoing to a "public body. "  G.L. c. 149, § 185(c)(1).  "The statute is unqualified in its [written notice] requirement and in this instance a hard and fast rule does serve a rational purpose, namely, by avoiding uncertainties about what might have happened if formal notice had been given." Dirrane v. Town of Brookline, 315 F.3d 65 (1st Cir. 2002).  While Green alleges that she filed a grievance concerning her relocation on January 27, 2005, she does not allege that this grievance was written or that it disclosed any wrongdoing to a supervisor or to the City.   Amd. Cplt. At ¶ 78.  Moreover, even if Plaintiff Green provided such notice, her claim remains barred because nothing in the Complaint suggests that Green engaged in any whistleblowing activity as defined by the statute, or that any action by Moran related to Green's sole comment.

### D.    PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS IN COUNT III ALSO FAIL TO STATE AN ACTIONABLE CLAIM.

The Plaintiffs allege in Count III that they have been unlawfully denied their First Amendment rights to freedom of speech and association, due process and freedom to be free from unlawful discrimination in violation of rights guaranteed by 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the United States Constitution, the Massachusetts Constitution, and the City of Boston 2000 Executive Order.[2]  In order to prevail on their retaliation claims in Count III under 42 U.S.C. § 1983 for exercising their First Amendment rights, the Plaintiffs must each prove that: (1) they engaged in speech on a matter of public concern; (2) their interest in speaking and the public interest in hearing what their had to say outweigh any legitimate interest on the government's part in the efficient performance of its public function; and (3) that their protected speech was a motivating factor, or at least

---

[2]    To the extent that the Plaintiffs base their claims on the Massachusetts Constitution and the City of Boston 2000 Executive Order, such claims must be dismissed because 42 U.S.C. §1983 claims require allegations that a federally secured right was violated, rather than the violation of a state right or a municipal Executive Order. To the extent that the Plaintiffs base their claims on a violation of § 1985 or §1986, they, too, must be dismissed for the reasons stated supra at ____.

a substantial factor, in an adverse employment action against her.  See Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002).   The Plaintiffs cannot meet this stringent burden.

**1. Plaintiff Green Cannot Satisfy the Requisite Elements of Her Claim.**

      **a.  Plaintiff Green Cannot Establish That Her Alleged Speech Constituted "A Matter of Public Concern."**

A review of the Amended Complaint reveals no indication that Plaintiff Green engaged in any constitutionally protected speech.  The sole speech activity by Green alleged is her attendance at a meeting between Barry and Moran at which she made the single statement, "I can't believe you are saying this to her, not to mention in front of me."  No further statements or actions on Barry's behalf during the fourteen months prior to Green's transfer are alleged.  Moreover, nothing suggests that Green's lone remark was considered to be of any import by any defendant.  Green's statement to Defendant Moran, as described in the Complaint, is merely "a public employee speaking out on a workplace concern" which "cannot be said to engage the public interest on a large scale."  Fabiano v. Hopkins, 352 F.3d 447 (1st Cir. 2003).  As the Supreme Court has explained, not all remarks implicate constitutional protection:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark -- and certainly every criticism directed at a public official -- would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

Connick v. Myers, 461 U.S. 138, 149 (1983).  Within this analytical framework, Plaintiff Green's statement lone remark cannot qualify as a matter of public concern.  Moreover, Green's interest in making this remark and the public interest in hearing what this remark in no manner outweighs any legitimate interest on the government's part in the efficient performance of its public function.  Her alleged speech addresses only issues of personal

interest rather than public concern. See Connick, 461 U.S. at 147 ("[A] federal court is not the appropriate forum in which to review the wisdom of a personnel decision   taken by a public agency allegedly in reaction to the employee's behavior").

      **b.  Plaintiff Green Has Failed To Allege That She Experienced The Requisite Adverse Employment Action For Her Claim To Survive.**

