UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 05-10528-RCL

DENISE M. BARRY and JANE B. GREEN,
    Plaintiffs,

v.

ROBERT J. MORAN, PAUL A. CHRISTIAN, WILLIAM KESSLER, WILLIAM HITCHCOCK,CITY OF BOSTON FIRE DEPARTMENT, and JOHN and/or JANE DOES 1-50.
    Defendants.

**DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS.**

NOW COMES Defendant City of Boston ("City") and moves this Honorable Court pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss all Counts of the Plaintiff's Complaint directed against it.

As grounds therefore, the City states that:

1.     There is no liability against a municipality for any conduct under the Massachusetts Civil Rights Act (Count I);

2.     Plaintiff Green has failed to provide written notice to their employer before disclosing the alleged wrongdoing to a "public body," barring their claim (Count II);

3.     There is no liability under 42 U.S.C. § 1985 based on a respondeat superior basis (Count III);

4.     There is no violation of 42 U.S.C. § 1985 or § 1985 (Counts IV);

5.     Plaintiffs claims of violation of public policy is preempted by the "Whistleblower Statute" (Count V and VI); and

6.     Plaintiff Green failed to effect proper presentment (Count VII and IX).

Defendant City submits the attached Memorandum of Law in further support of its motion.

        Respectfully submitted,
        DEFENDANT, CITY OF BOSTON
        Merita A. Hopkins
        Corporation Counsel

        By its attorney:

        /s/ Helen G. Litsas
        _____
        Helen G. Litsas
        Assistant Corporation Counsel
        BBO# 644848
        James M. Chernetsky
        Assistant Corporation Counsel
        BBO# 638152
        City of Boston Law Department
        Room 615, City Hall
        Boston, MA 02201
        (617) 635-4023 (Helen)
        (617) 635-4048 (James)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document was served upon counsel of record for the Plaintiff via U.S. Mail to 39 Sheafe Street, Suite 1, Chestnut Hill, MA 02467.

   4/29/05                                /s/ Helen G. Litsas
Date: _____                    _____
                                                      Helen G. Litsas, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 05-10528-RCL

| | |
|---|---|
| DENISE M. BARRY and JANE B. GREEN,<br>    Plaintiffs,<br><br>v.<br><br>ROBERT J. MORAN, PAUL A. CHRISTIAN, WILLIAM KESSLER, WILLIAM HITCHCOCK,CITY OF BOSTON FIRE DEPARTMENT, and JOHN and/or JANE DOES 1-50.<br>    Defendants. | |

**DEFENDANT CITY OF BOSTON'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS**

**I.   INTRODUCTION**

The Plaintiffs, Denise Barry ("Barry") and Jane Green ("Green"), have filed suit against Defendant, City of Boston, as well as several other defendants, including the Paul Christian, William Hitchcock, William Kessler, and Robert Moran, seeking damages, declaratory relief and injunctive relief. The Plaintiffs allege various claims enumerated in detail at 5-6, infra. Defendant City now moves to dismiss several claims in the Plaintiffs' Complaint because the Plaintiffs have failed to state any actionable claim upon which relief can be granted. Defendant City has filed an Answer to the remaining claims.

**II. FACTUAL BACKGROUND**

  **A. PLAINTIFF DENISE BARRY'S ALLEGATIONS**

Plaintiff Denise Barry ("Barry") is an employee of the City of Boston Fire Department ("Fire Department"). In the Amended Complaint, Plaintiff Barry makes numerous allegations claiming that she has been denied promotions and step increases during her tenure with the Department because she is not politically affiliated or associated

3

with "those in power in the Fire Department or those in City Government who have influence in the Fire Department." Plaintiff Barry claims that she was well-qualified for each position she applied and more qualified than 90% of the individuals hired for the position.

