UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE M. BARRY and<br>JANE B. GREEN,<br><br><br>Plaintiffs,<br><br>vs.<br><br><br>ROBERT J. MORAN; PAUL A.<br>CHRISTIAN; WILLIAM KESSLER;<br>WILLIAM HITCHCOCK; CITY OF<br>BOSTON FIRE DEPARTMENT, and<br>JOHN and/or JANE DOES 1-50,<br><br><br>Defendants. | CIVIL NO. 05-10528 RCL |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' CITY OF BOSTON'S, MORAN'S, CHRISTIAN, HITCHCOCK, AND KESSLER'S MOTIONS TO DISMISS

COMES NOW Plaintiffs Denise M. Barry and Jane B. Green, by and through their

undersigned counsel, and submit the following Memorandum in Opposition to the respective

Defendants' Motions to Dismiss the claims as set forth in Plaintiffs' First Amended Complaint.

Although each Defendant filed an individual motion, their respective motions are almost identical

such that this consolidated opposition memorandum may assist in expediting the Court's analysis.

In addition, notwithstanding Defendants' recasting of the facts as set forth in their motions,

which are incomplete and inaccurate in certain key respects, Plaintiffs prefer to rely upon, and

incorporate herein, the complete set of allegations as contained in their First Amended Complaint.

## TABLE OF CONTENTS

I. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. ARGUMENT AS TO EACH CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    First Cause of Action - Massachusetts Civil Rights Act M.G.L. c. 12, 11H and 111 . . . . 5

    Second Cause of Action - Whistleblower Protection Act - M.G.L. c 149, § 185 . . . . . . . 8

    Third Cause of Action - 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1. Municipal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2. Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        3. Custom . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        4. Inadequate Supervision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Fourth Cause of Acton - Conspiracy under 42 U.S.C. §§ 1985 and 1986 . . . . . . . . . . . 16

    Fifth Cause of Action - Common Law Violation of Public Policy - Plaintif Barry . . . . . 18

    Sixth Cause of Action - Common Law Violation of Public Policy - Plaintiff Green . . . . 18

    Seventh Cause of Action - Negligent Supervision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Ninth Cause of Action - Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Eighth Cause of Action - Intentional Infliction of Emotional Distress . . . . . . . . . . . . . 21

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. SUMMARY

**"Well, if you're not into politics little girl, then you're not into a position here."**

An honest admission by the head of the Human Resources Department for the Boston Fire Department - Defendant Robert Moran. It is a state of affairs that is well known anecdotally in Boston government, but nevertheless unlawful for all of its notoriety. Defendant Moran, obviously feeling somewhat immune from the logical consequences of this admission because of his politically-obtained position, uttered this statement as explanation for why Plaintiff Barry never could get promoted by the Fire Department. Barry, a civil service employee, never has been promoted by the BFD; her only pay increases have come from union efforts and agreements.

Plaintiff Green is Plaintiff Barry's Union Shop Steward who was called into that revealing meeting with Plaintiff Barry and Defendant Moran precisely to act as a witness and advocate of Plaintiff Barry's rights. Plaintiff Green did in fact witness grossly unlawful behavior, in Defendant Moran denying Plaintiff Barry any access to promotions because of her lack of political affiliation with the "right" people. In order to intimidate **both** Plaintiff Barry and Plaintiff Green, Defendants picked on the witness first - Plaintiff Green - severely adversely affecting the terms and conditions of her employment.

Defendants' motions make no mention of Defendant Moran's admission of the unlawful policies of the Boston Fire Department, a Department being led by Defendants Christian and Hitchcock, among others. Nevertheless, Defendants' motions argue for procedural immunity for its unlawful intentions and concomitant actions.

Defendants' Motions completely ignore also the allegations that their actions constitute **not only** a one time occurrence but a **pattern and practice of discrimination and retaliation** based upon Plaintiffs' rights to freedom of speech and association, and their right to be free from political discrimination and retaliation. The Defendants' retaliation against Plaintiff Barry's witness to this

3

pattern of behavior, Plaintiff Green, is designed both to intimidate and silence Plaintiff Green and

to intimidate and silence Plaintiff Barry. Defendants' behavior is a well-worn Mob tactic of going

after friends/witnesses of informants in order to silence the informant; thus, both Plaintiff Barry and

Plaintiff Green have standing to object to the Defendants' direct mistreatment of Plaintiff Green.

## II. ARGUMENT AS TO EACH CLAIM

Defendants' motions attack each claim, seriatum. This Memorandum will be structured

similarly, with a brief introductory discussion of the law generally applicable to Plaintiffs' claims.

