UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE M. BARRY; JANE B. GREEN; ELIZABETH H. GOLDEN; PATRICIA J. McDONOUGH; ELAINE MESITI; LILA BROWN; MARY M. KANE; and JUDITH A. KELLEY, individually and on behalf of all those similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>ROBERT J. MORAN; RONALD KEATING; PAUL A. CHRISTIAN; RODERICK FRASER, Jr.; WILLIAM KESSLER; WILLIAM HITCHCOCK; CITY OF BOSTON (FIRE DEPARTMENT), and JOHN and/or JANE DOES 1-50,<br><br>       Defendants. | CIVIL NO. 05-10528 RCL |

**PLAINTIFFS' OBJECTIONS TO
REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**I.  INTRODUCTION**

Plaintiffs DENISE M. BARRY; JANE B. GREEN; ELIZABETH H. GOLDEN; PATRICIA J. McDONOUGH; ELAINE MESITI; LILA BROWN; MARY M. KANE; and JUDITH A. KELLEY, individually and in behalf of all persons similarly situated [hereinafter collectively referred to as "Plaintiffs"], by and through their undersigned attorneys, hereby object to the Magistrate Judge's 7 April 2008 Report and Recommendation to deny Plaintiffs' Motion for Class Certification.  The Report and Recommendation, dispositive of Plaintiffs' class allegations, is respectfully requested to be reviewed *de novo* pursuant to Rule 72(b) of the Federal Rule of Civil Procedure.  See Deposit Guar. Nat'l Bank v. Roper, 455 U.S. 326, 339 (1988)("A district court's ruling on the certification issue is often the most significant decision

rendered in these class-action proceedings." ); MANUAL FOR COMPLEX LITIGATION, SECOND § 30 (1985) ("Deciding whether to certify a class action and defining its membership are rulings that often prove as important as those on substantive issues."). Notwithstanding the manner of review, the Report and Recommendation is both clearly erroneous and contrary to law.

## Ii.  SUMMARY

The Report and Recommendation [hereinafter "R & R"] denied class certification because it found that the individualized nature of each employment decision, under the circumstances as alleged, would preclude effective class treatment.  As set forth in the case analysis below, the R & R's analysis almost **always** would preclude class certification in any employment discrimination context, a result too extreme and unjust under the facts fairly presented, and contradicting other established class actions.  See, e.g., Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, p. 2, footnote 2.

Although the R & R purportedly determined that "the Plaintiffs have not sufficiently alleged that they were subjected to standardized conduct," R & R, p.3, in this case, there is an evidentiary admission, if two witnesses' testimony is found credible, that the Boston Fire Department has in place a pattern and practice of political patronage discrimination:

**"Well, if you are not into politics little girl, then you're not into a position here."**
A statement made by Defendant Moran that succinctly characterizes an established and ongoing unlawful practice within the Boston Fire Department.

There are obvious factual scenarios that support this statement, such as those of Plaintiff Lila Brown who, though determined to be qualified for a position as a result of her being granted

an interview (see Exhibit E-1, Deposition Transcript of Robert Moran, p. 48:8-12), was passed over **twice** for a position even though she was the only qualified applicant on the first two rounds - merely because she allegedly was not politically connected to those having power and influence over the employment decisions within the Boston Fire Department, principally then-Commissioner Paul A. Christian. See R & R, pp 16-17. Most importantly, the political patronage practiced by the Defendants made the R & R's highlighted "individualized facts" **irrelevant** for purposes of such hiring decisions (e.g., "date on which they were first hired," "positions held," rates of pay" R & R, p.15). Lila Brown's situation is merely one of the more obvious examples of that practice, and Defendant Moran's alleged admission confirms the existence of the practice.

As a matter of law, as set forth below, the cases relied upon in the R & R are both factually and legally distinct and inapposite. In addition to the brief analysis below, Plaintiffs rely upon and incorporate herein their Motion and Memorandum of Law in Support of Class Certification filed herein on 3 August 2007.