Plaintiff Green has also failed to allege that she suffered an "adverse employment action."  Plaintiff Green alleges simply that she was relocated from one office at 115 Southampton Street to another location at 1010 Massachusetts Avenue in Boston, MA, where her supervisor had been relocated since 2002.  While Plaintiff Green alleges that such relocation requires return trips to her former office location at 115 Southampton Street for files and other materials, the relocation does not constitute an adverse employment action against her within the meaning of her Section 1983 claim.  See Gu v. Boston Police Dep't, 312 F.3d 6, 8-9 (1st Cir. 2002) (holding that a general restructuring of a department of her department that results in some reduction of job responsibilities "without an accompanying decrease in salary, or grade" does not constitute an adverse employment action). Adverse actions "must materially change the conditions" of the plaintiff's employment.  Id.  Here, however, there is no allegation of any such material change.  There is no allegation that the relocation materially changed the conditions of her employment, that her job duties were reduced in any way or even that she experienced any decrease in salary or grade. As for her conclusory claims that the public interest was adversely impacted, such allegations are not appropriate when evaluating her individual claim.  Plaintiff's relocation simply represents the Fire Department's effort to reorganize all members of the Fire Prevention Department.  At most, the relocation was an inconvenience to Plaintiff Green and by no means an adverse employment action.

Regarding Green's Fourteenth Amendment claim, Green alleges that she availed herself of her opportunity to grieve her complaint regarding the relocation of her work unit, and that a hearing was held concerning her grievance. Although she alleges that the hearing was held before the wife of Defendant Kessler, she has not alleged that Kessler (who does not work for the Fire Department) played any role in the relocation of her work unit, nor was Kessler present at the meeting which is Green's only alleged involvement with Barry's case.   Accordingly, Green's claims must be dismissed.

### 2.  **Plaintiff Barry Cannot Satisfy the Requisite Elements of Her Claim.**

Similarly unavailing is Plaintiff Barry's claim as she, too, fails to satisfy the threshold requirements for her claim. A review of the Amended Complaint reveals no indication that Plaintiff Barry engaged in any constitutionally protected speech. She rather conclusorily claims that she complained about the Fire Department's alleged failure to promote her and increase her step grades, but she does not identify any particular statements, with the exception of one response she made to Defendant Moran, "[S]o I am going to be punished because I am not into politics?" Distilled to its essence, this remark relates solely to Plaintiff Barry's personal interest in her own individual promotions and step increases.

Plaintiff's Amended Complaint is replete with allegations detailing her own individual efforts over the course of numerous years to improve her employment situation. A review of "the content, form, and context" of her alleged statement "as revealed by the whole record" demonstrates that it relates to a matter of private interest, rather than public concern.  Connick, 461 U.S. at 147-48.  Her additional, unspecified complaints should be viewed similarly.  Even if Barry's statements was construed as a matter of "general public interest," that fact alone does not make them of "public concern" for First Amendment purposes. See id. at 148 n.8.  Moreover, Barry's interest in making this remark

and the public interest in hearing this remark in no manner outweighs any legitimate interest on the government's part in the efficient performance of its public function.  This court is not the appropriate forum in which to review administrative decisions taken by a public agency allegedly in reaction to the employee's behavior.

Barry's Fourteenth Amendment claim against Defendant Moran also fails for the reasons discussed supra.  This Court is not the proper forum to review the multitude of personnel decisions made by public agencies and the due process clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.  See Lavash v. Kountze, 473 F. Supp. 868 (D. Mass. 1979), aff'd 604 F.2d 103 (1st Cir. 1979).  Moreover, Barry was provided ample opportunity to file grievances and by her own allegations, these complaints were heard by the City Labor Relations hearing officer as well as by Defendant Kessler.

**E.    PLAINTIFFS' 42 U.S.C. § 1985 and § 1986 CLAIMS IN COUNT IV ARE NOT ACTIONABLE BECAUSE THE PLAINTIFFS HAVE FAILED TO ALLEGE THAT THE CLAIMED CONSPIRACY WAS MOTIVATED BY SOME RACIAL OR OTHERWISE CLASS-BASED, INVIDIOUSLY DISCRIMINATORY ANIMUS.**

The Plaintiffs' claims of conspiracy under 42 U.S.C. § 1985[3] and § 1986 in Count IV fail to state a claim upon which relief can be granted.  Claims brought under 42 U.S.C. §1985 were not intended to provide a federal cause of action against every conspiracy, but only against those motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993), quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see Romero-Barcelo v.

---

[3]    While Section 1985 sets forth three subsections with respectively three distinct causes of action, Plaintiffs make no effort to specify the subsection under which their claims arise. Defendant Moran therefore assumes that Plaintiffs are asserting a claim under §§ 1985(3) and 1986. See Donahue v. City of Boston, 304 F.3d 110, 122 (1st Cir. 2002) (court draws similar assumption).  The first two subsections do not appear applicable to the case at bar.

Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996). Here, the Plaintiffs have failed to allege that Moran was motivated by any racial or class-based animus toward them, which is required when bringing such a claim. Id. The Supreme Court has made clear that § 1985(3) does not reach "conspiracies motivated by bias towards others on account of their economic views, status, or activities." See United Bhd. Of Carpenters v. Scott, 463 U.S. 825, 837-38 (1983) (emphasis added). Accordingly, any claims by the Plaintiffs' with respect to discrimination based on their alleged political activities are insufficient for § 1985(3) purposes. Plaintiffs' claims under § 1985(3) therefore must be dismissed. Additionally, Plaintiffs' claims under § 1986 also must be dismissed because failure of a §1985 claim renders fatal Plaintiffs' corresponding § 1985 claims. See Hahn v. Sargent, 523 F.2d 461 (1st Cir. 1975), cert. denied 425 U.S. 904 (1976).

**F.     COUNTS V AND VI FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

**1.     The Whistleblower Statute, G.L. C. 149, § 185, Preempts Plaintiffs' Public Policy Claims Against Defendant Moran.**

The Plaintiffs cannot assert a common law public policy claim against Defendant Moran when they have available an express statutory remedy. See Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985), aff'd 397 Mass. 1004 (1986) (holding that a plaintiff alleging an age discrimination claim must proceed exclusively under M.G.L.A. c. 151B if that statute provides a remedy).[4] Here, that statutory remedy is the Massachusetts Whistleblower statute, G.L. c. 149, § 185, on which they have already based another claim in their Complaint. Accordingly, having already asserted such a claim under that statute, the Plaintiffs' common law public policy claims are preempted and barred.

---

[4] Plaintiffs' claims against Defendant Moran also fail because under the Massachusetts Tort Claims Act, individual public employees such as Moran cannot be sued, even in their official capacity, when acting within the scope of his employment. Taplan v. Town of Chatham, 390 Mass. 1,2-3 (1983).

2.     **The Plaintiffs Have Failed to Allege and Establish That
They Were Terminated By Their Employer, The City of Boston.**

The Plaintiffs' claims of common law violation of public policy are also barred because they have not alleged that they have been terminated from their employment nor is there any evidence of such termination.  Common law public policy claims available to at-will employees apply only to employees who have been terminated or discharged from their position.  See Wright v. Shriner's Hosp. For Crippled Children, 412 Mass. 469, 472 (1992).  As they have alleged in their Complaint, both Barry and Green presently remain City of Boston employees.  Accordingly, they have failed to satisfy the requisite elements of their claims and thus, dismissal is warranted.

3.     **Plaintiff Green Has Failed To Satisfy The Presentment
Prerequisites For Her Claim.**

While the Massachusetts Supreme Judicial Court has not specifically addressed whether public policy claims sound in tort or contract, the court has intimated that such claims sound in tort.  King v. Driscoll (II), 424 Mass 1, (1996).  Here, the Plaintiffs have asserted a claim sounding in tort and have sought tort remedies, including emotional distress damages.  Plaintiff Green, however, has failed to comply with the presentment requirements of the Massachusetts Tort Claims Act.  She has also failed to allege in her Complaint that she effected presentment.  Such failure negates her cause of action.  See G. L. c. 258; Johnson v. Trustees of Health and Hospitals of the City of Boston, 23 Mass. App. Ct. 933 (1986); Foley v. Greater Lowell Regional Vocational Technical School District, 2001 Mass. Super. LEXIS 275 (2001).

G.     **PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS CLAIM IN COUNT VIII.**

The Plaintiffs have failed to satisfy the stringent standards required for an actionable intentional infliction of emotional distress claims in Count VIII against

Defendant Moran. To establish this claim, the Plaintiffs bear the heavy burden of establishing that: "(1) that the [defendant Moran] intended to inflict emotional distress or that [he] knew or should have known that emotional distress was the likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant[] [Moran] w[as] the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Haddad v. Gonzalez, 410 Mass. 855, 871 (1991).

This issue is ripe for consideration on a motion to dismiss because "[i]t is for the court to decide whether the defendant's conduct may be reasonably regarded as so extreme as to permit recovery." Orell v. UMass Mem. Med. Ctr., 203 F. Supp. 2d 52, 70 (D. Mass. 2002); see Caputo v. Boston Edison Co., 924 F.2d 11, 14 (1st Cir. 1991). The standard for making a claim of intentional infliction of emotional distress is very high in order to "avoid[] litigation in situations where only bad manners and mere hurt feelings are involved." Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1979).