### 1. Events Occurring During 1996-2002

She alleges that she began her employment with the Fire Department in August 21, 1996 as a Principal Clerk with an R-8 civil service employment rating and that she received two subsequent upgrades, on July 3, 1998, to an R-11 position, and on or around September 1, 1998, to an R-12 position. Barry alleges that Defendant Moran was hired by the Fire Department in July 2001 for the position of personnel manager and that on or around October 12, 2002, Moran attempted to create an R-15 Administrative Assistant position for a Sheila Mancuso as a form of political favor and patronage.

### 2. Events Occurring During 2003

On or about July 14, 2003, Barry alleges that she inquired why she was not receiving a raise or an upgrade and Moran allegedly responded that there were insufficient funds and that no raises would occur. The following month, Barry allegedly submitted recommendations she received from various Fire Department and civilian personnel she had assisted during her Fire Department tenure.

On or about August 20, 2003, Barry applied for an R-15 position with the BFD, for which she claims she was well-qualified. She was interviewed by Moran and Chief Robert Calobrisi on two separate occasions. She alleges further that prior to her second interview, unnamed employees advised her that Moran and Christian had already selected another individual from outside the Fire Department and that she did not meet the minimum qualifications for the position. Barry alleges further that a Michelle Urso was then hired on October 1, 2003 from outside the department because of her political affiliations with the

4

Fire Department and allegedly did not meet the minimum entrance qualifications. On or about August 28, 2003, Plaintiff Barry again allegedly inquired about a pay raise and was advised by Moran of a freeze on raises and hiring. Barry alleges further that Defendant Hitchcock and Chief David Granara have requested step increases on several occasions for her that were denied by Moran and Christian.

On or about October 1, 2003, Barry alleges that she was appointed in an acting capacity to the position of MM-5 to assist Nurse Barbara Ryan in the organization of medical bills payment. Barry subsequently began her duties and on October 6, 2003, Ryan sent an email message to Granara recognizing Barry's work. Barry alleges that during this time assisting with medical bills, she was also performing her regular R-12 position. Barry also allegedly requested from Moran that she attend a software training to assist her in this new position and Moran responded that he would explore that option. On October 8, 2003, Barry went to the Fire Marshall's Office and was advised by an employee there that she could not provide Barry with the computer software training she desired.

On October 16, 2003, Barry requested a step increase from Moran and the next day, Moran responded that he would check into the matter. The following day, Barry met with Moran and complained that she was not receiving any promotions or pay increases. Moran allegedly stated that Barry would not be hired into the Case Manager position she desired and that City Hall had another individual in mind for the position. Moran also allegedly stated that "Well, if you're not into politics little girl, then you're not into a position here." Plaintiff Green was present at this meeting and then stated to Moran, "I can't believe you are saying this her, not to mention in front of me." Defendant Moran then allegedly replied, "that's the way it is around here." Barry then allegedly stated, "So I am going to be punished because I am not into politics?" Defendant Moran then allegedly shrugged his shoulders and said "that's politics for you." Subsequent to this meeting, Barry alleges that

5

she was informed by unnamed individuals that Moran would retaliate against her because of her pay raise requests and never pay for step increases. Barry also allegedly complained in writing and in a meeting with Defendant Kessler, who allegedly advised her that he could not help Barry and that her claim did not constitute unlawful discrimination. Barry also alleges that she had subsequent meetings with Kessler, but he allegedly refused to conduct an independent investigation.

### 3. Events Occurring During 2004

Almost a year later, on September 3, 2004, Barry submitted a written complaint against Moran and the Fire Department to her supervisor, Chief Granara, and "formal complaints" to Defendant Kessler detailing her lack of promotions and retaliation by Moran. She also alleges that the Mayor was notified of her complaints. On September 7, 2004, Barry alleges that another meeting with Kessler was held to review Moran's alleged actions against Barry and Green, but that Kessler never conducted an investigation nor issued a written opinion because of Barry's alleged lack of political affiliation. She alleges further that Kessler placed an unreasonable burden upon her by requiring her to produce additional documentation of her alleged complaints.