As set forth in Elrod v. Burns, 427 U.S. 347, 353-54 (1976):

> Patronage practice is not new to American politics. It has existed at the federal level at
> least since the Presidency of Thomas Jefferson, although its popularization and legitimation
> primarily occurred later, in the Presidency of Andrew Jackson. The practice is not unique
> to American politics. It has been used in many European countries, and in darker times, it
> played a significant role in the Nazi rise to power in Germany and other totalitarian states.
> More recent times have witnessed a strong decline in its use, particularly with respect to
> public employment. Indeed, only a few decades after Andrew Jackson's administration,
> strong discontent with the corruption and inefficiency of the patronage system of public
> employment eventuated in the Pendleton Act, the foundation of modern civil service. And
> on the state and local levels, merit systems have increasingly displaced the practice. This
> trend led the Court to observe in CSC v. National Association of Letter Carriers, 413 U.S.
> 548, 564, 93 S.Ct. 2880, 2889, 37 L.Ed.2d 796 (1973), that "the judgment of Congress,
> the Executive, and the country appears to have been that partisan political activities by
> federal employees must be limited if the Government is to operate effectively and fairly,
> elections are to play their proper part in representative government, and employees
> themselves are to be sufficiently free from improper influences."

See also Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990)(public employee's right under

the First Amendment to have promotion decision made without consideration of political affiliation

or support); Hosford v. School Committee of Sandwich, 51 Mass. App. Ct. 728 (1996); Souther

Worcester County Regional Vocational Sch. Dist. v. alobor Relations Comm'n, 386 Mass 414

(1982)(failure to re-appoint untenured teacher because of union activity). Plaintiffs' allegations of

such discriminatory conduct are a matter or great public concern; Defendants attempt to diminish

or mischaracterize Plaintiffs' Speech and Association should not mislead the Court. Plaintiffs'

claims are applicable to the Defendants' patronage practice and their retaliatory actions against the Plaintiffs used to protect such perceived privilege and act with impunity because of their political affiliations.

## First Cause of Action - Massachusetts Civil Rights Act M.G.L. c. 12, 11H and 11I

This claim is asserted against the Defendants Moran, Christian, Hitchcock, and Kessler in their individual capacities only. Defendants' Motion argue that claims against Defendants in their official capacities and claims against the City of Boston are precluded because official capacity claims are not recognized because governments are not "persons" under the act. Defendants' argument is moot; the First Cause of Action is asserted against the individuals only.

The Defendants' second argument against Plaintiffs' First Cause of Action is that Green has not engaged in any constitutionally protected speech. Plaintiff's Barry's complaints about the blatantly unlawful manner in which Defendants were making promotion decisions and the complaints related to the subsequent retaliation constitute such protected speech. Plaintiff Green in her own right is being retaliated against by the Defendants for her roll as a witness, not merely for her statement to Defendant Moran when he revealed the unlawful reason for the deprivation of Plaintiff Barry's employment rights. M.G.L. c. 149, § 185(b)("[a]n employer may not take retaliatory action against an employee because the employee . . . **threatens to disclose** to a supervisor or to a public body any activity, policy, or practice of the employer that the employee reasonably believes is in violation of a law, rule, or regulation promulgated pursuant to law.").

The Defendants are well-aware of the allegations of patronage/political affiliation discrimination and retaliation because a formal written complaint has been submitted to Moran, Kessler, Christian, and the Mayor of Boston informing them of the outrageous circumstances being perpetrated by the Defendants. See Exhibit A. Once again in a Mob-like manner, the Defendants argue that as long as we can get to the witness before she talks, then we are safe. Defendants'

5

actions are designed to intimidate and silence Plaintiff Green and her threatened speech, and are

actionable under law.

Finally, Defendants argue that Plaintiffs' allegations of Defendants' actions do not rise to

the level of "threats, intimidation, or coercion."

> To recover under the Massachusetts Civil Rights Act (the "MCRA"), Mass.
> Gen. L. ch. 12, §§ 11H, 11I, a plaintiff must prove that his exercise or enjoyment of
> rights secured by the Constitution or laws of the United States or the
> Commonwealth has been interfered with, or attempted to be interfered with, and
> that the interference or attempted interference was by "threats, intimidation or
> coercion." Bally v. Northeastern Univ., 403 Mass. 713, 717, 532 N.E.2d 49 (1989)
> (quoting Mass. Gen. L. ch. 12, §§ 11H and 11I). The Massachusetts Supreme
> Judicial Court has held that a "threat" is "an intentional exertion of pressure to
> make another fearful or apprehensive of injury or harm;" that "intimidation" is the
> "putting [of someone] in fear for the purpose of compelling or deterring conduct;"
> and that "coercion" is an "application to another of such force, either physical or
> moral, as to constrain him to do against his will something he would not otherwise
> have done." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467,
> 474, 631 N.E.2d 985 (1994) (citations omitted). It has further explained that "an
> actual or potential physical confrontation accompanied by a direct threat of harm"
> will suffice to establish "threats, intimidation or coercion" in violation of the
> MCRA. Bally, 403 Mass. at 719, 532 N.E.2d 49.

Cignetti v. Healy, 89 F.Supp.2d 106, 124 (D.Mass 2000).