### III.  ARGUMENT

The R & R's reliance on a lack of "statistical evidence" is confusing and, more importantly, immaterial. The R &R sought to distinguish the Plaintiffs' reliance on the holding in Jensen v. Eveleth Taconite, 139 F.R.D. 657 (D.Minn. 1991), one of numerous cases cited by Plaintiffs in the Motion for Class Certification for the proposition that the political patronage practiced by the Defendants constitutes a recurring and common practice applicable to all, even though certain factual situations may be case specific. This is a common sense ruling, as otherwise there never could be a class action in the employment context unless the class

allegation related solely to a single type of position (e.g., key punch operator) for which persons of similar background all applied. The nature of employment decisions almost always is otherwise - whether under Title VII scenarios (race, sex, sexual orientation, religion, etc.) or for political patronage practices. In Title VII cases, where there are immutable characteristics subject to statistical analysis, statistics often are readily available, as in Eveleth Taconite case, supra. IN the instant case, Plaintiff Barry and seven other Plaintiffs have set forth numerous examples of political patronage discrimination, where, as the law requires, political patronage was **_a_** motivating factor in the employment decision. See Padilla-Garcia v. Rodriguez, 212 F.3d 69, 73 (1st Cir. 2000).[1]

The R & R cites to and relies upon the Fourth Circuit's ruling in Stott v. Haworth, 916 F.2d 134, 143 (4th Cir. 1990) as a similar example of a finding of "no commonality or typicality . . where the positions held by each plaintiff were so divergent." R & R, p. 24 quoting Stott, supra.. The analysis in Stott is inapplicable to the instant case, however, because it was focused on the plaintiffs' right to maintain the class **_as a matter of law._** The Fourth Circuit in its ruling in Stott, focused on the Elrod v. Burns, 427 U.S. 347, 373 (1976)/Branti v. Finkel, 445 U.S. 507 (1980) line of cases in which courts have distinguished between policymaking position (which are subject to such discrimination) and positions having no bearing on such concerns (which are protected from political patronage determinations); see also Fuentes v. Gaztambide, 807 F.2d 236, 239-241 (1st Cir. 1986) and cases cited therein; see also Rutan v. Republican Party of

---

[1] The R & R, in dicta, cites to the Padilla case for the proposition that "personal affiliation is insufficient to establish a constitutional violation." R & R, p. 21. Notwithstanding the factual difference from the Padilla case, in this case, it is alleged clearly that the plaintiffs were being discriminated against for their decision not to e politically affiliated with the powerful, influential controlling faction of the current administration, while those who obtained the disputed positions had chosen to be, and otherwise were, closely affiliated and supportive of said administration.

Illinois, 497 U.S. 62 (1990)(public employee's right under the First Amendment to have promotion decision made without consideration of political affiliation or support). ***In this legal context***, was the Fourth Circuit concerned about the numerous "position by position, activity by activity" analysis needed to determine if the ***class could be maintained at all***:

> Delong [v. United States, 621 F.2d 618 (4th Cir. 1980)] like Branti, however, recognized that such patronage practices are not to be disturbed by the judiciary if party affiliation is an appropriate requirement for the job. The teaching of Elrod/Branti then, is that mere allegations of political patronage dismissal falls short of stating a cause of action capable of class treatment. The inquiry must focus on the claim of the individual.

In the instant case, all of the positions are alleged to be non-policy-making **positions for which political patronage would be an impermissible factor**. The Defendants did not challenge such allegations in their opposition papers, nor at oral argument before the Magistrate Judge at the hearing on this mater in November 2007. Thus, as held in other cases cited in Plaintiffs' Memorandum in Support of the Motion for Class Certification, there are common issues of fact and law that predominate in this matter making class treatment appropriate and necessary to preserve the interests of the class members and resolve this case sooner as the Fire Department as a whole; rather than subsequent or concurrent piecemeal litigation.