Here, neither Plaintiff Barry nor Plaintiff Green has made allegations of Defendant Moran's actions that meet the threshold requirement of extreme and outrageous conduct. None of Defendant Moran's alleged actions involving the Plaintiffs do not rise to the level of conduct that is "utterly intolerable in a civilized society." Agis, 371 Mass. at 145. Conduct is extreme and outrageous if it goes "beyond all possible bounds of decency and is utterly intolerable in a civilized community." Agis, supra at 319. "'Outrageous does not encompass 'workaday insults, annoyances, or even threats and petty oppressions, 'but rather a 'high order of reckless ruthlessness or deliberate malevolence." Id. "[P]laintiff must establish more than 'tortious or even criminal intent' or that the employer has 'intended to inflict emotional distress, or even that [their] conduct has been characterized by malice or a degree of aggravation." Id. As many other courts have recognized, "[p]laintiffs encounter[]

extreme difficulty to satisfy the 'outrageous requirement of the second prong." <u>Bennett</u>, <u>supra</u>.

Moreover, the Plaintiffs have also failed to allege that they have "suffered distress so severe that no reasonable person could be expected to endure it." <u>Bennett</u>, <u>supra</u>. at 40. Their conclusory allegations are insufficient to sustain a claim of severe and extreme emotional distress. <u>See</u>, <u>e.g.</u>, <u>Simon v. Solomon</u>, 385 Mass. 91, 93 (plaintiff suffered distress so severe that she was unable to care for children and sought psychiatric counseling); <u>see also</u> <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996). Nowhere in Plaintiff's' Complaint do they allege that they have suffered such distress that no reasonable person could be expected to endure it.  Moreover, Plaintiffs' have continued their City employment.

Plaintiffs' failure to make these requisite allegations require dismissal of their intentional infliction of emotional distress claims, even under the liberal pleading standards.  Both this Court and the First Circuit have concluded that dismissal of a plaintiff's intentional infliction of emotional distress claim was proper on a motion to dismiss.  <u>See</u> <u>Ornell</u>, <u>supra</u> at 70 (dismissing plaintiff's claim because after assuming facts alleged are true, court concluded that they do not constitute behavior that is "utterly intolerable in a civilized society" and because plaintiff failed to allege that she "suffered distress so severe that no reasonable person could be expected to endure it"); <u>see</u> <u>also</u> <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996) (affirming dismissal of claim of intentional infliction of emotional distress under Massachusetts law because "the conduct complained of does not as a matter of law amount to extreme and outrageous behavior beyond all possible bounds of decency and which are utterly intolerable in a civilized community" and because plaintiff never even attempted to plead severe distress).

H.  **PLAINTIFFS' CLAIMS OF NEGLIGENCE ALSO FAIL AGAINST MORAN BECAUSE HE IS IMMUNE UNDER THE MASSSACHUSETTS TORT CLAIMS ACT.**

As a public employee, Moran cannot be liable for negligent conduct pursuant to the Massachusetts Tort Claims Act. The public employer is the sole entity answerable for injuries caused by a public employee. See Appleton v. Town of Hudson, 397 Mass. 812 (1986).  An individual "public employee" in his capacity as such is not a proper defendant. Taplan v. Town of Chatham, 390 Mass. 1,2-3 (1983).

**IX.  CONCLUSION**

For all of the foregoing reasons, the defendant, Robert J. Moran, respectfully requests that this Court allow the Defendant's Motion to Dismiss.

Respectfully submitted,
DEFENDANT ROBERT J. MORAN,
Merita A. Hopkins
Corporation Counsel

By their attorney:

/s/ Helen G. Litsas
_____
Helen G. Litsas
Assistant Corporation Counsel
BBO# 644848
James M. Chernetsky
Assistant Corporation Counsel
BBO# 638152
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4023 (Helen)
(617) 635-4048(James)

## **7.1 Certification**

Undersigned counsel certifies that on April 25, 2005, pursuant to LR, D. Mass. 7.1(a)(2), she spoke with Plaintiff's counsel, Thomas Feeney, Esq.,regarding this responsive pleading.


Date: _____        /s/ Helen G. Litsas
4/29/05                  _____
                         Helen G. Litsas, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a copy of this document was served upon counsel of record for the Plaintiff via U.S. Mail to 39 Sheafe Street, Suite 1, Chestnut Hill, MA 02467.


      4/29/05                      /s/ Helen G. Litsas

Date: _____               _____

                                      Helen G. Litsas, Esq.