Barry also alleges that on October 14, 2004, she was denied a step increase by the Defendants. Additionally, she claims that on October 20, 2004, Chief Joseph Finn requested a step increase for Kathy Frechette for an R-17 position because she allegedly is politically affiliated with the Fire Department. Barry also claims that on October 21, 2004, she received a letter from legal counsel for the City's Office of Labor Relations advising her attorney not to speak with City employees regarding her matter. On November 15, 2004, Barry alleges that she complained about the Fire Department's allegedly unlawful practice of favoring politically affiliated individuals. Subsequently, on December 9, 2004, Barry attended two hearings before Alice Kessler of Labor Relations regarding her complaints.

6

### 3. Events Occurring During 2005

On April 4, 2005, Barry allegedly returned to work and discovered a security camera directed at her work station. She alleges that she had taken a few days off of work because of the stress caused by the Defendants' allegedly retaliatory conduct.

### 4. Undated Allegations

Barry also alleges that Ian MacKenzie was hired at some unspecified time for the Case Manager position at an MM-8, Step 7 grade, higher than the MM-5 grade that Barry was receiving for allegedly doing the same job. Barry alleges further that regular meetings were held between Defendants Moran, Christian, and Hitchcock where it was determined that an individual's political affiliation or other association, rather than an individual's qualifications, constituted the primary factor for hiring or promotion. Barry alleges further that the Defendants have acted in concert to adversely affect her employment and that she has suffered lost wages and severe emotional distress.

## B. PLAINTIFF JANE GREEN'S ALLEGATIONS

Green is an employee of the Fire Department's Fire Reports Department, which is itself a part of the Fire Prevention Unit.  Green is also a union shop steward in SENA Local 9158.   Green's job duties involve assisting fire victims with obtaining monetary recovery from insurance companies and welfare and other aid agencies.

### 1. Events Occurring During 2002

In 2002, the Fire Prevention Unit was relocated from Fire Headquarters at 115 Southampton Street to 1010 Massachusetts Avenue (with the exception of the Fire Reports unit, a subdivision of the Fire Prevention Unit comprised of Green and one other employee).  Green's supervisor has been located at 1010 Massachusetts Avenue since 2002.

### 2.  Events Occurring During 2003

In the Complaint, Green alleges that she was present as a union shop steward for an October 9, 2003, meeting between Barry and Defendant Robert Moran concerning Barry's complaints that she did not receive promotions and pay increases allegedly due to her. Green alleges that at this meeting: (1) Moran made statements indicating to Barry that she would not receive promotions or raises because of her lack of political activity; and that (2) Green said to Moran, "I can't believe you are saying this to her, not to mention in front of me."

### 3.  Events Occurring During 2004-2005

Green further alleges that on December 23, 2004, she was informed that her unit was to be re-located from 115 Southampton Street to 1010 Massachusetts Avenue, effective the following Monday.  She further alleges that the equipment and files needed by her to perform her duties were not transferred as promised.  Green alleges that her location at 1010 Massachusetts Avenue and her lack of access to files is burdensome to her and to the public. She also alleges that she has suffered emotional distress as a result of this relocation.

Additionally, Green alleges that the relocation of her unit was in retaliation for her participation more than fourteen months earlier in the meeting between Barry and Moran. The Complaint fails to allege any activity by Green related to Barry's claims in the fourteen months prior to her relocation.  Green's allegations of protected activity appear to relate solely to Green's single statement to Moran, "I can't believe you are saying this to her, not to mention in front of me."  Additionally, Green alleges elsewhere in her Complaint that she is able to make trips two to three times per week to access other necessary files.

Records of fires for approximately the last two and one-half years are available to Green via computer, without the need for her to access paper files at 115 Southampton

Street. The vast majority of her work involves records of recent fires. Green grieved her complaint regarding her relocation in January 2005. The relocation was upheld, but remains the subject of a pending arbitration.

## III. ARGUMENT

### A. DISMISSAL OF SEVERAL OF PLAINTIFFS' CLAIMS AGAINST DEFENDANT CITY IS REQUIRED UNDER THE GOVERNING MOTION TO DISMISS STANDARD.