> [T]he MCRA [Massachusetts Civil Rights Act], 'like other civil rights statutes, is remedial
> [in nature and] [a]s such, it is entitled to liberal construction of its terms.' Batchelder v.
> Allied Stores Corp., 393 Mass. 819 , 822 (1985). The term 'threats, intimidation and
> coercion' may take on many forms. United States v. Beaty, 288 F.2d 653, 656 (6th Cir.
> 1961) (fn 10).

Reproductive Rights Network v. Pres. of Univ. Of Mass., 45 Mass. App. Ct. 495, 505-06 (1998).

The nature of any intimidation or threat is based upon an objective standard.

> Thus, to be effective, the provisions of Sections 11H and 11I must apply to any
> threatening, intimidating, or coercive behavior regardless of whether the defendant
> specifically intended to interfere with a right to which the plaintiff is entitled.

Redgrave v. Boston Symphony Orchestra, 399 Mass. 93, 100 (1987).

In this case, the actions of Defendants constitute both intimidation and coercion in the

unlawfully imposed adverse employment conditions. To be adverse, an employee need not be

fired; a material change in the conditions of a plaintiff's employ is sufficient. See MacCormack v. Boston Edison Co., 423 Mass 652 (1996)(indicating plaintiff must demonstrate "a change in working conditions that materially disadvantaged him" todemponstrate an adverse employment action). Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1ˢᵗ Cir. 1998)(Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees").

The BFD moved the Fire Prevention Division to 1010 Massachusetts Avenue in late 1998, but kept Plaintiff Green at 115 Southampton Avenue in Fire Reports because there was no room at 1010 Massachusetts Avenue for the files constantly in use by Plaintiff Green; she needs to travel back to 115 Southampton multiple times during the week. Defendants have not explained, nor could the reasonably do so, why no telephone was provided to Plaintiff Green at her new location *for three months*; this was not a planned move, it was a move designed to harass and intimidate both Plaintiff Green and Plaintiff Barry ('this could happen to you'), and thus is cognizable injury. The allegations of multiple denials of job promotions for which Plaintiff Barry was well-qualified and which positions were given to politically-connected, not-as-well qualified outsiders also constitute harassment and intimidation, and certainly qualify as adverse employment decisions.

To the extent that Defendants argue some sort of administrative pretext for Plaintiff Green's transfer, isolation, and forced weekly, sometime daily, travel between buildings, Defendants need to be aware that "temporal proximity alone provides a sufficient circumstantial causal link between . . . [Plaintiffs'] exercise of free speech and ensuing transfer." Nethersole v. Bulger, 287 F. 3d 15 (1ˢᵗ Cir. 2002). As set forth in the First Amended Complaint, Defendants' actions against Jane Green are connected temporally and substantively only to her threatened exercise of her First Amendment rights, and not to any planned re-organization of the Fire

Prevention Unit of the BFD.

The rights asserted in Elrod v. Burns and Rutan, supra were the rights to freedom of
speech and association found in the United States Constitution with which the defendants therein
were interfering. Those same rights are imputed to the States via the Fourteenth Amendment and
are protected independently by the Massachusetts Constitution. See Colo v. Treasurer &
Receiver Gen., 378 Mass. 550, 558 (1979) (Massachusetts freedom of speech analysis guided by
Federal analysis). Defendants simply do not have a viable argument that Plaintiffs' verified first
amended complaint does not allege sufficiently that Defendants' actions adversely affect the terms
and conditions of Plaintiffs' employment and adversely seek to impact their exercise of rights
guaranteed to them under the First Amendment of the United States Constitution, *inter alia. See
also* Westfield High School LIFE Club v. City of Westfield; 249 F.Supp.2d 98 (D.Mass 2003);
Demarest v. Athol/Orange County Community Television, Inc., 188 F.Supp.2d 82 (D.Mass 2002);
Wagner v. City of Holyoke, 100 F.Supp.2d 78 (D.Mass 2000).

## Second Cause of Action - Whistleblower Protection Act - M.G.L. c 149, § 185

Plaintiffs' Second Cause of Action asserts in part that:

Plaintiffs have suffered retaliation in the form of adverse and hostile terms and conditions
of employment because of Plaintiffs' reports regarding the unlawful political affiliation
discrimination and patronage practices being perpetrated by Defendant BFD (Defendants
Christian, Hitchcock, and Moran in their official capacities).

The Whistleblower Protection Act provides that "[a]n employer may not take retaliatory
action against an employee because the employee . . . discloses, **or threatens to disclose** to a
supervisor or to a public body any activity, policy, or practice of the employer that the employee
reasonably believes is in violation of a law, rule, or regulation promulgated pursuant to law."
M.G.L. c. 149, § 185(b). Plaintiff Barry disclosed to her supervisors, as well as to the Mayor
himself, such unlawful practices and policies, identifying Plaintiff Green as her willing witness.