The R & R also cites to and relies upon a District Court of Puerto Rico case, Collazo v. Calderon, 212 F.R.D. 437, 442-43 (D.P.R. 2002) to argue that "individualized claims of discrimination" predominate over the common issues of fact or law. In Collazo, the Court initially was concerned rather about the speculative nature of the size of the class:

> To satisfy the impracticability requirement, they must proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number. J. Moore, *Moore's Federal Practice* § 23.23 (3d ed.1997).
>
> Plaintiffs have failed to do so. Simply put, no evidence has been provided by them to support their assertion that "Group A" consists of at least 90 additional persons aside from the 10 which they claim to already know, and that "Group D" includes anywhere from 1,000 to 5,000 employees. Those numbers are plainly speculative.

5

The District Court in Collazo, found that their were "eight common questions, most of which revolve around an alleged standardized pattern of adverse employment decisions based on political discrimination . . . [which were] enough to satisfy the Rule 23(a)(2)'s commonality requirement." Collazo 212 F.R.D. at 442. "Rule 23(a)(2) requires that questions of law or fact be shared by the prospective class, but does not require that every question be common." See McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 309 (D.Mass. 2004); Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D.Mass.1987); see also Black v. Barrack, 524 F.2d 891, 904 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976)(Plaintiffs need present only single issue of law or fact common to all class members). Common issues of fact affect all potential members, and although some of the individual facts concerning injuries to members of the Plaintiff class may vary, the facts of being discriminated against based on political affiliation, and the issues of law raised in this action, are common to all class members, and thus the "commonality" factor in Rule 23(a)(2) is present.

As to typicality, the Court in Collazo was concerned primarily that the alleged discriminatory acts were either unspecified or **occurred at different agencies** within the Puerto Rican government:

> while one of the two representatives of "Group D,", a career employee of the Puerto Rico Electric Power Authority, was allegedly transferred and demoted (Complaint, ¶ 52, p. 29). No specific information was provided as to the adverse employment action purportedly suffered by the other representative of "Group D," although we do know from the complaint's allegations that he occupies a career position at yet another agency[.]

In the instant case, Plaintiff Barry and others all work for the Boston Fire Department's administrative apparatus; even firefighters are not part of the proposed class. For example, the employment applications go through similar procedures and personnel, and similar techniques were employed, such as choosing the person before the job was posted, crafting a job description to apply solely to the political favorite, and requiring skills of non-politically connected applicants that were not required of the politically connected applicants.

Similarly, in General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147 (1982), cited in the R & R, the Court held that the class could not be maintained because there was only one instance of alleged discrimination in promotion practices ("If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action") and the purported class representative could not maintain a class with respect to discrimination with respect to hiring practices because he **had been** hired.  "The claims of a class representative are "typical" when the representative's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims." Fraser v. Major League Soccer, L.L.C., 180 F.R.D. 178, 181, (D.Mass. 1998) citing Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 22 (D.Mass.1991).

Class certification is appropriate also because the unlawful practices are continuing.  Being prepared is a Motion to Amend the Complaint to assert a proposed Fourth Amended Complaint that adds at least three separate alleged instances of political patronage discrimination that have occurred since the filing of the Third Amended Complaint.  See Affidavit of Counsel, submitted herewith.  Class certification is important because only two of the positions impact the proposed class representatives and potential class members, while the other one adversely affects only class members.  Id.

## IV.  CONCLUSION

The individualized analysis that may be necessary relates to the amount of damages that each class member may receive once an unlawful practice is shown to exist in the Fire Department as to the identified positions.  It is not unusual, however, for a Court to bifurcate the trial on liability with individual analyses of damages, focusing on rate of pay, position, and duration of deprivation of the higher grade.  See ; Mayhaw v. Cohen, 604 F.Supp. 850 (C.D.Pa. 1984) (Money award not

inconsistent with class certification requirement that there be common questions of law or fact; court may certify classification or injunction issue and treat damages as incidental).  Accordingly, Plaintiffs pray that this action be certified as a class action, with any appropriate conditions of limitations, pursuant to Rules 23(a), 23(b)(2), and 23(b) (3) of the Federal Rules of Civil Procedure.