The Plaintiffs cannot succeed in their claims because they fail to state claims upon which relief can be granted. The Plaintiffs have brought following nine claims. They are:

1. **Count I**: Violation of the Massachusetts Civil Rights Act ("MCRA), G.L. c. 12, §11H and 11I (both plaintiffs versus all defendants);

2. **Count II**: Violation of G.L. c. 149, §185(b) (both plaintiffs versus all defendants);

3. **Count III**: Violation of 42 U.S.C. § 1983 (both plaintiffs versus all defendants);

4. **Count IV:** Conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986 (both plaintiffs versus all defendants);

5. **Count V:** Common law violation of public policy (Barry versus all defendants);

6. **Count VI:** Common law violation of public policy (Green versus all defendants)

7. **Count VII:** Negligent supervision (both Plaintiffs versus the City, Christian and Hitchcock only);

8. **Count VIII:** Intentional Infliction of Emotional Distress (both Plaintiffs versus individual defendants only); and

9. **Count IX:** Negligence (both plaintiffs versus all defendants).

Dismissal is warranted under Rule 12(b)(6) where there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); see Wagner v. Devine, 122 F.3d 53, 55 (1st Cir. 1997). In reviewing a motion to dismiss, the court must accept the allegations of

the complaint as true, drawing all reasonable inferences in favor of a plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994).  A claim may be dismissed if a plaintiff cannot prove, beyond a doubt, that the facts supporting the claim entitle her to relief.   See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987).

### B. PLAINTIFFS' MASSACHUSETTS CIVIL RIGHTS CLAIMS ("MCRA") IN COUNT I FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs claim in Count I assert a Massachusetts Civil Rights Act ("MCRA") claim against the City of Boston. The MCRA provides for a cause of action against  "... any person or persons..." G.L. c. 12, §H.  The City of Boston cannot be held liable under the MCRA because a municipality is not a "person" within the meaning by the MCRA. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-592 (2001).

### C. PLAINTIFF GREEN'S COUNT II WHISTLEBLOWER CLAIMS FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiff Green has not complied with the notice requirements under the Whistleblower Statute as G.L. c. 149, § 185, requires a plaintiff to provide written notice to his or her employer before disclosing the alleged wrongdoing to a "public body. "  G.L. c. 149, § 185(c)(1).  "The statute is unqualified in its [written notice] requirement and in this instance a hard and fast rule does serve a rational purpose, namely, by avoiding uncertainties about what might have happened if formal notice had been given." Dirrane v. Town of Brookline, 315 F.3d 65 (1st Cir. 2002).  While Green alleges that she filed a grievance concerning her relocation on January 27, 2005, she does not allege that this grievance was written or that it disclosed any wrongdoing to a supervisor or to the City. Amd. Cplt. At ¶ 78.  Moreover, even if Plaintiff Green provided such notice, her claim remains barred because nothing in the Complaint suggests that Green engaged in any

whistleblowing activity as defined by the statute, or that any action by Christian related to Green's sole comment.

### D. PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS IN COUNT III ALSO FAIL TO STATE AN ACTIONABLE CLAIM.

Plaintiffs' claims in Counts IV under the Federal Civil Rights statute fail under a *respondeat superior* theory. "The doctrine of *respondeat superior* is not a basis for rendering municipalities liable under §1983 for the constitutional torts of their employees." Monell v. New York Department of Social Services, 436 U.S. 658, 665, n.7 (1978). Accordingly, their claim cannot proceed on that basis. Additionally, Plaintiffs' claim fails to allege that a custom or municipal policy exists which has violated the plaintiff's constitutional rights. Strikingly, the Plaintiffs have actually alleged the contrary; that is, that the City in fact has in place a policy <u>prohibiting</u> the very conduct which forms the basis of the constitutional claims. It is well-settled that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government is responsible for under § 1983. Monell, 436 U.S. at 694. There must be a showing by the Plaintiff that the municipal action was taken with the requisite degree of culpability, and must demonstrate an affirmative, causal link between the policy or custom of the municipality and the particular constitutional violation alleged. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997). Moreover, a "policy or custom" cannot be inferred from a single constitutional violation caused by an individual state actor. Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16 (1st Cir. 1995) (omitting citations); Altman v. Kelly, 36 F. Supp. 2d 433 (D. Mass. 1999).