8

Defendants raised two arguments against Plaintiffs' Second Cause of Action. First that the Whistleblower Protection Act did not permit recovery against individual defendants and second that no written notice was provided by Plaintiff Green to the Defendants prior to filing suit. Defendants have not alleged that Plaintiff Barry's claims suffer from a similar lack of notice. Once again, Defendants' first argument is moot; Plaintiffs have amended the complaint to assert such claims solely against Defendant BFD (against Defendants Moran, Christian, Kessler, and Hitchcock in their official capacities).

As to the second argument, written notices were provided to the City that amply set forth Plaintiffs' claims in this matter.[1] See Notices provided to the Defendants attached hereto as Exhibit A; see also First Amended Complaint, ¶¶ 41 – 46 and 48 (¶ 45, in part, asserts: "On or about 3 September 2004, Plaintiff Barry again submitted . . . formal complaints about Defendant Moran's actions against her, including her lack of promotions and retaliation for her complaints, and as to Plaintiff Green for the retaliation being perpetrated upon her as her witness.").

As set forth in Exhibit A, more than adequate notice was provided to the Defendants via correspondence sent to the Mayor of the City of Boston and each of the Defendants:

> As you are aware, I sent a certified copy of a formal written complaint to your attention against Robert Moran the Human Resource Director here at the B.F.D. I had a meeting with Winnie Yam and Bill Kessler on September 9, 2004 to go over my complaint. On that day, I mentioned that I had witnesses to incidents and documentation. Not long after our meeting one of my witnesses that I named Jane Green was instantly harassed by Mr. Moran out of pure retaliation.
>
> On December 9, 2004, I had 2 hearing scheduled down at Labor relations. Again, I mentioned that Jane Green was my witness on Oct. 3 when Bob Moran stated to

---

[1]     M.G.L., c. 149, § 185(c)(1) provides in pertinent part:

[T]he protection against retaliatory action . . . shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the [allegedly illegal or corrupt] activity . . . to the attention of a supervisor . . . by written notice and has afforded the employer a reasonable opportunity to correct the activity.

me "that if your not into politics little girl, then you're not into a position and listen kiddo if you don't like the way things are run here there are other job opportunities out there you know."

Attached to the correspondence to the Mayor and the Defendants was an earlier

correspondence sent directly to Defendant Kessler:

Ironically, eight days after my hearing my witness Jane Green has been informed that the Commissioner wants her out of the building immediately for no apparent reason. Again, this is an act of pure retaliation not to mention a case of intimidating a witness which is a very serious crime.

For the record, Jane Green was in Bob Moran's office with me as my union representation looking out for my best interest not to initiate trouble. Bob Moran is the one that consistently creates a hostile environment here at the B.F.D. and nothing is done about his actions, therefore, we are proceeding on to a court house.

Also, I mentioned in my hearing it is clearly evident that Bob Moran has become spiteful towards me and because of his behavior I am afraid of what he is capable of next.

Both the correspondence and the meeting with Defendant Kessler informed the Defendants

of Plaintiffs' claims against them sufficient to satisfy the prerequisites of the Massachusetts Tort

Claims Act. See Fontneau, supra.

In light of the above, Defendants' argument that they did not receive notice of Plaintiffs'

claims is more than a bit frivolous, and especially in light of Defendant Christian's admission to the

Boston Globe that "[t]hat's been addressed with the human resources division at City Hall . . . It's

really an old issue. It was already heard." See Exhibit B, attached hereto. In as much as the First

Circuit Court of Appeals has "observed that the [written notice] requirement gives the employer

one last chance to correct wrongdoing before the employee goes public with his accusations,"

Dirrane v. Town of Brookline , 315 F.3d 65, 73 (1st Cir. 2002), the City unequivocally has

admitted that is has had its chance and chose not to do anything about it.

Moreover, to the extent that the Defendants seek to rely upon a technicality that Jane

Green herself did not sign the written notice to the Defendants that set forth the Defendants'

ongoing retaliatory conduct against her, Plaintiff Green qualifies for the waiver of such a notice

requirement. Chapter 149, § 185, provides in pertinent part [emphasis added]:

(c) (1) Except as provided in paragraph (2), the protection against retaliatory action provided by subsection (b) (1) shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment, to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

(2) **An employee is not required to comply with paragraph (1) if he: (A) is reasonably certain that the activity, policy or practice is known to one or more supervisors of the employer and the situation is emergency in nature**; (B) reasonably fears physical harm as a result of the disclosure provided; or (C) makes the disclosure to a public body as defined in clause (B) or (D) of the definition for "public body" in subsection (a) for the purpose of providing evidence of what the employee reasonably believes to be a crime.