                                Respectfully submitted,
                                Plaintiffs Denise M. Barry, Jane B. Green,
                                Elizabeth H. Golden, Patricia J. McDonough, Elaine
                                Mesiti, Lila Brown, Mary M Kane, Judith A. Kelley
                                By their attorneys,


                                _____/s/ Thomas F. Feeney_____
                                Thomas F. Feeney, BBO # 645605
                                FEENEY & ASSOCIATES AT LAW
                                39 Sheafe Street, Suite 1
                                Chestnut Hill, Massachusetts  02467
                                Tel.: (617) 277-5750
DATED: 21 April 2008             Fax: (617) 277-5751


                                _ /s/ Paul J. Anthony_____
                                Paul J. Anthony (BBO#630872)
                                92 Montvale Avenue, Suite 2100
                                Stoneham, Massachusetts 02180
                                Telephone No.: 781-438-0555

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | |
| DENISE M. BARRY and | )   CIVIL NO. 05-10528 RCL |
| JANE B. GREEN, | ) |
| | ) |
| Plaintiffs, | )   AFFIDAVIT OF |
| | )   THOMAS F. FEENEY |
| vs. | ) |
| | ) |
| ROBERT J. MORAN; PAUL A. | ) |
| CHRISTIAN; WILLIAM KESSLER; | ) |
| WILLIAM HITCHCOCK; CITY OF | ) |
| BOSTON FIRE DEPARTMENT, and | ) |
| JOHN and/or JANE DOES 1-50, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

AFFIDAVIT OF COUNSEL
IN SUPPORT OF OBJECTION TO REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, Thomas F. Feeney, counsel of record for the Plaintiffs in the above-entitled case, am an attorney duly licensed in the Commonwealth of Massachusetts and make the following assertions upon personal knowledge, unless otherwise indicated.

1.  After a reasonable investigation, I am informed that the following facts and circumstances support the filing of a Fourth Amended Complaint to allege four additional instances of political patronage hirings:

    a.  In or about late February 2008, a person, (Jacquie Sullivan) was hired on a temporary basis. Less than two months later and the person that she was covering for has returned which means that she (Jacquie Sullivan) should be removed from

    the temp position. Instead, as of today's date, Jacquie Sullivan is still an employee at the Fire Department. I am informed and believe that there is going to be, or has been, a "posting" for Ms. Sullivan. This supposed posting is heard to be Maryann Quilty's old position (R12) who worked with Kevin Boyle in Internal System – that was abolished due to budget cuts. I am informed and believe that Ms. Sullivan's political patronage is a motivating factor in retaining Ms. Sullivan.

    b.    A Lori Donovan was hired in Fire Prevention as an Administrative Assistant MM-5 on or about 5 November 2007. Ms. Donovan was not one of the originally qualified candidates, but is Dennis DiMarzio's niece. Commissioner Fraser signed the order giving Ms. Donovan this position. I am informed and believe that political patronage was a motivating factor in the hiring of Ms. Donovan. Plaintiff Lila Brown applied for, and had been determined qualified for, the job taken by Lori Donovan.

    c.    In or about September 2007, a position came up in the maintenance division for which Mary Kane applied, but was told that she did not qualify. Instead, a John Foley, who worked formerly at the public library was hired instead. John Foley was not as qualified as Mary Kane and, in practice, Mary Kane was ordered to train John Foley on various important aspects of the position for which Mary Kane was purportedly unqualified. I am informed and believe that political patronage was a motivating factor in John Foley receiving the position in Maintenance.

2.    Two of the four instances do not adversely affect any of the eight named plaintiffs in the action, and only would adversely impact the proposed class members.

3. Upon the determination of the Class Certification issue, a Motion to Amend the Complaint will be filed herein.

SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 21st DAY OF APRIL 2008:

                                                  /s/ Thomas F. Feeney
                                                  Thomas F. Feeney