Here, Plaintiffs have alleged a policy that prohibits the very violations they allege. Additionally, they have alleged a single violation which is insufficient for their claim. Accordingly, the City cannot be held liable for the claim.

E. **PLAINTIFFS' 42 U.S.C. § 1985 and § 1986 CLAIMS IN COUNT IV ARE NOT ACTIONABLE BECAUSE THE PLAINTIFFS HAVE FAILED TO ALLEGE THAT THE CLAIMED CONSPIRACY WAS MOTIVATED BY SOME RACIAL OR OTHERWISE CLASS-BASED, INVIDIOUSLY DISCRIMINATORY ANIMUS.**

The Plaintiffs' claims of conspiracy under 42 U.S.C. § 1985[1] and § 1986 in Count IV fail to state a claim upon which relief can be granted. Claims brought under 42 U.S.C. §1985 were not intended to provide a federal cause of action against every conspiracy, but only against those motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993), quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996). Here, the Plaintiffs have failed to allege that any defendant was motivated by any racial or class-based animus toward them, which is required when bringing such a claim. Id. The Supreme Court has made clear that § 1985(3) does not reach "conspiracies motivated by bias towards others on account of their economic views, status, or activities." See United Bhd. Of Carpenters v. Scott, 463 U.S. 825, 837-38 (1983) (emphasis added). Accordingly, any claims by the Plaintiffs with respect to discrimination based on their alleged political activities are insufficient for § 1985(3) purposes. Plaintiffs' claims under § 1985(3) therefore must be dismissed. Additionally, Plaintiffs' claims under § 1986 also must be dismissed because failure of a § 1985 claim

---

[1] While Section 1985 sets forth three subsections with respectively three distinct causes of action, Plaintiffs make no effort to specify the subsection under which their claims arise. Defendant therefore assumes that Plaintiffs are asserting a claim under §§ 1985(3) and 1986. See Donahue v. City of Boston, 304 F.3d 110, 122 (1st Cir. 2002) (court draws similar assumption). The first two subsections do not appear applicable to the case at bar.

renders fatal Plaintiffs' corresponding § 1985 claims.  See Hahn v. Sargent, 523 F.2d 461 (1st Cir. 1975), cert. denied 425 U.S. 904 (1976).

F.  **COUNTS V AND VI FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

1.  **The Whistleblower Statute, G.L. C. 149, § 185, Preempts Plaintiffs' Public Policy Claims Against Defendant Hitchcock.**

The Plaintiffs cannot assert a common law public policy claim against Defendant City when they have available an express statutory remedy.  See Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985), aff'd 397 Mass. 1004 (1986) (holding that a plaintiff alleging an age discrimination claim must proceed exclusively under M.G.L.A. c. 151B if that statute provides a remedy).  Here, that statutory remedy is the Massachusetts Whistleblower statute, G.L. c. 149, § 185, on which they have already based another claim in their Complaint.  Accordingly, having already asserted such a claim under that statute, the Plaintiffs' common law public policy claims are preempted and barred.

2.  **The Plaintiffs Have Failed to Allege and Establish That They Were Terminated By Their Employer, The City of Boston.**

The Plaintiffs' claims of common law violation of public policy are also barred because they have not alleged that they have been terminated from their employment nor is there any evidence of such termination.  Common law public policy claims available to at-will employees apply only to employees who have been terminated or discharged from their position. See Wright v. Shriner's Hosp. For Crippled Children, 412 Mass. 469, 472 (1992). As they have alleged in their Complaint, both Barry and Green presently remain City of Boston employees.  Accordingly, they have failed to satisfy the requisite elements of their claims and thus, dismissal is warranted.