Based upon the notice to the Defendants, Plaintiff Green satisfies the first prong of the

waiver under section 185(c)(2). The situation was, and continues to be "emergency in nature" for

Plaintiff Green; her physician is increasingly alarmed at Plaintiff Green's stress-related physical

health, see Affidavit of Jane Green, filed herein, and Plaintiffs have filed a Motion for a Preliminary

Injunction to enjoin the Defendants' ongoing retaliation, and had obtained a hearing just one week

after the complaint was filed, which was avoided by Defendants because they removed the claim to

Federal Court. Plaintiffs renew their request for a hearing at the earliest possible time to enjoin the

Defendants retaliatory conduct. Accordingly, Plaintiff Green situation is exempt from the written

notice requirement of section 185.

The First Amended Complaint has more than sufficient *uncontested, verified* allegations of

the retaliation being perpetrated on Plaintiff Green directly through the arbitrary and capricious

move, and deprivation of telephone and files, to 1010 Massachusetts Avenue, the intimidation that

this works upon Plaintiff Barry, and the repeated denial of Plaintiff Barry's requests for

promotions. Plaintiffs have alleged a scheme and conspiracy as against them both, Defendants'

11

arguments are designed to separate the two claims artificially; Defendants should not be allowed to divide and conquer.

## Third Cause of Action - 42 U.S.C. § 1983

### 1. Municipal Liability

As with the First Cause of Action, Defendants allege that § 1983 cannot be asserted against the municipality because it is not a person. Plaintiff is wrong for two reasons. First, the First Amended Complaint seeks declaratory and injunctive relief, perfectly permissible causes of action against both States and Municipalities. Second, the City of Boston is not a State, it is a municipality and municipalities are liable if allegations are proven which show a policy, practice, or custom, and individual Supervisors will be liable if they participated or acquiesced in the alleged constitutional deprivations. See City of Canton v. Harris, 489 U.S. 378, 385 (1989)(supervisory and municipal liability is established where supervisors and municipalities fail to curb the illegal and unconstitutional acts of their employees).

In passing § 1983 Congress intended that municipalities and other local government units would be liable for deprivations of constitutional rights where the deprivation of rights results from a policy or custom of the municipality. See Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 2035-36 (1978). The Court held:

the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy or some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

Id. (emphasis in original).

As recognized by the Massachusetts Supreme Judicial court in a case cited by Defendants:

A municipality may be liable under s. 1983, see Monell v. Department of Social Servs. of New York, 436 U.S. 658, 688, 694 (1978), but only if the injury is caused by "officials

12

whose acts may fairly be said to be those of the municipality," or if there is a municipal policy or custom that caused the injury. County Commrs. of Bryan County v. Brown, 520 U.S. 397, 403-404 (1997).

Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 583 (2001)

As Monell makes clear, in order for a municipality to be liable under § 1983, it must have a policy or custom which resulted in a constitutional deprivation. Monell, 98 S. Ct. at 2035-2038. This policy or custom does not need to be unconstitutional to give rise to municipal liability under § 1983. See City of Canton v. Harris, supra. Rather, if the municipal custom or policy in itself is constitutional, the inquiry is whether there is a direct causal link between the policy and an alleged constitutional deprivation. Id. In the instance with Plaintiffs Green and Barry, there is more than sufficient factual assertions, and the reasonable inferences that a Court can draw therefrom, that establish this causal link.

## 2. Policy

To show that a city had a "policy," a plaintiff must demonstrate that the actions taken were by an official with final decision making authority. Pembaur v. City of Cincinnati, 106 S. Ct. 1292, 1299 (1986) (plurality opinion) ("Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered."). Whether a particular official has "final policymaking authority" is a question of state law, to be resolved by the court. Jett v. Dallas Independent School District, 109 S. Ct. 2702, 2723 (1989).

Despite Defendants' mischaracterizations of the case law to the contrary,[2] even single incidents may be evidence of unlawful policies. City of Oklahoma City v. Tuttle, 105 S. Ct. 2427, 2436-37 (1985). "[P]roof of a single incident of unconstitutional activity is not sufficient to

---

[2]      The case cited by Defendants for such proposition, Fabiano v. Hopkins, 352 F.3d 447 (1st Cir. 2003), presents an instance of a truly isolated incidence created by the actions of the Plaintiff therein, without any allegations of repeated practice or department policy, in which it was held that there was not even a clearly established right to support plaintiff's claim.

13

impose liability under Monell, **unless** proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Id., [emphasis added].

Defendant Moran's follow up statement "that's the way it's always been around here" is more than sufficient, even without the consistently discriminatory and retaliatory behavior towards Plaintiff Barry, to establish its policy. Furthermore, Defendants' retaliatory conduct against Plaintiff Green confirms Defendants' defense of its unlawful policy.

### 3. Custom

Whether a city has a "custom" involves a different inquiry. The plaintiff must prove "the existence of a widespread practice, **although not authorized by written law** or express municipal policy, that is `so permanent and well settled as to constitute a custom or usage with the force of law.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970))(emphasis added). Thus, the immunity claimed by Defendants' from Boston Fire Department's written policy against political affiliation discrimination is unavailing. Defendants' argument is akin to saying that because there is a law on the books, we cannot be held liable for allegations that we violated that law. Defendants' argument on this issue is as weak, and as nonsensical, as its other arguments in its Motion.