13

       3.    **Plaintiff Green Has Failed To Satisfy The Presentment Prerequisites For Her Claim.**

While the Massachusetts Supreme Judicial Court has not specifically addressed whether public policy claims sound in tort or contract, the court has intimated that such claims sound in tort. <u>King v. Driscoll</u> (II), 424 Mass 1, (1996). Here, the Plaintiffs have asserted a claim sounding in tort and have sought tort remedies, including emotional distress damages. Plaintiff Green, however, has failed to comply with the presentment requirements of the Massachusetts Tort Claims Act. She has also failed to allege in her Complaint that she effected presentment. Such failure negates her cause of action. See G. L. c. 258; <u>Johnson v. Trustees of Health and Hospitals of the City of Boston</u>, 23 Mass. App. Ct. 933 (1986); <u>Foley v. Greater Lowell Regional Vocational Technical School District</u>, 2001 Mass. Super. LEXIS 275 (2001).

**G.   PLAINTIFFS' CLAIMS OF NEGLIGENCE AND NEGLIGENT SUPERVISION ALSO FAIL AGAINST BECAUSE SHE FAILED TO EFFECT PROPER PRESENTMENT OF HER CLAIMS.**

Plaintiff Green's claims under Counts VII and IX cannot prevail because she failed to effect proper presentment in accordance with the Massachusetts Tort Claims Act. The Act was intended as "a comprehensive and uniform regime of tort liability for public employers." <u>Lafayette Place Assoc. v. Boston Redevelopment Authority</u>, 427 Mass. 509, 534 (1998). The Act provides the sole remedy for persons alleging torts against municipalities. <u>Id.</u> at 533-35. Under the provisions of the Act, presentment within two years of the date the cause of action arose is a statutory condition precedent to the bringing of a lawsuit against a municipality. The statute provides in pertinent part:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after date upon which the cause of action arose, and such claim shall have been finally denied by such

> executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. . . .

G.L. c. 258, § 4.  Thus, timely presentment must be made in strict compliance with the statute, and the executive officer must be given six months to settle or deny the claim.  Only then can a civil action pursuant to G.L. c. 258 be commenced.  The requirements of presentment are very specific, and a failure to provide adequate written notice to the public employer negates a claimant's cause of action.  See Weaver v. Commonwealth, 387 Mass. 43, 45 (1982); Johnson v. Trustees of Health and Hospitals of the City of Boston, 23 Mass. App. Ct. 933 (1986); Spring v. Geriatric Authority of Holyoke, 394 Mass. 274 (1985); Pruner v. Clerk of the Superior Court in the County of Norfolk, 382 Mass. 309 (1981).

Plaintiff Green has failed to allege in her Complaint or provide any evidence that she gave the Executive Officer of the City written notice of her negligence claims in accordance with the Act.   Accordingly, such failure is fatal to her claims.

### IV.  CONCLUSION

For all of the foregoing reasons, the defendant, City of Boston, respectfully requests that this Court allow the Defendant's Motion to Dismiss as to the above-mentioned claims.

Respectfully submitted,
DEFENDANT CITY OF BOSTON,
Merita A. Hopkins
Corporation Counsel
By his attorney:

/s/ Helen G. Litsas
_____

Helen G. Litsas
Assistant Corporation Counsel
BBO# 644848
James M. Chernetsky
Assistant Corporation Counsel
BBO# 638152
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4023 (Helen)
(617) 635-4048(James)

**<u>7.1 Certification</u>**

       Undersigned counsel certifies that on April 25, 2005, pursuant to LR, D. Mass. 7.1(a)(2), she spoke with Plaintiff's counsel, Thomas Feeney, Esq.,regarding this responsive pleading and they were unable to resolve the issues prior to filing.

       4/29/05                                               /s/ Helen G. Litsas
Date: _____                     _____
                                                      Helen G. Litsas, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document was served upon counsel of record for the Plaintiff via U.S. Mail to 39 Sheafe Street, Suite 1, Chestnut Hill, MA 02467.

|  |  |
|---|---|
| 4/29/05 | /s/ Helen G. Litsas |
| Date: _____ | _____ |
|  | Helen G. Litsas, Esq. |