### 4. Inadequate Supervision

Municipalities can be held liable also for inadequate supervision, which includes inadequate investigation. Cf., City of Canton, supra. In Fiacco v. City of Rensselaer, the Second Circuit held that the plaintiff's evidence with regard to the defendant-city's inadequate supervision of its officers' use of force was sufficient to support a jury verdict in favor of plaintiff. 783 F.2d 319, 332 (2d Cir. 1986). The plaintiff in Fiacco brought suit against the defendant-officers under § 1983 for violating her constitutional rights for failure to train and to supervise properly its officers' use of

14

force. Fiacco 783 F.2d at 321.

To establish municipal liability, the plaintiff in Fiacco introduced evidence of the

inadequacy of the city's procedures in resolving excessive force claims, as well as evidence of

seven written claims of police brutality filed with the police department prior to the incident

involving the plaintiff. Fiacco 783 F.2d at 326-32. The Second Circuit first ruled that the evidence

of third-party complaints was admissible to establish inadequate supervision because the evidence

was relevant and because the trial court gave a limiting instruction to alleviate any unduly

prejudicial effect the evidence may have had on the defendant-city. Fiacco 783 F.2d at 327-28.

When determining that the evidence was relevant the court stated:

> The City's knowledge of these allegations and the nature and extent of its efforts to
> investigate and record the claims were pertinent to Fiacco's contention that the City had a
> policy of nonsupervision of its policemen that reflected a deliberate indifference to their use
> of excessive force. The fact that none of the claims had yet been adjudicated in favor of the
> claimant was not material; if the City's efforts to evaluate the claims were so superficial as
> to suggest that its official attitude was one of indifference to the truth of the claim, such an
> attitude would bespeak an indifference to the rights asserted in those claims.
>    Further, the value of such evidence to a plaintiff in a § 1983 action is clear. Since
> the existence of a policy of nonsupervision amounting to deliberate indifference to
> constitutional rights cannot be established by inference solely from evidence of the
> occurrence of the incident in question, a plaintiff cannot prevail on a § 1983 claim against a
> municipality without introducing other evidence. Proof that other claims were met with
> indifference for their truth may be one way of satisfying the plaintiffs' burden.

Fiacco 783 F.2d at 328 (citations omitted). The court then held that any prejudice which might

result to defendant-city was mitigated by a limiting instruction to the jury that they were not to

assume any of the claims were true, but to focus on whether the defendant-city took sufficient

steps in handling the claims. Id.

Defendant Moran clearly expressed the City policy and custom to two witnesses, "that's

the way it is around here," and three of the Defendants furthered the custom and policy through

their conspiracy to intimidate the Plaintiffs through its subsequent denials of Plaintiff Barry's

further requests for promotion to jobs for which she was well-qualified and the retaliatory

15

harassment of Plaintiff Green.[3]   More than sufficient factual allegations are before the Court to establish the merits of Plaintiffs' Civil Rights claims against both the municipality and the individual defendants. See e.g., First Amended Complaint, ¶ 62 and 63. Furthermore, the blatantly inadequate investigation into Plaintiffs' claims by Defendant Kessler contributed and furthered the conspiracy, rendering him and the City liable for damages. In this case, not only are the claims true, but the City simply brushed the complaints under the proverbial rug, and conspired with each other to do so.

## Fourth Cause of Acton - Conspiracy under 42 U.S.C. §§ 1985 and 1986

Defendants argue in opposition to Plaintiffs' Fourth Cause of Action that Plaintiffs have failed to allege sufficient facts to constitute a conspiracy. The entire scheme of the Defendants as set forth in the First Amended Complaint is more than sufficient to show that all of the Defendants acted in concert with each other to deprive Plaintiff Barry of promotions because of her refusal to associate politically with those in power in, and holding influence over, the BFD. The conspiracy against Plaintiff Green is more expressly set forth in Paragraph 63 of the First Amended Complaint:

On or about this time in Mid-December 2004, Defendants Moran, Christian, and Hitchcock, *inter alia*, had a meeting in which it was decided to retaliate against Plaintiffs by moving Plaintiff Green away from her files and make Plaintiff Greens terms and conditions

---

³       Paragraph 62: ". . . In response to Plaintiff Barry's complaints, Defendant Moran said, rather blatantly, 'Well, if you're not into politics little girl, then you're not into a position here.' Plaintiff Green promptly stood up and said to Defendant Moran "I can't believe you are saying this to her, not to mention in front of me." Mr. Moran replied 'that's the way it is around here.' Whereupon Plaintiff Barry said "so, I am going to be punished because I am not into politics?" Defendant Moran shrugged his shoulders and said 'that's politics for you.'"

Paragraph 63: "On or about this time in Mid-December 2004, Defendants Moran, Christian, and Hitchcock, *inter alia*, had a meeting in which it was decided to retaliate against Plaintiffs by moving Plaintiff Green away from her files and make Plaintiff Greens terms and conditions of employment more onerous. At this meeting, in response to concerns that their behavior was retaliatory, Defendant Hitchcock stated 'F–k Jane Green.' "

of employment more onerous. At this meeting, in response to concerns that their behavior was retaliatory, Defendant Hitchcock stated "F–k Jane Green."

Most recently, the Commissioner's office (not simply Defendant Moran) ordered that a security camera be trained on Plaintiff's Barry work station, obviously without any reason but to harass. First Amended Complaint, ¶ 56. In addition, the First Amended Complaint establishes not only the active conspiracy, but also the knowledge of Defendants Christian, Moran, Hitchcock, and Kessler as to the concerted unlawful actions against Plaintiffs Barry and Green and their failure to remedy such unlawful discrimination. Thus, the allegations that the individual Defendants knew of the illegal conspiracy and did nothing to stop it, despite the obligations inherent in their office to uphold both the Federal and State Constitutions, is a violation of 42 U.S.C. § 1985 and 1986. See Brazier v. Cheney, 293 F.2d 402 (5th Cir.), cert. denied, 368 U.S. 921 (1961) (complaint alleging valid § 1985 action to the extent that persons had knowledge of conspiracy, opportunity and power to prevent it, and failed to act to prevent the constitutional violations is sufficient to invoke § 1986); Roybal v. City of Albuquerque, 653 F.Supp. 102 (D.N.M. 1986); Peck v. U.S., 470 F.Supp. 1003 (D.C.N.Y. 1979).

Accordingly, sufficient facts exist to establish the merits on Plaintiffs' claims of conspiracy. See Cignetti v. Healy, 89 F.Supp.2d 106, 123 (D.Mass. 2000)("direct evidence of a conspiracy is not necessary to survive a motion for summary judgment, . . . and all inferences should be drawn in favor of the non-moving party." citing Hampton v. Hanrahan, 600 F.2d 600, 620 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754 (1980)).

Defendants argue also that the Plaintiffs have not alleged that they are part of a class protectable by the conspiracy statutes. Defendants read the statute too narrowly. A complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious. See Harrison v.

Brooks, 519 F.2d 1358, 1359-60 (1st Cir.1975); LaManque v. Mass. Dep't of Employment &
Training, 3 F.Supp.2d 83, 91 (D.Mass.1998) (Lindsay, J.). In the instant case, not only does the
First and Fourteenth Amendment provide protection for people who choose not to affiliate
themselves with those in power, but Mayor Menino, on behalf of the City of Boston has created a
protectable liberty interest in one's political affiliation, or lack thereof. Cf. Hewitt v. Helms, 459
U.S. 460, 466 (1983)(Liberty interests that are protected by Fourteenth Amendment arise from
two sources -- the Due Process Clause itself and State laws); Olim v. Wakinekona, 461 U.S. 238,
249 (1983)("a State creates a protected liberty interest by placing substantive limitations on official
discretion"); Henderson v. Comm'r's of Barnstable County, 49 Mass.App.Ct. 455 (2000)(State
creates liberty interests when right is of "real substance"). In this case, the Executive Order issued
by Mayor Menino leaves no doubt that the City of Boston and its various agencies may not
discriminate on the basis of "political affiliation." Any case law to the contrary that suggests that
political affiliation cannot form the basis of an invidious class has been overruled by Mayor
Menino's Executive Order.

## Fifth Cause of Action - Common Law Violation of Public Policy - Plaintif Barry
## Sixth Cause of Action - Common Law Violation of Public Policy - Plaintiff Green

Defendants argue that Plaintiffs' public policy claims are pre-empted by the Whistleblower
Protection Act. Defendants are correct, to a limited extent. Public policy claims are pre-empted
against the employer because only the employer entity may be sued under the Whistleblower
Protection Act. Plaintiffs' public policy claims are therefore valid and enforceable against the
individual Defendants because the Whistleblower Protection Act does not provide for a remedy
against them. See Bennett v. City of Holyoke, 230 F.Supp.2d 207 (D.Mass. 2002) aff'd 362 F.3d
1 (1st Cir. 2004). The Court in Bennett, supra, addressed this very same argument and held that
the Whistleblower Protection Act pre-empted only those claims against only the employer, and

could not be construed to pre-empt claims against individual defendants sued in their individual capacities:

> The Whistleblower statute was obviously designed to broaden protection to vulnerable workers, not to force them to jettison legitimate independent claims as a condition of invoking the statute.

Accordingly, Plaintiff's public policy claims are applicable against Defendants Moran, Christian, Hitchcock, and Kessler in their individual capacities only.

Defendants' second argument against Plaintiffs' public policy claims is that such claims require the termination of employment in order to be actionable, citing Wright v. Shriner's Hosp. For Crippled Children, 412 Mass. 469, 472 (1992). First, the holding in Wright does not stand for any such restrictive proposition. Second, it is well established that the adverse employment actions of Defendants are actionable. See MacCormack v. Boston Edison Co., 423 Mass 652 (1996)(indicating plaintiff must demonstrate "a change in working conditions that materially disadvantaged him" todemponstrate an adverse employment action); Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)(Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees")

## Seventh Cause of Action - Negligent Supervision
## Ninth Cause of Action - Negligence

Defendants' argument against Plaintiffs' negligence claims is similar to its initial argument as to the Whistleblower Claim - insufficient notice of Plaintiffs' claims. Defendants' argument fail for the same reasons that they would fail for the Whistleblower Protection Act notice requirements. In this case, however, Defendants are alleging that Plaintiff Barry's notices are deficient, as well as Plaintiff Green's. Notwithstanding the admission of Defendant Christian that "It's really an old issue. It was already heard[,]" all parties were provided more than adequate

notice of the allegations set forth in the First Amended Complaint. The presentment requirement strikes a balance between public fairness and effective government, by allowing for prompt investigation of incidents and assessment of liability so as to adjust disputes and avoid costly litigation. See McGrath v. Stanley, 397 Mass. 775, 493 N.E.2d 832 (1986). Even if Plaintiffs did not mention the word "negligence" in correspondence to the City, as long as the Defendants were on notice of the facts and circumstances giving rise to the claims, the Defendants will not be allowed to hide behind such a flimsy procedural bar. See Fontneau v. Town of Sandwich, 251 F.Supp.2d 994 (D. Mass. 2003)(Boat owner's letter to town administrator complaining about harbormaster's refusal to transfer slip lease in marina to him was sufficient under Massachusetts Tort Claims Act to present owner's negligent misrepresentation claim, even though letter did not specifically mention possible action in negligence; letter enumerated all of facts upon which owner relied in action).

Defendants next argument is that the individual defendants are immune because only the municipality can be sued. Defendants are correct as to claims for negligence against the individual Defendants. See Pruner v. Clerk of the Superior Court, 382 Mass. 309, 315 (1981) ("[T]he apparent purpose of the Act [is] to establish governmental immunity within certain limits, making the government and its subdivisions liable while ensuring immunity for individuals working within the government.").

Defendant Boston Fire Department finally argues that it is immune from negligent supervision claims because those claims are based upon a failure to prevent or mitigate harm, citing M.G.L. c. 258, § 10(j):

> any claim based on an act or failure to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

20

Defendant City of Boston's argument makes no sense as it completely ignores the last clause of the statute; thus Plaintiffs allege that Defendant City of Boston did not properly train Moran, Hitchcock, and Kessler. Plaintiffs are not alleging that some outside person was a tortfeasor here.

## Eighth Cause of Action - Intentional Infliction of Emotional Distress

Defendants argument as to Plaintiffs' Eighth Cause of Action is merely one for Summary Judgment. The First Amended Complaint clearly alleges, in verified form, sufficient facts to satisfy the prerequisites of the claim. In addition to the consistent unjustified denial of job promotions, Defendants took the incredible step of turning a surveillance camera on to her work station, just to harass her. Plaintiff Barry has many egregious causes for her allegations that her emotional distress is both pervasive and severe. As result of Defendants' retaliatory actions, moreover, Plaintiff Green now is on medication to control her blood pressure, and her physician is worried gravely about Plaintiff Greens physical health that is, in her expert opinion, being affected adversely by the Defendants' conduct. See e.g., First Amended Complaint, ¶ 77 ("The transfer or job relocation has been difficult and frustrating for Plaintiff Green in trying to do Plaintiff Green's job in the last couple of months, and has caused severe emotional and physical distress and suffering, such that she has been compelled to seek medical treatment for the same.").

## III. CONCLUSION

In accordance with the foregoing, Plaintiffs respectfully submit that their First Amended Claim states valid and enforceable claims against the Defendants as set forth therein, and therefore request that this honorable court DENY the respective Defendants' Motions to Dismiss.

Respectfully submitted,
Plaintiffs Denise M. Barry and Jane B. Green
By their attorney,

Thomas F. Feeney, BBO # 645605
THOMAS F FEENEY, COUNSELLOR AT LAW
39 Sheafe Street, Suite 1
Chestnut Hill, Massachusetts 02467
Tel.: (617) 277-5750

DATED: 19 May 2005

### AFFIDAVIT

I, Thomas F. Feeney, swear and affirm that attached hereto as Exhibit A, is a true and correct copy of correspondence sent to the Defendants on the dates indicated thereon and attached hereto as Exhibit B is a true and correct copy of the Article appearing in the Boston Globe on 15 March 2005.

### CERTIFICATE OF SERVICE

I, Thomas F. Feeney certify that Plaintiffs' Opposition to Defendants' Motions to Dismiss was served this date upon counsel for the Defendants, James Cherntetsky, Associate Corporation Counsel, by U.S. Mail, first class postage pre-paid.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.